**KRONENBERGER ROSENFELD, LLP**

Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Virginia A. Sanderson (Bar No. 240241)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
ginny@KRInternetLaw.com

Attorneys for Third-Party Defendant Ryan
Lenahan and for Specially Appearing
Third-Party Defendant Kyle Danna

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID TRINDADE**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**REACH MEDIA GROUP, LLC**, a Delaware limited liability company,<br><br>Defendant,<br><br>**REACH MEDIA GROUP, LLC**, a Delaware limited liability company,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>**RYAN LENAHAN**, an individual, **KYLE DANNA**, an individual, and **EAGLE WEB ASSETS INC.**, a corporation,<br><br>Third-Party Defendants. | Case No. 5:12-cv-04759 (PSG)<br><br>**THIRD-PARTY DEFENDANT RYAN LENAHAN'S NOTICE OF MOTION AND MOTION TO STRIKE CLAIMS UNDER CAL. CIV. PROC. CODE §425.16 (ANTI-SLAPP MOTION); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE: February 26, 2013<br>TIME: 10:00 a.m.<br>CTRM: 5, 4th Floor<br>JUDGE: The Hon. Paul S. Grewal |

**LENAHAN'S NTC OF MTN AND MTN TO STRIKE (ANTI-SLAPP); MPA**

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION..................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES.......................................... 2

INTRODUCTION .................................................................................................... 2

BACKGROUND....................................................................................................... 2

    A. RMG's Relationship with Lenahan .................................................... 3

    B. RMG's Relationship with Lenahan .................................................... 4

ARGUMENT............................................................................................................. 5

    A.  RMG's third, fourth, and fifth claims arise from Lenahan's protected activity under the anti-SLAPP statute.......................................................... 6

        1.  The Facebook Group is a public forum because it is a website that is generally accessible to the public.......................................................... 7

        2.  The Statements concern an issue of public interest because they are about an ongoing dispute of interest to a distinct group ....................... 8

    B. RMG cannot establish prima facie claims for defamation or tortious interference............................................................................................... 10

        1.  RMG cannot establish a claim for defamation because the Statements are true and/or protected opinion.......................................................... 11

            a. RMG cannot prevail on its defamation claim because the Statements are true.......................................................................... 11

            b. RMG cannot prevail on its defamation claim because the Statements are protected opinions................................................ 12

        2.  RMG cannot establish any element of its claim for tortious interference with a contractual relationship ............................................ 14

        3.  RMG cannot establish any element of its claim for tortious interference with a prospective economic advantage............................................ 16

CONCLUSION ........................................................................................................ 17

1

**TABLE OF AUTHORITIES**

*Barrett v. Rosenthal,* 40 Cal. 4th 33, 41 n.4 (2006) ...................................................... 8

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir.2005) ...................................... 7

*Campanelli v. Regents of Univ. of California,* 44 Cal. App. 4th 572 (1996) .............. 12-13

*Chaker v. Mateo,* 209 Cal. App. 4th 1138 (2012) ......................................................... 13

*ComputerXpress, Inc. v. Jackson,* 93 Cal. App. 4th 993 (2001) .................................... 15

*Damon v. Ocean Hills Journalism Club,* 85 Cal. App. 4th 468 (2000) ............................ 9

*Du Charme v. Int'l Broth. of Elec. Workers, Local 45,* 110 Cal. App. 4th 107 (2003) ....... 9

*Gertz v. Robert Welch, Inc.,* 418 U.S., 323 (1974) ....................................................... 12

*Gilbert v. Sykes,* 147 Cal. App. 4th 13  (2007) ............................................................. 8

*Hailstone v. Martinez,* 169 Cal. App. 4th 728 (2008) .................................................... 9

*Hawran v. Hixson,* 209 Cal. App. 4th 256 (2012) ......................................................... 11

*Hilton v. Hallmark Cards,* 599 F.3d 894 (9th Cir. 2010) .......................................... 6, 10

*Korea Supply, supra,* 29 Cal. 4th 1134 (2003) ............................................................ 16

*Kronemyer v. Internet Movie Data Base, Inc.,* 150 Cal. App. 4th 941 (2007) .................. 8

*Marsh v. Anesthesia Serv. Med. Group, Inc.,* 200 Cal. App. 4th 480 (2011) ................. 16

*MCSi, Inc. v. Woods,* 290 F. Supp. 2d 1030 (N.D. Cal. 2003) ....................................... 7

*Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832 (9th Cir. 2001). ..................................... 5

*Mindys Cosmetics, Inc. v. Dakar,* 611 F.3d 590 (9th Cir. 2010) ..................................... 6

*Navellier v. Sletten,* 106 Cal. App. 4th 763 (2003) ...................................................... 15

*New.Net, Inc. v. Lavasoft,* 356 F. Supp. 2d 1090 (C.D. Cal. 2004) ............................. 7-8

*Nicosia v. De Rooy,* 72 F. Supp. 2d 1093 (N.D. Cal. 1999) .......................................... 13

*Nygard, Inc. v. Uusi-Kerttula,* 159 Cal. App. 4th 1027 (2008) ...................................... 8-9

*Partington v. Bugliosi,* 56 F.3d 1147 (9th Cir. 1995) ................................................... 13

*Price v. Operating Engineers Local Union No. 3,* 195 Cal. App. 4th 962 (2011) ........... 11

*Price v. Stossel,* 590 F. Supp. 2d 1262 (C.D. Cal. 2008) .............................................. 6

*Ringler Associates Inc. v. Maryland Cas. Co.,* 80 Cal. App. 4th 1165 (2000) ............... 11

*Rocker Managment LLC v. John Does,* No. 03-MC-33, 2003 WL 22149380 (N.D. Cal.
    May 29, 2003) .................................................................................................. 13

*Salma v. Capon,* 161 Cal. App. 4th 1275 (2008) ............................................................ 17

*Sole Energy Co. v. Petrominerals Corp.,* 128 Cal. App. 4th 212 (2005) ........................ 17

*Summit Bank v. Rogers,* 206 Cal. App. 4th 669 (2012) ................................................. 13

*Thomas v. Quintero,* 126 Cal. App. 4th 635 (2005) ......................................................... 9

*Tuchscher Dev. Enterprises, Inc. v. San Diego Unified Port Dist.,* 106 Cal. App. 4th 1219 (2003) ................................................................................................................ 15

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.,* 190 F.3d 963 (9th Cir. 1999) ......................................................................................................................... 5, 6

*Underwager v. Channel 9 Australia,* 69 F.3d 361 (9th Cir. 1995) ................................. 12

*Western Broadcast Co. v. Times Co.,* 14 Cal. App. 2d 120 (1936) ............................... 12

*Wilbanks v. Wolk,* 121 Cal. App. 4th 883 (2004) ...................................................... 9, 10

*Winchester Mystery House, LLC v. Global Asylum, Inc.,* 210 Cal. App. 4th 579 (2012) 14

*Woods v. Fox Broad. Sub., Inc.,* 129 Cal. App. 4th 344 (2005) .................................... 15

## Federal Statutes and Other Authorities

CIVIL PROCEDURE CODE SECTION 425.16 ................................................................. *passim*



KRONENBERG | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

**LENAHAN'S NTC OF MTN AND MTN TO STRIKE (ANTI-SLAPP); MPA**

1    TO THE COURT, THE PARTIES, AND ALL COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE that on February 26, 2013 at 10:00 a.m., or at another

3    date and time set by the Court, before the Honorable Paul S. Grewal, United States

4    Magistrate Judge for the United States District Court, Northern District of California,

5    located    at    the    San    Jose    Courthouse,    Courtroom    5,    4th    Floor

6    280 South 1st Street, San Jose, California 95113, Third-Party Defendant Ryan Lenahan

7    will move, and does hereby respectfully move, this Court to strike the third, fourth, and

8    fifth causes of action from the Third-Party Complaint of Third-Party Plaintiff Reach Media

9    Group, LLC ("RMG") under Civil Procedure Code section 425.16.

10    The Court should strike these claims because: a) the claims are subject to section

11    425.16 where they are based on allegedly defamatory statements made in a public forum

12    in connection with an issue of public interest, and b) RMG cannot substantiate any of

13    these claims with admissible evidence.

14    This motion is based upon Civil Procedure Code section 425.16, this notice of

15    motion and motion, the memorandum of points and authorities submitted herewith, the

16    declarations of Ryan Lenahan, Kyle Danna, and Jeffrey M. Rosenfeld in support of this

17    motion, the proposed order submitted herewith, the Third-Party Complaint on file in this

18    action, the record in this case, and any other evidence and argument that may be

19    adduced at hearing.

20

21    Respectfully submitted,

22    DATED:  January 18, 2013                KRONENBERGER ROSENFELD, LLP

23

24                                            By:    s/Jeffrey M. Rosenfeld
25                                                   Jeffrey M. Rosenfeld

26                                            Attorneys for Third-Party Defendant Ryan
27                                            Lenahan and for Specially Appearing Third-
                                             Party Defendant Kyle Danna

28

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## INTRODUCTION

3    Third Party Defendant Ryan Lenahan ("Lenahan") entered into a contract with

4  Third Party Plaintiff Reach Media Group, LLC ("RMG"), whereby Lenahan agreed to

5  circulate ads on behalf of RMG.  Lenahan fulfilled his obligations under this agreement,

6  circulating ads on behalf of RMG and generating consumer leads for RMG.  Based on

7  the terms of the agreement, RMG was obligated to pay Lenahan $13,200 for these leads.

8  RMG refused to make the payment.  Instead, RMG concocted a story that Lenahan's ads

9  did not comply with RMG's non-existent guidelines, even though RMG's CEO had

10  personally approved Lenahan's ads.

11    Thereafter, Lenahan posted a complaint about RMG on a Facebook group: a

12  group dedicated to discussing Internet advertisers/networks that do not pay their

13  publishers, and a group subscribed to by thousands of Facebook members.  On the

14  Facebook group, Lenahan described the situation exactly how he understood it: that

15  RMG had improperly withheld over $13,000 that it owed to Lenahan, and that RMG had

16  improperly withheld funds from other publishers as well—a fact that Lenahan had learned

17  after his negative experience with RMG.

18    Now, RMG has filed a classic example of a SLAPP suit.  In an effort to stifle

19  complaints about its business practices, RMG has asserted claims for defamation and

20  tortious interference against Lenahan.  However, RMG cannot substantiate any of its

21  claims.  Not only are Lenahan's statements true and/or opinions immune from liability,

22  but RMG cannot establish any of the other elements of its claims.  Thus, the Court should

23  strike RMG's third, fourth, and fifth causes of action under Civil Procedure Code section

24  425.16.

25

## BACKGROUND

26    In the online and mobile advertising context, the term "publisher" refers to a

27  person or business that circulates advertisements (such as through websites, blogs, or

28  emails) in exchange for commissions for referring sales, leads, and/or traffic to an

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1   advertiser's website.  As a publisher network, RMG engages publishers to circulate ads

2   on behalf of RMG's advertiser clients.  This networked structure is used because it is not

3   always economical or even feasible for an advertiser to procure and manage

4   relationships with the numerous publishers needed to advertise effectively in the online

5   and mobile context.

6   **A.  RMG's Relationship with Lenahan**

7       Lenahan is an individual publisher who enrolled in RMG's network on or around

8   August 9, 2012.  (Third-Party Complaint ["TPC"] ¶17.)  According to RMG, around this

9   time Lenahan entered into a contract with RMG consisting of Terms and Conditions and

10  an Insertion Order.  (TPC ¶17.)  Under the Terms and Conditions, Lenahan was

11  permitted to display the "Advertisement," which the agreement circularly defined only as

12  an "advertisement."  (TPC Ex. A ¶1.)  Neither the Terms and Conditions nor the Insertion

13  Order defined the content of any advertisement that Lenahan was to display or limited

14  Lenahan to displaying only advertisements created by RMG.  (TPC Ex. A; Declaration of

15  Ryan Lenahan in Support of Lenahan's Anti-SLAPP Motion ("Lenahan Decl.") ¶3 & Ex.

16  A.)

17      After enrollment, RMG and Lenahan stayed in continual contact via email, instant

18  messaging, and telephone.  (Lenahan Decl. ¶4.)  RMG instructed Lenahan to circulate

19  various advertisements on behalf of RMG, and RMG monitored Lenahan's performance.

20  (Lenahan Decl. ¶¶5-7.)  It was not uncommon for Lenahan and RMG to exchange

21  numerous instant messages, emails, and telephone calls in a single day to discuss

22  Lenahan's advertising efforts.  (Lenahan Decl. ¶4.)

23      Shortly after Lenahan enrolled in RMG's network, Lenahan began submitting

24  proposed advertisements to RMG for approval.  (Lenahan Decl. ¶6.)  Roger Dowd,

25  RMG's President and CEO, approved Lenahan's proposed ads.  (Lenahan Decl. ¶6.)

26  After approval of these ads, Lenahan published the ads and generated a significant

27  number of customer leads for RMG.  (Lenahan Decl. ¶6.)  Lenahan continued to circulate

28  approved ads on behalf of RMG throughout the end of August and into the first week of

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

1  September.  (Lenahan Decl. ¶6.)  During this time, RMG monitored Lenahan's activities

2  and encouraged Lenahan to continue circulating the ads, and even to increase the

3  circulation.  (Lenahan Decl. ¶6.)

4       On or around August 27, Lenahan submitted an invoice to RMG for $13,200.

5  (Lenahan Decl. ¶9 & Ex. B.)  Lenahan expected payment on September 3, pursuant to

6  the "net 7" payment basis set forth in the Insertion Order.  (Lenahan Decl. ¶9 & Ex. B.)

7  RMG refused to make the payment.  (Lenahan Decl. ¶10.)  While Lenahan inquired

8  about the status of the payment on multiple occasions, RMG refused to respond.

9  (Lenahan Decl. ¶10.)  Finally, on September 18, 2012, RMG accused Lenahan of

10  circulating non-compliant ads and ceased all communications with him.  (Lenahan Decl.

11  ¶11.)

12  **B.  RMG's Relationship with Danna**

13       Danna experienced similar problems with RMG.  Danna enrolled in RMG's

14  network on or around August 9, 2012.  (Declaration of Kyle Danna in Support of

15  Lenahan's Anti-SLAPP Motion ("Danna Decl.") ¶2.)  After enrollment, RMG and Danna

16  stayed in continuous contact via email and telephone.  (Danna Decl. ¶3.)  RMG

17  instructed Danna to circulate various advertisements on behalf of RMG, and RMG

18  monitored Danna's performance.  (Danna Decl. ¶¶4-5.)  RMG stayed in continuous

19  contact with Danna through September 20.  (Danna Decl. ¶7.)

20       On August 27, 2012 Danna submitted an invoice to RMG for $18,146 for payment

21  pursuant to the "net 15" payment basis RMG had offered to Danna.  (Danna Decl. ¶6 &

22  Exs. A-B.)  Later that day, RMG informed Danna that RMG would pay him $3,857 on

23  September 10 and $14,080 on September 17.  (Danna Decl. ¶6 & Exs. A-B.)  However,

24  as of September 17, RMG had not paid Danna the second payment of $14,080.  (Danna

25  Decl. ¶8.)  Thus, Danna sent several emails and made several phone calls to RMG about

26  the status of this payment.  (Danna Decl. ¶8.)  In response, on September 17, RMG

27  informed Danna that the second payment would be processed that day.  (Danna Decl.

28  ¶8.)

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

1    On or around September 18, 2012, Danna received a wire transfer from RMG for

2    $14,080.    (Danna Decl. ¶9.)    However, later that day, Danna could not access his

3    account through the web interface he typically used.  (Danna Decl. ¶9.)  When Danna

4    called the bank, he was notified that his account had been frozen because fraud had

5    been reported in connection with the account.    (Danna Decl. ¶9.)    Upon making

6    additional inquiries at the bank, Danna learned that RMG had claimed that it had not

7    authorized the $14,080 wire, but rather, had indicated that Danna had fraudulently

8    effected the wire.  (Danna Decl. ¶10.)

9    After learning about RMG's false report of fraud, Danna explained to the bank that

10   the RMG wire was valid and that Danna was entitled to the funds.  (Danna Decl. ¶11.)

11   Moreover, Danna presented documents to the bank to demonstrate that he was entitled

12   to the funds, including his insertion order with RMG, his invoice to RMG, and his email

13   communications with RMG (*i.e.* communications with Andre Zouvi and Trish Hurst (from

14   RMG's accounting department)).  (Danna Decl. ¶11.)  After presenting these documents,

15   the bank agreed to unfreeze Danna's account and cancel RMG's wire reversal.  (Danna

16   Decl. ¶12.)

17                                          **ARGUMENT**

18   A strategic lawsuit against public interest (a "SLAPP" suit) is a suit that lacks merit

19   and is brought to obtain an economic advantage over the defendant by increasing the

20   costs of litigation to the point where the defendant's case will be weakened or

21   abandoned.  *See U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190

22   F.3d 963, 970-71 (9th Cir. 1999).  California enacted the anti-SLAPP statute, Civil

23   Procedure Code section 425.16, to protect individuals from meritless, harassing lawsuits,

24   the purpose of which are to chill protected expression.  *Metabolife Int'l, Inc. v. Wornick*,

25   264 F.3d 832, 838 (9th Cir. 2001).

26   Section 425.16 provides a mechanism to strike SLAPP claims early in litigation,

27   before the defendant incurs significant fees.  To strike a claim under section 425.16, the

28   moving party must first make a prima facie showing that the SLAPP claim arises from an

KRONENBERG ER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

act in furtherance of that party's right of petition or free speech under the United States or California Constitution in connection with a public issue. *See Newsham*, 190 F.3d at 971. To make this determination, a court may consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based. *See id.*

If the court finds that the moving party has shown that the claim is subject to the anti-SLAPP statute, the burden then shifts to the plaintiff to demonstrate a probability of prevailing on its claims. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010). To sustain this burden, the plaintiff must demonstrate that its claims are both legally sufficient and supported by a prima facie showing of facts sufficient to sustain a favorable judgment. *See id.* In this respect, an anti-SLAPP motion is akin to a motion for summary judgment. *See Price v. Stossel*, 590 F. Supp. 2d 1262, 1266 (C.D. Cal. 2008). A plaintiff cannot rely solely on the allegations set forth in its pleadings, nor may the court simply accept those allegations. *See id.* Instead, a plaintiff must present competent and admissible evidence showing that it will probably prevail. *See id.* If the plaintiff fails to meet this evidentiary burden, its SLAPP claim must be stricken. *See id.*

Because it is in the public interest to encourage participation in matters of public significance, and because this participation should not be chilled through abuse of the judicial process, courts construe the anti-SLAPP statute broadly. *See Hilton*, 599 F.3d at 902. Under this broad construction, a defendant that brings an anti-SLAPP motion need not show that the plaintiff's suit was brought with the intention to chill the defendant's speech or that any speech was actually chilled. *See Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010).

Subject to few exceptions, California's anti-SLAPP statute applies in federal court. *Newsham*, 190 F.3d at 972-73.

**A. RMG's third, fourth, and fifth claims arise from Lenahan's protected activity under the anti-SLAPP statute.**

RMG has asserted five claims against Lenahan. Three of these claims arise from speech protected under the anti-SLAPP statute: a) Count III – Libel Per Se, b) Count IV –

1  Tortious Interference with Contractual Relations, and c) Count V – Tortious Interference

2  with Prospective Economic Advantage (collectively, the "SLAPP Claims").  Specifically,

3  each of the SLAPP Claims arises from Lenahan's publication of two statements on the

4  Facebook group: Internet Advertising – People Who Don't Pay (the "Facebook Group";

5  the allegedly defamatory statements identified in Paragraph 28 of RMG's Third Party

6  Complaint are referred to herein as the "<u>Statements</u>").

7          As discussed above, a party moving under the anti-SLAPP statute must make an

8  initial showing that the claims at issue arise from an act in furtherance of the moving

9  party's right of petition or free speech under the United States or California Constitution

10  in connection with a public issue.  *See Bosley Med. Inst., Inc. v. Kremer,* 403 F.3d 672,

11  682 (9th Cir.2005).  Such acts include:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.  Civ. P. Code §425.16(e)

18  Lenahan's statements on the Facebook Group satisfy prong three of this test—*i.e.* they

19  are written statements made in a public forum in connection with an issue of public

20  interest.

21          **1.  The Facebook Group is a public forum because it is a website that is**
22          **generally accessible to the public.**

23          As an initial matter, the Facebook Group constitutes a public forum, as that term is

24  used in section 425.16(e)(3).   California courts have routinely found that Internet

25  websites, particularly blogs, chat rooms, and other interactive websites, constitute public

26  fora.   *See MCSi, Inc. v. Woods*, 290 F. Supp. 2d 1030, 1033 (N.D. Cal. 2003) (finding

27  that  Yahoo! website chat room, dedicated to discussing a corporation, was a public forum for

28  purposes of §425.16.); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1107 (C.D. Cal.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

2004) ("Considering that the internet provides the most participatory form of mass speech yet developed, it is not surprising that courts have uniformly held or, deeming the proposition obvious, simply assumed that internet venues to which members of the public have relatively easy access constitute a 'public forum' or a place 'open to the public' within the meaning of section 425.16.") (internal citations and quotations omitted); *Kronemyer v. Internet Movie Data Base, Inc.*, 150 Cal. App. 4th 941, 950 (2007) (finding that "[u]nder its plain meaning, a public forum is not limited to a physical setting, but also includes other forms of public communication." Because statements on a website are accessible to anyone who chooses to visit the site, they "hardly could be more public"); *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006) ("Web sites accessible to the public, like the "newsgroups" where Rosenthal posted Bolen's statement, are "public forums" for purposes of the anti-SLAPP statute.").

Because the Facebook Group is an interactive website forum, where members of the public can freely post statements and read others' statements, the Facebook Group is a public forum as that term is used in section 425.16(e)(3). (Declaration of Jeffrey M. Rosenfeld in Support of Lenahan's Anti-SLAPP Motion ("Rosenfeld Decl.") *passim*.)

### 2. The Statements concern an issue of public interest because they are about an ongoing dispute of interest to a distinct group.

In addition to showing that the Statements were made in a public forum, to qualify for anti-SLAPP protection, Lenahan must show that the Statements concern an issue of public interest. Here, the public's interest is evident. Specifically, the Statements were posted on an Internet website, which is subscribed to by over 2,000 members, and which is dedicated precisely to the issues raised in the Statements.

The public interest requirement of section 425.16(e)(3) must be construed broadly to encourage participation by all segments of society in vigorous public debate. *See Gilbert v. Sykes*, 147 Cal. App. 4th 13, 22 (2007). Thus, courts have broadly construed the phrase "issue of public interest" to include any issue in which the public is interested; the issue need not be significant; it is enough that the public takes an interest in it. *See*

1   *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008).  The public interest

2   requirement is not limited to governmental matters; rather the term has been interpreted

3   expansively to include private conduct that has a broad interest.  *See Hailstone v.*

4   *Martinez*, 169 Cal. App. 4th 728, 737 (2008).

5        Moreover, the public interest is not limited to topics of general interest to the public

6   at large, but also covers matters of interest to a specific group, where the speech occurs

7   in the context of an ongoing dispute or discussion.  *See Du Charme v. Int'l Broth. of Elec.*

8   *Workers, Local 45*, 110 Cal. App. 4th 107, 119 (2003).  Thus, in *Wilbanks v. Wolk*, 121

9   Cal. App. 4th 883, 899-900 (2004), the court found that statements warning consumers

10  not to use the plaintiff's brokerage services were connected to an issue of public concern

11  even though the statements were not of interest to the public at large.  Similarly, in

12  *Thomas v. Quintero*, 126 Cal. App. 4th 635, 647 (2005), the court found that the

13  defendant's activities in protesting the maintenance and eviction practices of a landlord

14  dealt with an issue of public interest because the activities affected the broader interests

15  of all of the landlord's tenants.  And in *Damon v. Ocean Hills Journalism Club*, 85 Cal.

16  App. 4th 468, 479 (2000), the court found that critical statements about the general

17  manager of a 3,000 member senior citizen residential community concerned a public

18  issue because the challenged statements related to the future management and

19  leadership of the residential community as a whole.  In summary, a statement is made in

20  connection with an issue of public interest under section 425.16(e)(3) where the

21  statement concerns an ongoing dispute or concern with a business or organization, and

22  where the statement is of interest to a distinct segment of the population.

23       Several facts demonstrate that the Statements in this case were made in

24  connection with an issue of public interest under this standard.  First, the Facebook

25  Group is an Internet-based social media group, which is accessible by any person.

26  (Rosenfeld Decl. ¶2-3 & Ex. A.)  The Facebook Group is subscribed to by 2,244

27  members, and in all likelihood, is viewed by many, many more—*i.e.* an Internet user does

28  not need to become a member of the Facebook Group to view its contents.  (Rosenfeld

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1  Decl. ¶¶5-6 & Ex. A.)   Moreover, statements posted on the Facebook Group are

2  syndicated to the website located at <shoemoney.com>, which experiences over ten

3  thousand visits per month.  (Rosenfeld Decl. ¶8 & Ex. C.)

4        Second, the Facebook Group is specifically dedicated to the issue of Internet

5  publisher networks that do not pay their publishers.  (Rosenfeld Decl. ¶5-6 & Ex. A.)  To

6  wit, the Facebook Group is designed to provide a forum where Internet publishers can

7  warn other publishers about networks that have failed to pay their publishers, exhorting

8  members to "[c]all them out and let the world know."  (Rosenfeld Decl. ¶5-6 & Ex. A.)

9  Thus, as in *Wilbanks*, warnings to publishers on the Facebook Group relate to an issue

10  of public interest, even if they are not of interest to the public at large.

11       Third, the Statements at issue are closely related to the purpose of the Facebook

12  Group—*i.e.* the Statements warn publishers that Roger Dowd and RMG have failed to

13  pay their publishers.  (Rosenfeld Decl. ¶7 & Ex. B.)  The membership's interest in the

14  Statements is evidenced by the fact that several members of the Facebook Group took

15  the time to provide public, written responses to the Statements.  (Rosenfeld Decl. ¶7 &

16  Ex. B.)

17       Because the Statements concern an ongoing dispute that is relevant to a distinct

18  segment of the population, the Statements concern an issue of public interest under

19  section 425.16(e)(3).

20  **B.  RMG cannot establish prima facie claims for defamation or tortious**
    **    interference.**
21

22       Because Lenahan has shown that RMG's third, fourth, and fifth claims are subject

23  to the anti-SLAPP statute, the burden shifts to RMG to demonstrate a probability of

    prevailing on its claims. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010).
24
    To sustain this burden, RMG must demonstrate that its claims are both legally adequate
25
    and supported by a prima facie showing of facts sufficient to sustain a favorable
26
    judgment.  As discussed below, RMG cannot establish a prima facie claim for any of its
27
    SLAPP claims.
28

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

**1. RMG cannot establish a claim for defamation because the Statements are true and/or protected opinion.**

To prove a claim for defamation, RMG must submit evidence of: a) a publication, that is b) false, c) defamatory, and d) unprivileged, and that e) has a natural tendency to injure or that causes special damage. *Price v. Operating Engineers Local Union No. 3*, 195 Cal. App. 4th 962, 970 (2011). RMG cannot establish a claim for defamation because the Statements are true. Moreover, even if the Statements contained any tendency to mislead, the Statements comprise protected opinion. Thus, the Court should strike RMG's defamation claim under section 425.16.

**a. RMG cannot prevail on its defamation claim because the Statements are true.**

Truth is a complete defense to a defamation claim. *Hawran v. Hixson*, 209 Cal. App. 4th 256, 293 (2012). Moreover, a defendant need not justify the literal truth of every word of the allegedly defamatory matter. *Ringler Associates Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1180-81 (2000). It is sufficient if the defendant shows that the substance of the statement is true, regardless of slight inaccuracies in the details, so long as the imputation is substantially true. *See id.*

Here, the Statements are true. RMG owes Lenahan $13,200 for work Lenahan performed on behalf of RMG. (Lenahan Decl. ¶¶9-10.) RMG concedes that it has withheld this payment to Lenahan, supposedly because Lenahan's advertisements did not comply with RMG's terms. (TPC ¶11.) However, RMG cannot substantiate this argument. First, nothing in the Terms and Conditions or the Insertion Order defines the content of the advertisements Lenahan was permitted to circulate on behalf of RMG. (TPC Ex. A; Lenahan Decl. ¶3 & Ex. A.) Rather, the Terms and Conditions simply define the "Advertisement" as an "advertisement." (TPC Ex. A; Lenahan Decl. ¶3 & Ex. A.) Second, RMG specifically approved the content of Lenahan's ads. (Lenahan Decl. ¶6.)

The other Statement is also true. RMG owed Danna $14,080 for lead generation services he provided. (Danna Decl. ¶8 & Exs. A-B.) On or around September 18, RMG sent a wire to Danna's bank account. (Danna Decl. ¶9.) However, later that day, RMG

1   sought to reverse the wire, claiming that Danna had obtained the wire by fraud.  (Danna

2   Decl. ¶¶10-11.)  As a result of RMG's efforts, Danna's bank froze his account.  (Danna

3   Decl. ¶9.)  Only after Danna established that he was entitled to the wire, did the bank

4   unlock Danna's account and cancel RMG's wire reversal.  (Danna Decl. ¶12.)

5        Because RMG cannot produce any evidence to overcome Lenahan's evidence of

6   truth, its defamation claim fails.

7            **b.  RMG cannot prevail on its defamation claim because the
             Statements are protected opinions.**

8

9        In addition to their truth, the Statements cannot serve as a basis for RMG's

10  defamation claim because the Statements comprise protected opinion.  A statement is

11  not defamatory merely because it is adverse or offensive to the plaintiff.  *See Western*

12  *Broadcast Co. v. Times Co.*, 14 Cal. App. 2d 120, 124 (1936).  A statement that only sets

13  forth the author's argument or ultimate conclusions is not defamatory.  *See id.*  The First

14  Amendment of the U.S. Constitution compels this conclusion because "[h]owever

15  pernicious an opinion may seem, we depend for its correction not on the conscience of

16  judges and juries but on the competition of other ideas."  *Gertz v. Robert Welch, Inc.*, 418

17  U.S., 323, 339-40 (1974).

18       The Ninth Circuit applies a three-factor test to determine whether a statement

19  constitutes an opinion, stating:

20           To determine whether a statement implies a factual assertion, we examine
             the totality of the circumstances in which it was made. First, we look at the

21           statement in its broad context, which includes the general tenor of the
             entire work, the heated debate," the context supports the conclusion that

22           statements are opinion subject of the statements, the setting, and the
             format of the work. Next we turn to the specific context and content of the

23           statements, analyzing the extent of figurative or hyperbolic language used
             and the reasonable expectations of the audience in that particular

24           situation. Finally, we inquire whether the statement itself is sufficiently
             factual to be susceptible of being proved true or false.  *Underwager v.*

25           *Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995) (citations omitted).

26  Ultimately, the court must look at the totality of these circumstances to decide the natural

27  effect of the statement on an average reader.  *See Campanelli v. Regents of Univ. of*

28

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

1    *California*, 44 Cal. App. 4th 572, 578 (1996).  Whether a statement contains protected

2    opinion is a question of law for the court to decide.  *See Partington v. Bugliosi*, 56 F.3d

3    1147, 1152-53 (9th Cir. 1995).

4            In assessing the broad and specific contexts of a statement, courts look at the

5    medium and format in which the statement appears.  In the context of a heated debate

6    on the Internet, readers are more likely to understand accusations of misconduct as

7    figurative, hyperbolic expressions.  *See Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1106

8    (N.D. Cal. 1999); *see also Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1150 (2012) (finding

9    that ex-girlfriend's mother's statements that ex-boyfriend was a "deadbeat dad," that he

10   "may be taking steroids," that people "should be scared" of him, and that he had picked

11   up street walkers and homeless drug addicts, were opinions and thus were not

12   actionable defamation, where mother posted the statements on a social networking

13   website); *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 700 (2012) (finding that

14   comments posted by bank employee on Internet message board that the bank was

15   mismanaged and rendered poor service and that the bank's depositors would be well

16   advised to move their accounts before it was "too late" and "before they close"

17   constituted non-actionable opinion); *Rocker Managment LLC v. John Does*, No. 03-MC-

18   33, 2003 WL 22149380, *passim* (N.D. Cal. May 29, 2003) (finding that after looking at

19   the context, internet chat room poster's statements that investment management firm

20   threatened analysts who were bullish on certain stocks, spread lies about those stocks,

21   and was subject of SEC investigation, constituted statements of opinion).  Here, the

22   Statements were posted on the Facebook Group, a forum designed to further a heated

23   debate about "Internet deadbeats," and to encourage and discourage publishers from

24   working with specific publisher networks. Thus, the broad and narrow contexts indicate

25   that the Statements were perceived as opinions.

26           Moreover, the contents of the Statements themselves are not sufficiently factual to

27   be susceptible of being proved true or false.  Lenahan wrote that he was entitled to

28   $13,000 from RMG.   Importantly, RMG does not dispute that it owed $13,000 to

1    Lenahan, but rather argues that it was entitled to withhold that payment because

2    Lenahan's advertisements did not comply with RMG's standards.   By comparison,

3    Lenahan believes that his advertisements fully complied with RMG's standards.

4    (Lenahan Decl. ¶3, 7 & Ex. A.)  These beliefs reflect two sides of a debate, and thus the

5    Statements contain opinions.

6         Similarly, the portion of the Statements addressing RMG's efforts to reverse the

7    wire transfer to Danna consist of opinions.   Importantly, RMG does not deny that it

8    sought to reverse the wire.  Rather, RMG presumably believes it was justified in trying to

9    reverse the wire to Danna.   By comparison, Lenahan believes that RMG sought to

10   reverse the wire based on ulterior motives because Danna's advertisements complied

11   with RMG's guidelines.  (Lenahan Decl. ¶12.)  Again, these beliefs reflect two sides of a

12   debate.

13        Given the context and content of the Statements, a reasonable person would

14   understand the Statements as expressing opinions.  Because the Statements constitute

15   non-actionable opinion, the Court should strike RMG's defamation claim.

16        **2.   RMG cannot establish any element of its claim for tortious interference**
        **with a contractual relationship.**

17

18        To establish a claim for intentional interference with a contract, a plaintiff must

19   show: a) a valid contract between plaintiff and a third party, b) the defendant's knowledge

20   of that contract, c) the defendant's intentional acts designed to induce a breach or

21   disruption of the contract, d) an actual breach or disruption of the contract, and e)

22   resulting damage.  *See Winchester Mystery House, LLC v. Global Asylum, Inc.*, 210 Cal.

23   App. 4th 579, 596 (2012).  The Court should strike RMG's claim for interference with

24   contractual relations under section 425.16 because RMG cannot substantiate several

25   elements of this claim.

26        As an initial matter, RMG's interference claim is entirely derivative of its

27   defamation claim; *i.e.* Lenahan's supposed defamation caused the alleged interference.

28   (TPC ¶¶48-49.)   However, as discussed above, the Statements are not defamatory

1   because they are true and/or protected opinion.  *See supra* Part B.1.b.  A person cannot

2   incur liability for interfering with contractual relations by giving truthful information, by

3   using loose, figurative, or hyperbolic language, or by offering mere opinions.  *See*

4   *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1014 (2001).  Because the

5   Statements are true and/or opinions, RMG cannot establish its interference claim, and

6   the claim should be stricken.

7        Moreover, RMG has no evidence that Lenahan knew about any contract between

8   RMG and a third party, which was supposedly disrupted.   To the contrary, RMG

9   undertakes efforts to prevent its publishers from learning the identities of RMG's other

10  publishers.  (Lenahan Decl. ¶8.)  As a result, Lenahan did not know about the vast

11  majority of people/businesses with whom RMG had contracted.    Thus, RMG's

12  interference claim fails for this reason as well.

13       To sustain its burden, RMG must also produce admissible evidence that a contract

14  was breached or disrupted as a result of Lenahan's conduct.  *See Woods v. Fox Broad.*

15  *Sub., Inc.*, 129 Cal. App. 4th 344, 356 (2005).  While RMG's complaint contains vague

16  allegations of a "deteriorated" relationship, it does not identify this relationship nor explain

17  how the relationship has deteriorated.  Moreover, mere deterioration is not sufficient to

18  sustain a claim for interference; rather, RMG must submit evidence that a contract was

19  breached or disrupted.  *See Tuchscher Dev. Enterprises, Inc. v. San Diego Unified Port*

20  *Dist.*, 106 Cal. App. 4th 1219, 1240 (2003) (striking claim under section 425.16 where

21  plaintiff had not produced evidence of any breach or disruption of contractual

22  relationship).  Lenahan does not believe that RMG can substantiate such a breach or

23  disruption.

24       Finally, to establish its interference claim, RMG must produce admissible evidence

25  that it suffered damages as a result of the supposed breach or disruption.  Where

26  damages are a necessary element of a claim, a plaintiff opposing an anti-SLAPP motion

27  must submit prima facie evidence of those damages.  *See Navellier v. Sletten*, 106 Cal.

28  App. 4th 763, 775 (2003).  As noted above, damages are a necessary element of a claim

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1    for interference with contractual relationships.  However, Lenahan does not believe that

2    RMG can produce any credible evidence of damages.

3        For all of these reasons, the Court should strike RMG's claim for interference with

4    contractual relations under section 425.16.

5        **3.  RMG cannot establish any element of its claim for tortious interference
         with a prospective economic advantage.**

6

7    RMG's claim for interference with prospective economic advantage fails for many

8    of the same reasons that RMG's other interference claim fails.  To establish a claim for

9    interference with prospective economic advantage, a plaintiff must show: a) an economic

10   relationship between the plaintiff and some third party, with the probability of future

11   economic benefit to the plaintiff, b) the defendant's knowledge of that relationship, c)

12   intentional acts by the defendant designed to disrupt the relationship, d) an actual

13   disruption of the relationship, and e) resulting damages.  *See Marsh v. Anesthesia Serv.*

14   *Med. Group, Inc.*, 200 Cal. App. 4th 480, 504 (2011).  Moreover, the intentional acts by

15   the defendant must be independently wrongful.  *See Korea Supply, supra,* 29 Cal. 4th

16   1134, 1158-59 (2003).

17       As with RMG's claim for interference with contractual relations, RMG cannot

18   establish many of the elements of its claim for interference with prospective economic

19   advantage.  To wit: a) RMG cannot show that Lenahan engaged in any independently

20   wrongful conduct where the Statements are true and/or protected opinion, b) RMG

21   cannot show that Lenahan knew about any relationship between RMG and a third party,

22   c) RMG cannot show that an actual relationship was disrupted as a result of the

23   Statements, and d) RMG cannot show any damages resulted from the supposed

24   disruption.

25       Moreover, RMG has not alleged—let alone submitted evidence of—a concrete

26   relationship with a third party that was likely to lead to an economic benefit for RMG.  To

27   establish a claim for interference with prospective economic advantage, a plaintiff must

28   plead and prove the existence of an actual relationship that was likely to produce a

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1   specific benefit, and not the mere speculative expectation that a potentially beneficial

2   relationship will arise.  *See Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th

3   212, 243 (2005).  Thus, it is not enough for RMG to speculate that such a relationship

4   exists or that a future benefit might occur.  *See id.*  Rather, RMG must submit evidence of

5   an actual, existing relationship to establish a claim for intentional interference with

6   prospective economic advantage.  *See Salma v. Capon*, 161 Cal. App. 4th 1275, 1291

7   (2008).  Lenahan does not believe that RMG has evidence of an actual relationship,

8   which was likely to lead to an economic advantage, and which was disrupted by the

9   Statements.

10          For all of these reasons, the Court should strike RMG's claim for interference with

11  prospective economic advantage under Civil Procedure Code section 425.16.

12                                   **CONCLUSION**

13          For the foregoing reasons, Lenahan respectfully requests that the Court: a) strike

14  Counts Three, Four, and Five from RMG's Third-Party Complaint, and b) award Lenahan

15  the costs and fees he incurred in bringing this motion.

16

17  Respectfully submitted,

18  DATED:  January 18, 2013                KRONENBERGER ROSENFELD, LLP

19

20                                          By:  ___s/Jeffrey M. Rosenfeld_____
                                                 Jeffrey M. Rosenfeld
21

22                                          Attorneys for Third-Party Defendant Ryan
                                            Lenahan and for Specially Appearing Third-
23                                          Party Defendant Kyle Danna

24

25

26

27

28



KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108