JOSHUA M. BRIONES (Bar No. 205293)
joshua.briones@dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067-4704
Tel: 310-595-3000
Fax: 310-595-3300

ALBERT E. HARTMANN (*pro hac vice* pending)
albert.hartmann@dlapiper.com
DLA PIPER LLP (US)
203 North LaSalle Street, Ste 1900
Chicago, IL 60601-1293
Tel: 312-368-4000
Fax: 312-236-7516

VISHALI SINGAL (Bar No. 267481)
vishali.singal@dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

Attorneys for Defendant and Third-Party Plaintiff
REACH MEDIA GROUP, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID TRINDADE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REACH MEDIA GROUP, LLC, a Delaware limited liability company,<br><br>Defendant.<br><br>REACH MEDIA GROUP, LLC, a Delaware limited liability company,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>RYAN LENAHAN, individually, KYLE DANNA, individually, and EAGLE WEB ASSETS INC., a corporation,<br><br>Third-Party Defendants. | CASE NO 5:12-CV-04759 (PSG)<br><br>(Complaint Filed: September 12, 2012)<br><br>**THIRD-PARTY PLAINTIFF REACH MEDIA GROUP, LLC'S OPPOSITION TO THIRD-PARTY DEFENDANTS RYAN LENAHAN'S AND KYLE DANNA'S MOTION TO STRIKE AND/OR DISMISS THIRD-PARTY COMPLAINT AND REQUEST FOR LIMITED JURISDICTIONAL DISCOVERY**<br><br>Date: March 12, 2013<br>Time: 10:00 a.m.<br>Courtroom: 5, 4th Floor<br>Judge: Honorable Paul Singh Grewal |

DLA PIPER LLP (US)
SAN FRANCISCO

OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR
DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

# TABLE OF CONTENTS

                                                                                    **Page**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................ 2

      A.    The Parties and Their Relationship ........................................................ 2

      B.    Termination of Third-Party Defendants ................................................ 3

      C.    Plaintiff's Class Action Complaint ........................................................ 4

      D.    Defamation by Third-Party Defendant Lenahan .................................. 5

      E.    RMG's Third-Party Complaint .............................................................. 7

III.  ARGUMENT ..................................................................................................... 8

      A.    The Allegations in the Third-Party Complaint Sufficiently State a Third-
            Party Claim Pursuant to FRCP 14 and the Independent Tort Causes of
            Action Are Properly Joined Pursuant to FRCP 18 ................................ 9

            1.    RMG's Allegations Sufficiently Establish RMG's Contractual
                  Right to Indemnification for Any Damages and Losses It Suffers As
                  a Result of Plaintiff's Class Action ........................................... 9

            2.    RMG's Claims For Breach of Contract, Libel Per Se, Tortuous
                  Interference With Contractual Relations, and Tortuous Interference
                  With Economic Advantage Are Properly Joined To RMG's Claim
                  for Breach of Warranty Pursuant to FRCP 18 ......................... 12

      B.    The Third-Party Complaint Sufficiently Alleges Libel Per Se, Tortuous
            Interference With Contractual Relations, and Tortuous Interference With
            Prospective Economic Advantage Claims for Relief.  RMG Requests
            Leave to Amend Its Claims for Breach of Warranty and Breach of Contract ...... 13

            1.    RMG Has Alleged a Claim of Libel Per Se .............................. 13

            2.    RMG Has Asserted Claims of Tortuous Interference with
                  Contractual Relations and Tortuous Interference With Prospective
                  Economic Advantage Against Lenahan ..................................... 17

            3.    RMG Requests Leave to Amend Its Breach of Contract and Its
                  Breach of Warranty Claims ....................................................... 18

      C.    MG Requests This Court to Permit RMG to Complete Limited
            Jurisdictional Discovery on Third-Party Defendant Danna and Leave to
            Amend the Third-Party Complaint to Allege The Basis for Personal
            Jurisdiction Over Danna ....................................................................... 19

      D.    Request For Leave to Amend ............................................................... 20

IV.   CONCLUSION ............................................................................................... 20

DLA PIPER LLP (US)
SAN FRANCISCO

# TABLE OF AUTHORITIES

Page

CASES

*Banks v. Emeryville,*
    109 F.R.D. 535 (N.D. Cal. 1985) ........................................................................ 8, 9

*Barker v. Riverside County Office of Edu.,*
    584 F.3d 821 (9th Cir. 2009) ............................................................................... 12

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................ 13

*Data Disc, Inc. v. Systems Technology Associates, Inc.,*
    557 F.2d 1280 (9th Cir. 1977) ............................................................................. 19

*Federal Deposit Insurance Corporation v. Loube,*
    134 F.R.D. 270 (N.D. Cal. 1991) ....................................................................... 7, 8

*Foman v. Davis,*
    371 U.S. 178 (1962) ............................................................................................ 19

*G.M. Sign, Inc. v. Franklin Bank S.S.B.,*
    2006 WL 2666289 (N.D. Ill. 2006) ...................................................................... 9

*In re Med. Capital Sec. Litig.,*
    842 F. Supp. 2d 1208 (C.D. Cal. 2012) ............................................................. 13

*In re Stac Electronics Securities Litig.,*
    89 F.3d 1399 (9th Cir. 1996) ............................................................................... 13

*Intri-Plex Techs. v. Crest Grp., Inc.,*
    499 F.3d 1048 (9th Cir. 2007) ............................................................................. 20

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal.4th 1134 (2003) ....................................................................................... 18

*Maponics, LLC v. Wahl,*
    2008 WL 2788282 (N.D. Cal. July 18, 2008) ............................................... 14, 15

*Ocasio-Hernandez v. Fortuno-Burset,*
    640 F.3d 1 (1st Cir. 2011) ................................................................................... 13

*Orchid Biosciences, Inc. v. St. Louis University,*
    198 F.R.D. 670 (S.D. Cal. Jan. 11, 2001) .......................................................... 19

*Osorio v. State Farm Bank, F.S.B.,*
    278 F.R.D. 671 (S.D. Fla. 2011) ...................................................................... 8, 11

OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR
DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

DLA PIPER LLP (US)
SAN FRANCISCO

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,
  50 Cal.3d 1118 (1990) ................................................................. 17

*Peloza v. Capistrano Unified School Dist.*,
  37 F.3d 517 (9th Cir. 1994)........................................................ 12

*Powerlineman.com, LLC v. Kackson*,
  2007 WL 3479562 (E.D. Cal. 2007) ................................... 13, 16

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
  806 F.2d 1393 (9th Cir. 1986) ................................................... 20

*Silverstein v. E360Insight, LLC*,
  2008 WL 1995217 (C.D. Cal. May 5, 2008) ............................. 15

*Southwest Administrators, Inc. v. Rozay's Transfer*,
  791 F.2d 769 (9th Cir. 1986) ....................................................... 8

*Stewart v. American International Oil & Gas Co.*,
  845 F.2d 196 (9th Cir. 1988) ....................................................... 9

*Tiesler v. Martin Paint Stores, Inc.*,
  76 F.R.D. 640 (E.D. Pa. 1977) ................................................... 9

*Trans World Accounts, Inc. v. Associated Press*,
  425 F. Supp. 814 (N.D. Cal. 1977) ........................................... 13

**STATUTES**

Cal. Civ. Code § 45a .................................................................. 13

**RULES**

Fed. R. Civ. P. 12(b)(2) .............................................................. 19

Fed. R. Civ. P. 12(b)(6) ............................................. 12, 13, 17, 18

Fed. R. Civ. P. 14 ...................................................... 7, 8, 9, 11, 20

Fed. R. Civ. P. 14(a) .................................................................... 8

Fed. R. Civ. P. 14(a)(1) ................................................................ 8

Fed. R. Civ. P. 14(a)(4) .............................................................. 12

Fed. R. Civ. P. 15(a) .................................................................. 19

DLA PIPER LLP (US)
SAN FRANCISCO

-iii-
OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR
DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

# TABLE OF AUTHORITIES
(continued)

Page

Fed. R. Civ. P. 18 .................................................................................. 1, 2, 7, 8, 11, 20

Fed. R. Civ. P. 18(a) .............................................................................................. 11, 12

DLA Piper LLP (US)
San Francisco

-iv-
OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR
DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

# I.   **INTRODUCTION**

The Third-Party Complaint in this action is a classic example of the use of impleader. Reach Media Group, LLC ("RMG") has been sued for conduct it did not engage in, but which it understands Third-Party Defendants Ryan Lenahan, Kyle Danna, and Eagle Web Assets, Inc. engaged in to some degree, purportedly in carrying out their duties described in the Agreements between them and RMG. Through this conduct, Third-Party Defendants breached warranties and representations in the Agreements, thus triggering the contractual indemnification provision in the Agreements. Should RMG suffer damages and any other losses in the Plaintiff's Class Action due to this conduct, Third-Party Defendants must indemnify RMG for those damages and losses. Indemnification is the basis for this Third-Party Complaint. The additional, independent claims in the Third-Party Complaint are those properly joined in accordance with the permission to do so afforded by FRCP 18, once a third-party claim has been asserted.

From the outset, Third-Party Defendants Lenahan and Danna ("Third-Party Defendants") frame the Third-Party Complaint as an attempt to "derail" Plaintiff's Class Action. This is patently not true. While they freely accuse RMG of filing an "unmeritorious" Third-Party Complaint, they refuse to acknowledge the relationship between Third-Party Defendants' conduct pursuant to, but in violation of, the Agreements and the allegations of Plaintiff's Class Action Complaint: (a) Plaintiff sued RMG over the receipt of unsolicited text message advertisements that directed consumers to unknown websites which then re-directed them back to websites affiliated with RMG; (b) RMG did not send (or ask any other entity to send) the text message advertisements identified in Plaintiff's Class Action Complaint; and (c) RMG alleges that Third-Party Defendants sent unsolicited text message advertisements in carrying out their obligations under their Agreements with RMG, in violation of those Agreements. Incredibly, despite these allegations in the Third-Party Complaint, Third-Party Defendants argue that all of the claims and allegations in the Third-Party Complaint are "are completely independent" of Plaintiff's TCPA claim against RMG. They further fail to acknowledge the allegations in the Third-Party Complaint that the indemnification provision in their Agreements with RMG was triggered when they sent unsolicited text messages in carrying out their obligations under the Agreements, the

DLA PIPER LLP (US)
SAN FRANCISCO

OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR
DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

legal authority establishing that third-party claims may be asserted in TCPA actions based on contractual indemnification clauses, or the existence of or flexibility offered by FRCP 18 to join independent claims to a third-party claim.

Third-Party Defendant Lenahan has failed to demonstrate that RMG's prima facie showing of its claims for libel per se, tortuous interference with contractual relations, and tortuous interference with prospective economic advantage does not meet the liberal pleading standard of federal court. As to RMG's breach of warranty and breach of contract claims, RMG respectfully requests leave to amend these claims.

Third-Party Defendant Danna moves to dismiss the Third-Party Complaint on the grounds that this Court lacks personal jurisdiction over him. RMG respectfully requests that this Court permit RMG to engage in limited jurisdictional discovery regarding Danna and leave to amend the Third-Party Complaint to allege facts supporting personal jurisdiction. If this Court grants any part of this Motion, RMG respectfully requests leave to amend.

## II.   STATEMENT OF FACTS

### A.   The Parties and Their Relationship

RMG is a leading performance based publisher network that provides advertisers with a platform to scale their affiliate market solutions.

Third-Party Defendants applied on RMG's website to join RMG's publisher network. On or around August 9, 2012, Lenahan entered into an Agreement with RMG to publish RMG's pre-approved advertising message, or RMG's Creatives. On or around September 4, 2012, Danna entered into an Agreement with RMG to publish RMG's Creatives, as well. The Terms and Conditions governing each of these Agreements was identical and include the following indemnification provision:

> Each party agrees to indemnify, defend, and hold harmless the other party and its employees, agents, officers and directors, against any and all claims, causes of actions, judgments, demands, damages, losses or liabilities, including costs and expenses (including reasonable attorneys fees and costs of suit), arising out of or relating to (a) any claim based upon infringement of copyright, trademark, patent, or trade secret or other intellectual property right of any third party; (b) any claim, representation, or statement made in the Advertisement; (c) any breach of any

DLA Piper LLP (US)
San Francisco

OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR
DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

representation or warranty contained in this Agreement.

The Agreements into which Third-Party Defendants entered with RMG required them each to publish RMG's Creatives for different advertising campaigns. Lenahan was required to publish advertisements for the following campaigns, entitled: (1) Auto Loan Professionals, (2) Cash Advance Diamond, (3) Central Payday Advance, (4) Honest Cash Loan, (5) Huge Cash Advance, (6) Instant Cash Express, (7) Mobile Cash Source, and (8) Second Chance Cash Advance. Danna was required to publish advertisements for one campaign – the Homeland Cash Advance campaign.

**B.    Termination of Third-Party Defendants**

Roger Dowd ("Dowd"), the President and Chief Executive Officer of RMG, began receiving complaints from recipients of text messages some time after July 21, 2012, purportedly on RMG's behalf. One of the text messages for which Dowd received a complaint was the following:

> Chase is offering $1500 cash loans deposited within 2hrs. NO credit checks or faxing! Get the money today by applying right now on your phone at TwoHourCash.net.

One recipient complained that he received a text message advertisement which provided a link that itself re-directed to an RMG-affiliated website. The recipient stated that he never provided authorization to receive the text message at issue. Dowd subsequently received additional complaints from recipients of text messages sent some time after July 21, 2012, purportedly on RMG's behalf.

After receiving these complaints, Dowd notified Lenahan of the complaints received. Dowd informed Lenahan he had sent unauthorized text messages and was in breach of the Agreement because he sent text messages that did not comply with the terms of the Agreement between RMG and Lenahan. Dowd further demanded that Lenahan cease sending unlawful text messages. Subsequently, Dowd received additional complaints regarding unsolicited text messages from their recipients, spoke with Lenahan again, and demanded that Lenahan cease sending text messages that were not compliant with the terms of the Agreement and in violation

-3-

DLA PIPER LLP (US)
SAN FRANCISCO

of the law, provide to Dowd the OPTIN information Lenahan used to determine the recipients of his text messages, ensure all of his marketing efforts were compliant with the CAN-SPAM Act of 2003, and ensure that he was following best practices with regard to publication of advertisements.

Lenahan failed to provide to Dowd the OPTIN information and failed to certify to Dowd that his marketing efforts were compliant with the CAN-SPAM Act of 2003 and in accord with best practices for publication of advertisements. As a result, RMG officially suspended Lenahan as an RMG publisher on or around August 26, 2012.

Thereafter, RMG learned that Danna was also sending text messages purportedly on RMG's behalf that were not compliant with the terms of the Agreement he entered into with RMG. Danna was officially suspended as an RMG publisher on or around September 11, 2012.

**C.    Plaintiff's Class Action Complaint**

On September 12, 2012, Plaintiff filed the Class Action Complaint in this matter against RMG, alleging that RMG violated the TCPA by sending, or having sent on its behalf, unsolicited text message advertisements to Plaintiff's and purported class members' cell phones. Specifically, Plaintiff alleged that the text message advertisements were sent without the prior express consent of their recipients, in violation of the TCPA. The text messages identified in the Class Action Complaint are the following:

> Lenders offering $1,500 cash loans deposited within 2hrs. NO credit checks! Get money today by applying right now directly on your phone at www.TwoHourCash.com
>
> Chase is offering $1500 cash loans deposited within 2hrs. NO credit checks! Get the money today by applying right now directly on your phone at CashIn2Hrs.com.
>
> Chase is offering $1500 cash loans deposited within 2hrs. NO credit checks! Get the money today by applying right now on your phone at www.TwoHourCash.org.
>
> Chase is offering $1500 cash loans deposited within 2hrs. NO credit checks or faxing!  Get the money today by applying right now on your phone at TwoHourCash.net

DLA PIPER LLP (US)
SAN FRANCISCO

OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR
DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

> Chase is offering $1,500 cash loans deposited within 2hrs. NO credit checks! Get the money today by applying right now on your phone at www.TwoHourCash.org.

> Wells Fargo: Get up to $1500 deposited into your account today. Not a scam & bad credit ok. Apply from your phone at bit.ly/NmCRO0 now. Instant approval.

Plaintiff alleged that the websites CashIn2Hrs.com, TwoHourCash.net, www.TwoHourCash.org and the link bit.ly/NmCRO0 all lead directly to RMG-owned and/or operated websites, including CashAdvanceDiamond.com and MobileCashSource.com.

RMG never sent, or authorized to be sent, any of the text messages identified in the Class Action Complaint, and has no ownership, control over, or affiliation with the websites CashIn2Hrs.com, TwoHourCash.net, www.TwoHourCash.org and the link bit.ly/NmCRO0. None of RMG's pre-approved Creatives for the campaigns Third-Party Defendants agreed to publish for included the text message advertisements identified in the Class Action Complaint, or allowed RMG-affiliated messages to direct consumers to CashIn2Hrs.com, TwoHourCash.net, www.TwoHourCash.org and the link bit.ly/NmCRO0. As the messages at issue directed consumers to non-RMG websites and were otherwise not in compliance with RMG's pre-approved Creatives, none of these messages were sent on behalf of RMG (but rather were sent on behalf of the Third-Part Defendants or other entities who owned or controlled the websites identified in the text messages).

### D.    Defamation by Third-Party Defendant Lenahan

RMG did not pay Lenahan pursuant to the Agreement because Lenahan's text messages did not comply with the Terms of the Agreement, and were not sent on behalf of RMG. As alleged in the Third-Party Complaint, the Payment provision of the Agreement states that:

> PUBLISHER will invoice Reach Media Group on a monthly basis at the payout rates reflected in the Insertion Order. The invoice will reflect delivery of final Qualified Lead numbers that are based upon numbers reported by Reach Media Group to PUBLISHER pursuant to the terms of this Agreement.

A "Qualified Lead" is defined in the Terms of the Agreement, which are attached to the Third-

OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR
DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

1  Party Complaint, as:

3      prospects who meet Reach Media Group's screening criteria . . . and who provide
       their complete contact data.  PUBLISHER will be paid on a delivered per lead
4      basis defined as when a user agrees through a pre approved opt-in method to be
       contacted.  In the case of any dispute between the parties as to the number of
5      Qualified Leads, Reach Media Group's numbers will control.

7  The Terms of the Agreements further specify that any changes to RMG's pre-approved Creatives

8  without prior written permission would result "in the loss of payment of Leads."  As Third-Party

9  Defendants failed to comply with the Terms of the Agreements, Third-Party Defendants were not

10  entitled to payment pursuant to these provisions of the Agreements.

11      RMG is informed and believes, and thereon alleged in the Third-Party Complaint, that

12  Lenahan subsequently posted defamatory statements about Dowd and RMG on the social

13  networking site Facebook.  On September 28, 2012, an email from "Ryan Lenahan" to "Internet-

14  Advertising – People Who Don't Pay" included two comments by the individual "Ryan

15  Lenahan", made two minutes apart from one another.  The first comment was:

16      Roger Dowd from Reach Media group owes me $13,000 and forcing me to hire
       Harrison Gevirtz to take them to court.  I'm also aware that they owe another
17     network $xx,xxx in addition to another affiliate they owe $xx,xxx.  Roger claims
       we were using "unapproved" sms content however I have countless emails, skype
18     transcripts....etc where he told me to use his exact word for word message on my
       marketing materials or else risk non payment, which I did under threat and now
19     hes claiming its unapproved BS story.

21  The second comment, only two minutes later, stated:

23      Roger Dowd sent a 14k wire to my partner whom was using the very same sms
       content, then 3 days later contacted the bank and pretended the wire they sent was
24     fraud in attempts to get it reversed.  Luckily a signed IO, invoice, emails,
       transcripts...etc got the bank to realize it was a BS story and stopped the
25     fraudulent reversal.

26      As a result of the defamatory postings by Lenahan, RMG's counsel, DLA Piper LLP

27  (US), sent a cease and desist letter by Federal Express and e-mail to Lenahan on October 15,

28  2012, demanding that he cease and desist from this conduct and from engaging in further

DLA Piper LLP (US)
San Francisco

OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR
DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

unlawful conduct directed at Dowd and RMG, and that he confirm his compliance with these demands in writing to the offices of DLA Piper LLP (US) no later than October 22, 2012. RMG's counsel never received any confirmation in writing or otherwise from Lenahan.

Subsequently, on November 4, 2012, another email was sent from "Ryan Lenahan" to "Internet Advertising – People Who Don't Pay," which included a third comment from an individual named "Ryan Lenahan" stating "Just an update, over 3 months have passed and have still not seen a dime." The email also showed two comments by individuals to Lenahan's September 28, 2012 posts about Dowd and RMG. They said "Good to know, thanks for the heads up" and "oh my. . . not going near that network." Additionally, one of RMG's largest clients notified RMG that it saw the second September 28, 2012 comment and it further indicated to RMG that it would require a personal guarantee or prepayment in future engagements with RMG.

### E.   RMG's Third-Party Complaint

After Plaintiff sued RMG for violations of the TCPA, RMG answered Plaintiff's Class Action Complaint and brought a Third-Party Complaint in a timely manner thereafter, against Third-Party Defendants Lenahan and Danna, and third-party defendant Eagle Web Assets, Inc., seeking indemnification for any damages or losses it suffers as a result of Plaintiff's lawsuit, asserting allegations regarding RMG's right to indemnification to establish RMG's third-party claim for indemnification, and asserting a Breach of Warranty cause of action to establish the applicability of the indemnification clause. Additionally, RMG joined to the third-party claim the causes of action for Breach of Contract, Libel Per Se, Tortuous Interference With Contractual Relations, and Tortuous Interference With Prospective Economic Advantage in compliance with FRCP 18.

DLA Piper LLP (US)
San Francisco

-7-
OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

# III. ARGUMENT

Rule 14, is "designed to reduce multiplicity of litigation" and thus "is construed liberally in favor of allowing impleader." *Federal Deposit Insurance Corporation v. Loube* , 134 F.R.D. 270, 272 (N.D. Cal. 1991). The third-party plaintiff is not required to show that the third-party defendant is automatically liable if the third-party plaintiff loses the underlying suit. *Id.* (citing *Banks v. Emeryville*, 109 F.R.D. 535, 540 (N.D. Cal. 1985). Rather, "[i]t is sufficient if there is some possible scenario under which the third party defendant may be liable for some or all of the defendant's liability to plaintiff." *Id.* Indeed, the purpose of impleader is "to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third individual who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim." *Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986). Indemnity is an example of the derivative liability intended to be addressed through the FRCP 14 impleader. *See Osorio v. State Farm Bank, F.S.B.*, 278 F.R.D. 671 (S.D. Fla. 2011) (finding impleader appropriate under FRCP 14(a) where the third-party plaintiff intended to seek contractual indemnification and common law indemnification against the third-party defendant.)

Claims brought pursuant to FRCP 14 are deemed "ancillary" to the plaintiff's original claim against the defendant/third-party plaintiff, thereby allowing a court "to adjudicate claims by defendants or third parties arising from the same transaction or occurrence as a diversity or federal question claim and which do not themselves meet federal jurisdiction standards. . . . Accordingly, no independent basis for jurisdiction is required." *Federal Deposit Insurance Corp.*, 134 F.R.D. at 273. The dismissal of third-party complaints "is not favored unless it appears that in no event would the pleader be able to prove an actionable claim." *Banks*, 109 F.R.D. at 540.

**A.** **The Allegations in the Third-Party Complaint Sufficiently State a Third-Party Claim Pursuant to FRCP 14 and the Independent Tort Causes of Action Are Properly Joined Pursuant to FRCP 18.**

    **1.** **RMG's Allegations Sufficiently Establish RMG's Contractual Right to Indemnification for Any Damages and Losses It Suffers As a Result of Plaintiff's Class Action.**

FRCP 14, governing third-party complaints, states that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or *may be* liable to it for all or part of the claim against it." FRCP 14(a)(1) (emphasis added). The "use of the word 'claim' in [FRCP] 14 avoids the narrow concepts of 'cause of action' and employs instead the idea of the claim as a group of operative facts giving occasion for judicial action." *Tiesler v. Martin Paint Stores, Inc.*, 76 F.R.D. 640, 642 (E.D. Pa. 1977). Indeed, "claims upon which indemnity is based need not be similar to the claims asserted in the original complaint." *Banks*, 109 F.R.D. at 540. In actions alleging violations of the TCPA, courts may permit Third-Party Complaints based on contractual indemnification provisions. *See G.M. Sign, Inc. v. Franklin Bank S.S.B.*, 2006 WL 2666289 (N.D. Ill. 2006) (granting a motion to file a third-party complaint in a TCPA class action where the defendant bank's contract with a third-party facsimile broadcast service provider included an indemnification provision).

Third-Party Defendants acknowledge that the Third-Party Complaint "repeatedly references the indemnification clause in the Terms", but then argue that the "claims and allegations therein are completely independent of Plaintiff's claims against RMG." (Motion, p. 6, ll. 22-26.) They rely on the Ninth Circuit's decision in *Stewart v. American International Oil & Gas Co.*, 845 F.2d 196 (9th Cir. 1988) for the proposition that the "crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff. The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough." (Motion, p. 6, ll. 16-18, citing *Stewart*, 845 F.2d at [200].) However, the distinction between an *indemnification* claim arising out of the conduct *that is the basis for* the plaintiff's claim against the third-party plaintiff, permissible under FRCP 14, and a claim simply arising from the same general

-9-

DLA PIPER LLP (US)
SAN FRANCISCO

OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR
DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

transaction or set of facts as the original claim is a critical one. Plaintiff's claim against RMG is premised on the allegation that RMG made, or authorized to be made on its behalf, unsolicited text message advertisements to recipients who never provided prior express consent for the same, in violation of the TCPA. In other words, the basis of Plaintiff's claim against RMG is the alleged unsolicited text messages. Similarly, the contractual indemnification clause in the Agreements between Third-Party Defendants and RMG is triggered, among other situations, where Third-Party Defendants violate federal law, including the TCPA, in carrying out their duties pursuant to the Agreements, specifically the publication of text message advertisements – the exact same conduct at issue in Plaintiff's TCPA Class Action. In short, RMG is being sued for the actions of the Third-Party Defendants and thus its claims against them can in no way be viewed as unrelated to Plaintiff's claim.

The first cause of action in RMG's Third-Party Complaint, Breach of Warranty, and the allegations of the Third-Party Complaint under the Section "Legal Basis For This Third-Party Complaint", sufficiently plead RMG's right to indemnification. These sections of the Third-Party Complaint describe the indemnification provision in each of the Agreements between Third-Party Defendants and RMG (TPC, ¶ 15), the warranty provision to which Third-Party Defendants agreed (TPC, ¶ 15), and how Third-Party Defendants breached their warranties to RMG – by sending text messages to cellular phone numbers without the prior express consent of the called parties, in violation of federal law, and the very conduct at issue in Plaintiff's Class Action. (TPC, ¶¶ 34-37.) As alleged in the Third-Party Complaint, the representations and warranties each Third-Party Defendant made included the obligation to comply with the laws of the United States and to refrain from engaging in any illegal activities of any kind in association with those Agreements. (TPC, ¶ 15.) Third-Party Defendants simply ignore these key allegations in the Third-Party Complaint when moving to dismiss the third-party claim.

Third-Party Defendants next attempt to use the *likelihood* that Third-Party Defendants sent the one text message received by the named Plaintiff, as opposed to any of the other text messages identified in the Plaintiff's Class Action Complaint, as grounds for dismissing the Breach of Warranty claim, directly related to the application of the indemnification clause in the

-10-

DLA PIPER LLP (US)
SAN FRANCISCO

OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR
DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

Agreements. They specifically argue that "Danna, who did not sign up with RMG until September 4, 2012, did not send the text to Plaintiff on August 13, 2012, and it is highly unlikely that Lenahan, who signed up on August 9, 2012, did." (Motion, p. 7, ll.5-9) (emphasis added). This argument is improper as grounds for dismissing RMG's third-party claim against Third-Party Defendants for two reasons. First, contrary to Third-Party Defendants' assertion, it is very possible that Lenahan, who acknowledges he signed up as a publisher with RMG on August 9, 2012, sent a text message four days later, on August 13, 2012, the date the Plaintiff in the Class Action allegedly received an unsolicited text message. Why such a transaction is "highly unlikely", as Third-Party Defendants argue, is perplexing. Third-Party Defendants offer no explanation. Second, Third-Party Defendants omit the fact that Plaintiff's Class Action is based on five other text messages besides the one received by the named Plaintiff, and the class sought to be certified includes recipients in the U.S. of all messages "made by or on behalf of" RMG "promoting payday loans" over an undefined period, and thus encompasses the entire time between when Third-Party Defendants contracted with RMG and when RMG terminated those contracts due to the unauthorized conduct at issue. The dates these text messages were sent and the frequency with which they were sent remain unknown. Accordingly, the fact that Danna enrolled as a publisher with RMG after the named Plaintiff received one text message at issue in the Class Action is irrelevant in determining whether RMG has properly asserted a third-party claim pursuant to FRCP 14.

RMG properly asserted a third-party claim by alleging the existence of a contractual indemnification clause in the Agreements between Third-Party Defendants and RMG; alleging Third-Party Defendants' conduct that breached the representations and warranties of those Agreements, thus triggering the indemnification clause; and alleging conduct by Third-Party Defendants – the publication of unsolicited text message advertisements – that is identical to the subject matter of Plaintiff's Class Action. Should this Court conclude that this third-party claim is not clearly expressed, however, RMG respectfully requests that leave to amend be granted.

DLA Piper LLP (US)
San Francisco

-11-
OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR
DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

2. **RMG's Claims For Breach of Contract, Libel Per Se, Tortuous Interference With Contractual Relations, and Tortuous Interference With Economic Advantage Are Properly Joined To RMG's Claim for Breach of Warranty Pursuant to FRCP 18.**

Under FRCP 18(a), a "party asserting a claim, counterclaim, crossclaim, or *third-party claim* may join, as independent or alternative claims, as many claims as it has against an opposing party." (Emphasis added.) The language of FRCP 18(a) is unambiguous – a complaint which asserts a third-party claim may include independent claims against the third-party plaintiff. *See Osorio, F.S.B.*, 278 F.R.D. 671 (S.D. Fla. 2011) (permitting a third-party plaintiff to file a third-party complaint seeking indemnification in an action against it for violating the TCPA and allowing it to add claims for breach of contract, negligent misrepresentation, account stated, and open account, pursuant to FRCP 18(a)). Despite the explicit permission granted by FRCP 18(a) to join independent claims to a third-party claim, Third-Party Defendants argue that because none of RMG's five claims against them are TCPA claims, like the one asserted by Plaintiff against RMG, and rather, that the "claims and allegations therein are completely independent of Plaintiff's claim[] against RMG," that such claims are improper. (Motion, p. 6, ll. 22-28; p. 7, ll. 1 – 17.) Not once do Third-Party Defendants address the right to join independent claims to a third-party claim afforded by FRCP 18(a).

Here, RMG properly asserted a third-party claim by alleging the underlying facts and the cause of action for Breach of Warranty establishing Third-Party Defendants' obligation to indemnify RMG for losses and damages it suffers in Plaintiff's Class Action as a result of their conduct in sending unsolicited text messages purportedly pursuant to the Agreements, in violation of federal law, including the TCPA, and thus in breach of their representation and warranty not to engage in such conduct. Accordingly, RMG's joinder of claims for breach of contract, libel per se, tortuous interference with contractual relations, and tortuous interference with prospective economic advantage are proper pursuant to FRCP 18(a).

Third-Party Defendants' request to "strike" the Third-Party Complaint pursuant to FRCP 14(a)(4) because it would "entirely derail the central purpose of the case" and "require independent damages calculations, experts, written discovery, and depositions" should be denied.

**B.** **The Third-Party Complaint Sufficiently Alleges Libel Per Se, Tortuous Interference With Contractual Relations, and Tortuous Interference With Prospective Economic Advantage Claims for Relief. RMG Requests Leave to Amend Its Claims for Breach of Warranty and Breach of Contract.**

On a motion to dismiss under FRCP 12(b)(6), the court must accept as true all of the factual allegations set out in plaintiff's complaint and draw inferences from those allegations in the light most favorable to plaintiff. *Barker v. Riverside County Office of Edu.*, 584 F.3d 821, 824 (9th Cir. 2009). Courts must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified School Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). The sole issue raised by a Rule 12(b)(6) motion is whether the facts pleaded would, if established, support a plausible claim for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The court may not "attempt to forecast a plaintiff's likelihood of success on the merits." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12-13 (1st Cir. 2011). Moreover, documents attached to the complaint and incorporated in the complaint by reference are treated as part of the complaint for purposes of a FRCP 12(b)(6) motion. *See In re Med. Capital Sec. Litig.*, 842 F. Supp. 2d 1208, 1210-1211 (C.D. Cal. 2012). But documents referred to in the complaint are not required to be attached. *See In re Stac Electronics Securities Litig.*, 89 F.3d 1399, 1405 n. 4 (9th Cir. 1996).

**1.** **RMG Has Alleged a Claim of Libel Per Se.**

Libel per se is "libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." Cal. Civ. Code § 45a. Whether this standard is met depends on whether "a defamatory meaning appears from the language itself without the necessity of explanation or the pleading of extrinsic facts." *Powerlineman.com, LLC v. Kackson*, 2007 WL 3479562, at *6 (E.D. Cal. 2007) (internal quotations and citations omitted). California libel law protects corporations as well as individuals. *Trans World Accounts, Inc. v. Associated Press*, 425 F. Supp. 814, 818 (N.D. Cal. 1977).

RMG alleges a libel per se claim against Third-Party Defendant Lenahan as to multiple

-13-

1     comments he posted on a Facebook group webpage. In arguing that the comments do not

2     constitute libel per se, Lenahan presents a chart, apparently attempting to compare the statements

3     in RMG's Third-Party Complaint and the first defamatory statement posted by Lenahan, to show

4     that one of Lenahan's Facebook comments "recounts the same story as RMG." (Motion, p. 11, ll.

5     4-22.) However, Lenahan coyly omits from his chart almost the entirety of his comments. The

6     comments are provided below, in their entirety. The underlined and bolded parts reflect those

7     parts that Lenahan chose to omit in his argument that Lenahan did not commit libel per se:

8

9          Roger Dowd from Reach Media group owes me $13,000 **and forcing me to hire
Harrison Gevirtz to take them to court. I'm also aware that they owe**

10          **another network $xx,xxx in addition to another affiliate they owe $xx,xxx.**
Roger claims we were using "unapproved" sms content however I have countless

11          emails, skype transcripts…etc where he told me to use his exact word for word
message **on my marketing materials** or else risk non payment, **which I did**

12          **under threat** and now hes claiming its unapproved BS story.

13          **Roger Dowd sent a 14k wire to my partner whom was using the very same
sms content, then 3 days later contacted the bank and pretended the wire**

14          **they sent was fraud in attempts to get it reversed. Luckily a signed IO,
invoice, emails, transcripts…etc got the bank to realize it was a BS story and**

15          **stopped the fraudulent reversal.**

16

17          As alleged in RMG's Third-Party Complaint, these statements were posted within <u>two</u>

18     <u>minutes</u> of one another on a Facebook group page by Lenahan, specifically on a page entitled

19     "[Internet Advertising – People Who Don't Pay]." (TPC, ¶ 28.) In addition to remaining silent as

20     to at least half of his first comment and the entirety of his second comment in his Motion,

21     Lenahan attempts to impose a heightened standard for pleading libel per se without providing any

22     supporting authority. Namely, Lenahan contends that the exact type of inferences created by the

23     speaker's statement, or any word "related thereto", must actually be used in the speaker's

24     statement itself to constitute libel per se. (Motion, p. 11, ll. 22-27.) Lenahan acknowledges the

25     allegation in the Third-Party Complaint that Lenahan's statements accuse Dowd and RMG of

26     "unjustifiably withholding funds from Lenahan" but argues that because "[n]either the word

27     'unjustifiably' –nor any related thereto, such as 'unfairly,' 'wrongfully,' or 'without reason' –is

28     used in [Lenahan's] statement . . . [s]uch meaning must be inferred" and thus is not libel per se.

DLA Piper LLP (US)
San Francisco

-14-
OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR
DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

1  (Motion, p. 10, l. 28; p. 11, ll. 1-6, 22-28.)  Yet he provides no legal support for such a
2  proposition.

3      Lenahan's proposed standard – that inferences derived from the comments themselves
4  cannot constitute the basis for a libel per se claim - conflicts with *this Court's* actual caselaw.   In
5  *Maponics, LLC v. Wahl*, 2008 WL 2788282 (N.D. Cal. July 18, 2008), this Court addressed a
6  number of tort counterclaims brought by the defendants against the plaintiff company's sales
7  manager, including a defamation claim.  This Court concluded that the manager's statements in
8  emails to one of the defendant's customers stating that the defendants "stole data" and that there
9  were errors in one of the defendant's products "imply a provably false assertion of fact which is
10  actionable" and thus were libel per se. *Id.* at *4.  In *Silverstein v. E360Insight, LLC*, 2008 WL
11  1995217 (C.D. Cal. May 5, 2008), the district court concluded that a defendant's statement on a
12  website using Google News that plaintiff was a "'criminal vigilante' could be understood by the
13  reader as either fact or opinion," and noting that the "statement appear[ed] immediately after an
14  excerpt from this Court's order . . . dismissing plaintiff's complaint," the statement "*might*
15  *suggest* to the average reader that plaintiff filed an unlawful, fraudulent suit." *Id.* at *11
16  (emphasis added).  The court denied the defendants' motion for summary judgment as to the
17  plaintiff's libel per se claim based on that statement, as a result.

18      Here, Lenahan's first Facebook posting about Dowd and RMG accuses Dowd of
19  "threat[ening]" him, of asserting a "BS story" about the requirements of the marketing materials
20  Lenahan produced, forcing Lenahan to take RMG to court for funds, and not paying thousands of
21  dollars to affiliate networks to whom RMG owes money.  Here, Lenahan's comments imply that
22  RMG engaged in deceitful business activity.  No extrinsic evidence is necessary to reach this
23  implication.

24      Moreover, Lenahan's second Facebook posting, only two minutes later, accuses Dowd
25  lying to a bank ("…contacted the bank and pretended the wire they sent was fraud in attempts to
26  get it reversed"; "got the bank to realize it was a BS story…").  In fact, he explicitly accuses
27  Dowd of attempting a "fraudulent reversal" of a bank wire transfer, which, to the "average
28  reader" might suggest that Dowd engaged in unlawful behavior, such as wire fraud.  At a

DLA PIPER LLP (US)
SAN FRANCISCO

OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR
DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

1   minimum, these comments imply that RMG engages in deceitful, fraudulent business activity.

2   RMG has properly asserted a claim for libel per se against Lenahan.

3          Additionally, Lenahan's argument that RMG has "no standing to assert Third-Party

4   Claims on behalf of non-party Dowd", specifically as to its claim of libel per se (Motion, p. 10, ll.

5   4-20), is misplaced.  RMG has not attempted to assert a libel per se claim on behalf of Dowd;

6   RMG has asserted a libel per se claim on its own behalf.  Once again, Third-Party Defendants

7   improperly attempt to alter the standard for a finding of libel per se, this time arguing without any

8   supporting authority that "[a]n explanation that Dowd is the CEO of RMG and allegedly took the

9   described actions on behalf of RMG is required for [the defamatory statements] to be libelous of

10  RMG." (Motion, p. 10, ll. 25-28.)  Yet California libel law does not impose such a heightened

11  standard where a corporation alleges libel per se.  Indeed, a statement naming an executive of a

12  company, but not the company itself, may constitute libel per se if a reasonable consumer might

13  construe the statement as directed to the company as much as the individual.  *See*

14  *Powerlineman.com, LLC*, 2007 WL 3479562.   In *Powerlineman.com*, a limited liability company

15  that operated a job posting website alleged, among other things, that the defendant falsely made

16  statements that the operator of the LLC's website, an individual, stole content from the

17  defendant's website, which imputed "questionable business methods" to the operator.  *Id*. at *6.

18  The court rejected the defendant's argument that the libel per se claim had not been adequately

19  pled because the plaintiff in the action was the LLC and not the individual operator, holding that a

20  "reasonable consumer might nevertheless construe that defendant's statement was directed

21  toward the website as much as it was directed toward its operator." *Id.*

22         Moreover, Lenahan's argument that his first Facebook comment only referred to RMG

23  once, and thereafter referred to Dowd only, and that the second Facebook comment only referred

24  to Dowd (Motion, p. 10, ll. 6-11), attempts to create a false distinction between whom Lenahan's

25  comments were directed.  As alleged in the Third-Party Complaint, Lenahan's comments were

26  posted two minutes apart from one another on a Facebook group page.  He identified Dowd as

27  affiliated with RMG ("Roger Dowd from Reach Media [G]roup…") in his opening sentence and

28  subsequently referred to them jointly ("forcing me to hire Harrison Gevirtz to take them to

-16-

DLA Piper LLP (US)
San Francisco

OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR
DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

court…"; "I'm also aware that they owe another network $xx,xxx in addition to another affiliate they owe $xx,xxx.") (TPC, ¶ 28) (emphasis added). Lenahan's reference to RMG and Dowd's affiliation with RMG, coupled with his subsequent references to both Dowd and RMG, could, as in *Powerlineman.com*, be construed by a reasonable consumer to mean that his statements were directed toward RMG just as much as they were directed toward Dowd.

### 2. RMG Has Asserted Claims of Tortuous Interference with Contractual Relations and Tortuous Interference With Prospective Economic Advantage Against Lenahan.

A cause of action for the tortuous, or intentional, interference with contractual relations withstands a FRCP 12(b)(6) motion to dismiss where the following elements are pled: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990).

Lenahan argues that RMG has not adequately pled any of these elements, but once again, in doing so, he makes only broad statements of non-compliance. First, RMG pled the existence of a valid contract between itself and a third party, the actual disruption of that contractual relationship, and resulting damage. Specifically, it alleged that:

> At least one of these postings has already damaged RMG's excellent reputation with one of its larger clients. In its correspondence with RMG, this client notified RMG that it had seen the second September 28, 2012 comment and it further indicated to RMG that it would require a personal guarantee or prepayment in future engagements with RMG.

(TPC, ¶ 30.) This correspondence indicates that Lenahan's commentary disrupted the existing contractual relationship between RMG and one of its larger clients, resulting in promised indebtedness, in the form of personal guarantees or prepayment, by RMG to continue its economic relationship with that client. Additionally, as the Third-Party Complaint alleged, Lenahan was aware of RMG's strong reputation in the advertising industry and the existence of RMG's multiple contracts with its clients. Finally, Lenahan's intentional tort on a Facebook

1   group page accessible to many individuals, was designed to induce disruption of RMG's

2   contractual relationship.

3          Similarly, RMG has pled a claim for tortuous interference of prospective economic

4   advantage. Such a claim requires the following elements: (1) an economic relationship between

5   the plaintiff and some third party, with the probability of future economic benefit to the plaintiff;

6   (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant

7   designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic

8   harm to the plaintiff proximately caused by the acts of the defendant. *Korea Supply Co. v.*

9   *Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003). The allegations that support RMG's

10  claim for tortuous interference with contractual relations also support RMG's claim for tortuous

11  interference with prospective economic advantage. The distinguishing elements between both

12  claims – here that the economic relationship had a probability of future economic benefit to the

13  plaintiff – is alleged in the Third-Party Complaint. The allegation that one of RMG's larger

14  clients created limitations "on future engagements" indicates the probability of future economic

15  benefit to RMG through this relationship.[1]

16      **3.    RMG Requests Leave to Amend Its Breach of Contract and Its Breach of
                Warranty Claims.**

18         In addition to its Libel Per Se, Tortuous Interference with Contractual Relations, and

19  Tortuous Interference with Prospective Economic Advantage causes of action, RMG asserts

20  Breach of Contract and Breach of Warranty causes of action. RMG alleges that Third-Party

21  Defendants breached the Terms of their Agreements with RMG by not complying with RMG's

22  Creatives and failing to receive RMG's prior written approval for any changes to the Creatives.

23  RMG respectfully requests leave to amend its breach of contract claim to more fully provide

24  allegations in support of this cause of action and to allege damages suffered by RMG.

25  Additionally, RMG alleges that Third-Party Defendants breached their warranties and

26  representations to RMG by sending unsolicited text messages purportedly on RMG's behalf and

---

27  [1] Third-Party Defendant Lenahan states in passing as to RMG's tortuous interference of contract
    and prospective economic advantage claims that RMG's request for injunctive relief is a grounds

28  for dismissing RMG's claims but provides no supporting authority for this proposition.

1  seeks contractual indemnification as a result. If the court is so inclined, RMG respectfully

2  requests leave to amend its breach of warranty claim, to change its title to a claim for contractual

3  indemnification to accurately reflect the allegations and legal theory upon which it is based, and

4  to more fully allege facts supporting the claim.

**C.     RMG Requests This Court to Permit RMG to Complete Limited Jurisdictional Discovery on Third-Party Defendant Danna and Leave to Amend the Third-Party Complaint to Allege The Basis for Personal Jurisdiction Over Danna.**

8          "Courts are afforded a significant amount of leeway in deciding whether parties may

9  conduct discovery relating to jurisdictional issues while a motion to dismiss is pending." *Orchid*

10  *Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 672 (S.D. Cal. Jan. 11, 2001). This

11  Circuit's courts have declined to require a plaintiff to establish a prima facie case of personal

12  jurisdiction prior to conducting discovery related to jurisdictional issues. *See Orchid*, 198 F.R.D.

13  at 673. As the Ninth Circuit explained, in granting discovery to aid in determining whether it has

14  personal jurisdiction, "the trial court is vested with broad discretion" and may grant such

15  discovery "where pertinent facts bearing on the question of jurisdiction are controverted or where

16  a more satisfactory showing of the facts is necessary." *Data Disc, Inc. v. Systems Technology*

17  *Associates, Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977). To be sure, it would be

18  "counterintuitive to require a plaintiff, *prior to* conducting discovery, to meet the same burden

19  that would be required in order to defeat a motion to dismiss." *Orchid*, 198 F.R.D. at 673.

20          Here, Third-Party Defendant Danna moves to dismiss the Third-Party Complaint against

21  him pursuant to FRCP 12(b)(2) for lack of personal jurisdiction. (Motion, p. 13, ll.15-16.) He

22  supports his Motion with a brief declaration, stating that he is a Louisiana resident, that he does

23  not own any property in California, that he does not own any interest in any California business,

24  and that he transacts all business from his home in Louisiana. (Declaration of Kyle Danna In

25  Support of Third-Party Defendants' Motion to Strike And/Or Dismiss Third-Party Complaint, ¶¶

26  2-5.) In light of Danna's motion to dismiss on personal jurisdiction grounds, RMG respectfully

27  requests that this Court allow RMG sufficient time to conduct limited jurisdictional discovery and

28  leave to amend the Third-Party Complaint to allege the basis for personal jurisdiction over Danna.

OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND/OR
DISMISS THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

**D.  Request For Leave to Amend.**

FRCP 15(a) permits this Court to freely grant leave to amend where there is no "undue delay, bad faith or dilatory motive on the part of the movant,… undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment…." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  A court may dismiss a complaint without granting leave to amend only if it appears with certainty that the complaint "could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp., Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (internal quotations and citations omitted) ; *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("[L]eave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

RMG has never engaged in activity suggesting any bad faith or dilatory motive.  Indeed, RMG timely filed its Third-Party Complaint within 14 days of answering the Plaintiff's Class Action Complaint, and now seeks, for the first time, this Court's leave to amend the Third-Party Complaint should this Court grant Third-Party Defendants' Motion in all or part.

**IV.  CONCLUSION**

Third-Party Defendants frame the Third-Party Complaint as an attempt to "derail" Plaintiff's Class Action.  This is patently not true.  Plaintiff sued RMG over the receipt of unsolicited text message advertisements that directed consumers to unknown websites which then re-directed them back to websites affiliated with RMG.  RMG did not send (or ask any other entity to send) the text message advertisements identified in Plaintiff's Class Action Complaint. Instead, Third-Party Defendants sent unsolicited text message advertisements in carrying out their obligations under their Agreements with RMG, in violation of those Agreements.  As the messages at issue directed consumers to non-RMG websites and were otherwise not in compliance with RMG's pre-approved Creatives, none of these messages were sent on behalf of RMG (but rather were sent on behalf of the Third-Part Defendants or other entities who owned or controlled the websites identified in the text messages).

RMG properly asserted a third-party claim for contractual indemnification pursuant to

-20-

DLA PIPER LLP (US)
SAN FRANCISCO

FRCP 14 and properly joined independent claims for breach of contract, libel per se, tortuous interference with contractual relations, and tortuous interference with prospective economic advantage pursuant to FRCP 18. As to the libel per se, tortuous interference with contractual relations, and tortuous interference with prospective economic advantage claims, those claims have been sufficiently pled. As to its breach of contract and breach of warranty claims, RMG respectfully requests this Court grant leave to amend, to permit RMG to more fully state allegations in support of those claims. Finally, RMG respectfully requests that this Court grant RMG limited jurisdictional discovery regarding Danna and leave to amend to allege the grounds for personal jurisdiction as to him. Should this Court grant Third-Party Defendants' Motion in all or part, RMG respectfully requests leave to amend.

Dated: January 25, 2013

DLA PIPER LLP (US)

By: _____
VISHALI SINGAL
Attorneys for Defendant

DLA PIPER LLP (US)
SAN FRANCISCO