1  JOSHUA M. BRIONES (Bar No. 205293)
   joshua.briones@dlapiper.com
2  DLA PIPER LLP (US)
   2000 Avenue of the Stars, Suite 400 North Tower
3  Los Angeles, California 90067-4704
   Tel: 310-595-3000
4  Fax: 310-595-3300

5  ALBERT E. HARTMANN (*pro hac vice* pending)        ERIN J. ILLMAN (Bar No. 236282)
   albert.hartmann@dlapiper.com                        erin.illman@dlapiper.com
6  DLA PIPER LLP (US)                                  VISHALI SINGAL (Bar No. 267481)
   203 North LaSalle Street, Ste 1900                  vishali.singal@dlapiper.com
7  Chicago, IL 60601-1293                              DLA PIPER LLP (US)
   Tel:  312-368-4000                                  555 Mission Street, Suite 2400
8  Fax: 312-236-7516                                   San Francisco, CA  94105-2933
                                                       Tel:  415.836.2500
9  Attorneys for Defendant and Third-Party Plaintiff   Fax:  415.836.2501
   REACH MEDIA GROUP, LLC

10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                          SAN JOSE DIVISION

14
   DAVID TRINDADE, individually and on        CASE NO  5:12-CV-04759 (PSG)
15 behalf of all others similarly situated,
                                              (Complaint Filed: September 12, 2012)
16            Plaintiff,
                                              **CLASS ACTION**
17      v.
                                              **THIRD-PARTY PLAINTIFF REACH
18 REACH MEDIA GROUP, LLC,  a                 MEDIA GROUP, LLC'S OPPOSITION TO
   Delaware limited liability company,        THIRD-PARTY DEFENDANT RYAN
19                                            LENAHAN'S MOTION TO STRIKE
             Defendant.                       CLAIMS UNDER CAL. CIV. PROC. CODE
20                                            §425.16 (ANTI-SLAPP MOTION)**

21 REACH MEDIA GROUP, LLC, a
   Delaware limited liability company,
22
              Third-Party Plaintiff,
23
        v.                                    DATE:      MARCH 12, 2013
24                                            TIME:      10:00 a.m.
   RYAN LENAHAN, individually, KYLE           DEPT:      COURTROOM 5, 4TH FLOOR
25 DANNA, individually, and EAGLE WEB         JUDGE:     HON. PAUL SINGH GREWAL
   ASSETS INC., a corporation,
26
              Third-Party Defendants.
27

28

                                OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
                                CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
                                          CASE NO. 5:12-cv-04759 (PSG)

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ......................................................................................... 2

    A.    RMG is a Small, Privately Held Publishing Network Company That Provides Multi-Media Advertisers With a Platform For Their Marketing Needs ............................................................................................................ 2

    B.    Third Party Defendants Lenahan and Danna Enter Into Agreements To Act As Publishers Within RMG's Network................................................................ 3

    C.    Lenahan and Danna Send Non-Compliant Text Message Advertisements Purportedly on RMG's Behalf ........................................................................... 6

    D.    Lenahan and Danna Are Suspended As RMG Publishers ................................. 8

    E.    Lenahan Posts Defamatory Statements About RMG and Dowd ........................ 10

ARGUMENT ................................................................................................................ 12

I.    THE LEGAL STANDARDS GOVERNING RELIEF UNDER THE ANTI-SLAPP STATUTE COMPEL DENIAL OF THIS MOTION.......................................... 12

II.    LENAHAN HAS NOT SATISFIED THE FIRST PRONG OF THE ANTI-SLAPP STATUTE AND HAS FAILED TO MEET HIS BURDEN OF PROOF TO INVOKE THE PROTECTION OF THE ANTI-SLAPP STATUTE ........................... 13

    A.    RMG's Causes of Action are Exempt from the Anti-SLAPP Statute Pursuant to Section 425.17(c) .......................................................................... 13

    B.    Lenahan's Statements Were Made In Connection With a Private Payment Dispute ............................................................................................................. 15

III.    THE SECOND PRONG OF THE ANTI-SLAPP STATUTE COMPELS DENIAL OF THIS MOTION AS RMG'S COMPLAINT IS BOTH LEGALLY SUFFICIENT AND SUPPORTED BY A PRIMA FACIE SHOWING OF FACTS SUFFICIENT TO SUPPORT A FAVORABLE JUDGMENT ...................................... 18

    A.    RMG Has Demonstrated A Probability of Prevailing On Its Third Cause of Action for Libel Per Se Against Third-Party Defendant Lenahan ...................... 19

    B.    RMG Has Demonstrated A Probability of Prevailing On Its Fourth Cause of Action for Tortious Interference with Contractual Relations Against Third-Party Defendant Lenahan and Its Fifth Cause of Action for Tortious Interference with Prospective Economic Advantage Against Third-Party Defendant Lenahan ............................................................................................ 23

III.    CONCLUSION ................................................................................................. 25

DLA PIPER LLP (US)
SAN FRANCISCO

-i-  OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

1

**TABLE OF AUTHORITIES**

2

**Page**

3

CASES

4
Commonwealth Energy Corp. v. Investor Data Exchange, Inc.
5
    (2003) 110 Cal. App. 4th 26 ............................................................................ 15, 16

6
Consumer Justice Center v. Trimedica International, Inc.
    (2003) 107 Cal. App. 4th 595 .............................................................................. 15

7
Damon v. Ocean Hills Journalism Club,
8
    (2000) 85 Cal. App. 4th 468 ................................................................................ 18

9
Du Charme v. Int'l Bro. of Elec. Workers, Local 45,
10
    (2003) 110 Cal. App. 4th 107 .............................................................................. 18

11
Fox Searchlight Pictures, Inc. v. Paladino
    (2001) 89 Cal.App.4th 294 .................................................................................. 12

12
Grewal v. Jammu
13
    (2011) 191 Cal. App. 997 .................................................................................... 18

14
Hailstone v. Martinez,
15
    (2009) 169 Cal. App. 4th 728 .......................................................................... 16, 17

16
Hawran v. Hixson
    (2012) 209 Cal. App. 4th 256 .............................................................................. 14

17
Korea Supply Co. v. Lockheed Martin Corp.,
18
    (2003) 29 Cal.4th 1134 ....................................................................................... 23

19
Mann v. Quality Old Time Service, Inc.
    (2004) 120 Cal. App. 4th 90 ................................................................................ 16
20

21
Maponics, LLC v. Wahl,
    2008 WL 2788282 (N.D. Cal. July 18, 2008) ............................................... 20, 21

22
McGarry v. University of San Diego
23
    (2007) 154 Cal. App.4th 97 .............................................................................. 18, 19

24
Milkovich v. Lorain Journal Co.
25
    (1990) 497 U.S. 1 ................................................................................................ 19

26
Nagel v. Twin Laboratories, Inc.
    (2003) 109 Cal. App. 4th 39 ................................................................................ 15

27
Navellier v. Sletten
28
    (2002) 29 Cal.4th 82 ....................................................................................... 12, 18

-ii-  OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

1

**TABLE OF AUTHORITIES**
(continued)

2
**Page**

3    *Pacific Gas & Electric Co. v. Bear Stearns & Co.,*
4        (1990) 50 Cal.3d 1118 ........................................................................ 23

5    *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP,*
        (2005) 133 Cal. App. 4th 658 ............................................................. 18
6
7    *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO*
        (2003) 105 Cal. App. 4th 913 ........................................................ 15, 16

8    *Silverstein v. E360Insight, LLC,*
        2008 WL 1995217 (C.D. Cal. May 5, 2008) .................................. 20, 21
9
10   *Slaughter v. Friedman*
        (1982) 32 Cal.3d 149 ......................................................................... 19

11   *Soukup v. Law Offices of Herbert Hafif,*
12       (2006) 39 Cal.4th 260 ........................................................................ 19

13   *Taheri Law Group v. Evans*
        (2008) 160 Cal. App. 4th 482 ............................................................. 13
14
15   *Thomas v. Quintero,*
        (2005) 126 Cal. App. 4th 635 ....................................................... 17, 18
16
17   *Weinberg v. Feisel*
        (2003) 110 Cal. App. 4th 1122 ........................................................... 15

18   *Wilbanks v. Wolk,*
        (2004) 121 Cal. App. 4th 883 ............................................................. 17
19
20   *Wong v. Jing*
        (2010) 189 Cal. App. 4th 1354 ..................................................... 19, 20

21   *World Financial Group, Inc. v. HBW Insurance & Financial Services, Inc.*
22       (2009) 172 Cal. App. 4th 1561 ........................................................... 16

23   **STATUTES**

24   Cal. Civ. Code § 45a ........................................................................... 18

25   Cal. Civ. Proc. Code
26       § 425.16 ........................................................................ 1, 2, 11, 13, 18

27

28
DLA PIPER LLP (US)
SAN FRANCISCO

-iii--  OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

# TABLE OF AUTHORITIES
### (continued)

Page

Cal Civ. Proc. Code
    § 425.16(b)(1) ............................................................................................ 11
    § 425.16(e) ........................................................................................ 1, 11, 24
    § 425.16(e)(3) ........................................................................................ 12, 14
    § 425.17 ..................................................................................... 1, 12, 13, 24
    § 425.17(c) ................................................................................................ 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DLA Piper LLP (US)
San Francisco

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Defendant Ryan Lenahan ("Lenahan") is trying to hide behind California's Anti-SLAPP law to escape responsibility for deliberately posting fabricated statements about Reach Media Group ("RMG") on a Facebook forum and then linking those comments to RMG President and CEO Roger Dowd's personal Facebook page. Contrary to Lenahan's assertions, this lawsuit is not a reflection of a corporation trampling on helpless champions of free speech on a matter of public concern. This is a case of a disgruntled independent contractor who, after admitting that he breached the contractual terms of his business engagement with RMG, publicly posted knowingly false statements relating to a private issue, namely a payment dispute between himself and RMG. California's Anti-SLAPP statute was not designed to give individuals, on the web or otherwise, carte blanche to destroy a small business's reputation and interfere with its business and contractual relationships by posting defamatory statements.

Lenahan's *Motion to Strike Claims under Cal. Civ. Proc. Code §425.16* ("Anti-SLAPP Motion") perpetuates the very defamation that RMG's Third-Party Complaint seeks to end. Without any factual support, Lenahan continues to assert that "RMG concocted a story that Lenahan's ads did not comply with RMG's non-existent guidelines, even though RMG's CEO had personally approved Lenahan's ads". (Anti-SLAPP Motion, p. 2, lns. 8-10).

Lenahan's Anti-SLAPP Motion must be denied for the following reasons: (1) Lenahan has failed to make a threshold showing that the challenged causes of action arise from the exercise of protected free speech as defined in California Code of Civil Procedure ("CCP") sections 425.16(e) and 425.17, (2) the evidence before the Court independently demonstrates that RMG has a probability of prevailing on the merits of its claims for libel per se (Count III), tortious interference with contractual relations (Count IV), and tortious interference with prospective economic advantage (Count V), and (3) regarding Counts IV and V, these claims do not fall within the scope of the Anti-SLAPP statute where the theory upon which these claims are based are not Lenahan's defamatory statements but rather his intentional conduct of sending noncompliant text messages, in breach of his Agreement with RMG.

DLA PIPER LLP (US)
SAN FRANCISCO

-1- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

# FACTUAL BACKGROUND

### A.    RMG is a Small, Privately Held Publishing Network Company That Provides Multi-Media Advertisers With a Platform for Their Marketing Needs

RMG is a small privately held company founded in November 2010 by its President and Chief Executive Officer Roger Dowd ("Dowd"). (Declaration of Roger Dowd In Support Of Opposition to Third-Party Defendant Ryan Lenahan's Motion to Strike Claims Under Cal. Civ. Proc. Code § 425.16 (Anti-SLAPP Motion) ("Dowd Decl."), ¶¶ 1-2.) RMG's website is available at www.reachmediagroup.com.  (Dowd Decl., ¶ 4.) RMG employs eleven full-time individuals, four in New York City, six in Atlanta, Georgia, and one in Sarasota, Florida. (Dowd Decl., ¶ 4.) RMG's business model is to provide a leading performance based publisher network that provides access to exclusive pay-for-performance, or cost-per-action ("CPA"), campaigns for publishers seeking generous, competitive payouts. (Dowd Decl., ¶ 2.) RMG assists publishers in tracking their performance by providing them access to state-of-the-art online reporting. (Dowd Decl., ¶ 2.) Simultaneously, RMG provides advertisers with a platform for their marketing needs. (Dowd Decl., ¶ 2.) Specifically, RMG works with its publishers to generate actions, such as customer leads and sales, on a massive scale, to ensure significant returns for its advertisers. (Dowd Decl., ¶ 2.) In selecting marketing campaigns for its publishers, or "affiliates", RMG focuses on campaigns for particular industries, including, but not limited to, the automotive, healthcare, financial services, and legal industries. (Dowd Decl., ¶ 2.) Through his thirteen years of experience in the affiliate marketing industry, Dowd has led RMG in developing a large and loyal network of contacts within the affiliate marketing community and has established a highly respected reputation for RMG. (Dowd Decl., ¶ 3.) Through the established network of contacts of RMG's employees and RMG's positive reputation in the affiliate network industry, RMG has grown its business since its founding two years ago. (Dowd Decl., ¶ 3.)

As a publisher network, RMG enters into agreements with publishers to publish, or distribute, carefully worded and pre-approved text message advertisements to individuals who have expressly agreed in advance to receive these text messages. (Dowd Decl., ¶ 5.) These agreements govern the content of the advertisements, the terms of payment, the nature of the

-2- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION) CASE NO. 5:12-CV-04759 (PSG)

1   relationship between RMG and the third party publishers, and contain representations and

2   warranties, among other things. (Dowd Decl., ¶ 5.) To join RMG's publisher network, a publisher

3   must submit an application on RMG's website, available at

4   http://www.reachmediagroup.com/signup. (Dowd Decl., ¶ 5.) In order to submit the application,

5   an applicant must agree to the terms and conditions. (Dowd Decl., ¶ 5, Ex. A.) Once a publisher's

6   application is approved by RMG, the publisher is free to select advertising campaigns to publish

7   for from those featured in RMG's network. (Dowd Decl., ¶ 6.) While the agreements govern the

8   relationship between RMG and a publisher, specific provisions may be altered through an

9   Insertion Order, which supplements the terms and conditions. (Dowd Decl., ¶ 7.) Most frequently,

10  an Insertion Order is required to reflect a change in the price a publisher is to be paid for their

11  services completed from the original price RMG and the publisher agreed upon when the

12  publisher initially entered RMG's network. (Dowd Decl., ¶ 7.) Advertisers seeking services

13  through RMG, on the other hand, enter into marketing and distribution agreements with RMG.

14  (Dowd Decl., ¶ 8.) These agreements govern the responsibilities of RMG, payment to RMG by

15  the advertiser, and representations and warranties, among other issues. (Dowd Decl., ¶ 8, Ex. B.)

16  **B.    Third Party Defendants Lenahan and Danna Enter Into Agreements To Act
17          As Publishers Within RMG's Network**

18  On or about July 11, 2012, Lenahan submitted an online application and agreed to the

19  Terms and Conditions to publish RMG's pre-approved advertising message, or RMG's Creatives

20  ("Lanahan Agreement"). (Dowd Decl., ¶ 9, Ex. C.) On or about August 9, 2012, Kyle Danna

21  ("Danna") submitted an online application and agreed to the Terms and Conditions to publish

22  RMG's Creatives ("Danna Agreement"), as well. (Dowd Decl., ¶ 10, Ex. D.)

23  As part of the Agreements into which Lenahan and Danna entered with RMG

24  (collectively, "Agreements"), Lenahan and Danna were prohibited from editing any of RMG's

25  Creatives, "without prior written approval from Reach Media Group." (Dowd Decl., ¶ 11, Ex. E.)

26  The Agreements specified that the Creatives include, but are not limited to, "text ads, graphic ads,

27  from and subject line, any copy associated with the campaign including survey questions and

28

DLA PIPER LLP (US)
SAN FRANCISCO

-3- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

1    answers." (Dowd Decl., ¶ 11, Ex. E.) Furthermore, the Agreements stated that "[a]ny changes to

2    [a] Creative, without prior written permission will result in the loss of payment of Leads." (Dowd

3    Decl., ¶ 11, Ex. E.) The Agreements further specified that Lenahan and Danna represented and

4    warranted that all their efforts "associated with this Agreement [would] comply with the laws of

5    the United States, and any other laws of any other jurisdictions" applicable to them. (Dowd Decl.,

6    ¶ 11, Ex. E.) Additionally, the Agreements stated that Lenahan and Danna "will not engage in or

7    promote any illegal activities of any kind in association with this Agreement." (Dowd Decl., ¶ 11,

8    Ex. E.)

9        Upon signing up with RMG's network, Lenahan and Danna were approved as publishers

10   immediately, on or about July 11, 2012 and August 9, 2012, respectively. (Dowd Decl., ¶ 12, Exs.

11   C and D.) Once their accounts were approved, Lenahan and Danna were permitted to select

12   campaigns on RMG's network for which they wanted to publish. Once they selected campaigns,

13   they automatically received emails with the content of the approved Creatives for those

14   campaigns. (Dowd Decl., ¶ 12.) Both Lenahan and Danna also signed Insertion Orders which

15   confirmed the different advertising campaigns for which they were required to publish. (Dowd

16   Decl., ¶ 13.) On or about August 9, 2012, Lenahan signed an Insertion Order ("Lenahan Insertion

17   Order") identifying the following campaigns for which he was required to publish text message

18   advertisements: (1) Auto Loan Professionals, (2) Cash Advance Diamond, (3) Central Payday

19   Advance, (4) Honest Cash Loan, (5) Huge Cash Advance, (6) Instant Cash Express, (7) Mobile

20   Cash Source, and (8) Second Chance Cash Advance. (Dowd Decl., ¶ 13, Ex. G.) On or about

21   September 4, 2012, Danna signed an Insertion Order ("Danna Insertion Order") identifying one

22   campaign for which he was authorized to publish text message advertisements – the Homeland

23   Cash Advance campaign. (Dowd Decl., ¶ 13, Ex. H.)

24       The Creatives for each of the campaigns for which Lenahan contracted to publish were

25   sent in automated emails to Lenahan once he selected those campaigns. Examples of the

26   Creatives for one of the eight campaigns were the following.  (Dowd Decl., ¶ 14, Ex. I.)

27

28

-4- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

**Campaign 2: Cash Advance Diamond (Mobile):**

US lenders are offering cash loans up to $1,000 deposited within 24hrs. Bad Credit OK! Apply directly from your phone at Cash Advance Diamond. Reply STOP to opt-out

Get a cash loan up to $1,000 today with a simple application you can complete on your phone.  Apply right now at Cash Advance Diamond. Reply STOP to opt-out

USA lenders have cash loans up to $1000 deposited w/i 24hrs. No /Bad credit OK! Easy & safe. Apply on your phone at Cash Advance Diamond. Reply STOP to opt-out

Need a loan today? Get approved for a cash loan. Complete a simple application now on your mobile phone. Apply at Cash Advance Diamond. Reply STOP to opt-out

US lender offering $1000 cash loan deposited within 24hrs. Easy to qualify. Bad credit OK! Apply on your phone now at Cash Advance Diamond. Reply STOP to opt-out

Need $1000 fast? Major US lenders offering cash loans w/i 24hrs. Apply on your phone now at Cash Advance Diamond. Bad credit OK! Reply STOP to opt-out

    The Creatives for the one campaign for which Danna contracted to publish, and which were sent in an automated email to Danna once he selected that campaign, were the following. (Dowd Decl., ¶ 15, Ex. J.)

**Homeland Cash Advance (SMS Only Short Form) Campaign**

US lenders are offering cash loans up to $1,000 deposited within 24hrs. Bad Credit OK! Apply directly from your phone at Homeland Cash Advance. Reply STOP to opt-out

Get a cash loan up to $1,000 today with a simple application you can complete on your phone. Apply right now at Homeland Cash Advance. Reply STOP to opt-out

USA lenders have cash loans up to $1000 deposited w/i 24hrs. No/Bad credit OK! Easy & safe. Apply on your phone at Homeland Cash Advance. Reply STOP to opt-out

Need a loan today? Get approved for a cash loan. Complete a simple application now on your mobile phone. Apply at Homeland Cash Advance. Reply STOP to opt-out

US lender offering $1000 cash loan deposited within 24hrs. Easy to qualify. Bad credit OK! Apply on your phone now at Homeland Cash Advance. Reply STOP to opt-out

Need $1000 fast? Major US lenders offering cash loans w/i 24hrs. Apply on your phone now at Homeland Cash Advance. Bad credit OK! Reply STOP to opt-out

DLA Piper LLP (US)
San Francisco

-5- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

Lenahan and Danna received special instructions regarding the text message advertisements they were required to send. (Dowd Decl., ¶ 16, Ex. K.) Those instructions specified, among other things, that bank names, amounts over $1000, and "cash in 2 hours" were not permitted in the text messages. (Dowd Decl., ¶ 16, Ex. K.) Furthermore, those instructions specified that the text message advertisements must have included opt-out language. (Dowd Decl., ¶ 16, Ex. K.) Additionally, one of RMG's former employees, Andre Zouvi, emailed Danna on or about September 5, 2012 reiterating the specific instructions regarding the Creatives Danna was required to send. That email specified that Danna was not permitted to use bank names, amounts over $1000, the phrase "no credit checks", or the phrase "cash in 2 hours." (Dowd Decl., ¶ 17, Ex. L.)

**C.    Lenahan and Danna Send Non-Compliant Text Message Advertisements Purportedly on RMG's Behalf**

Some time after July 21, 2012, RMG began receiving complaints from recipients of unsolicited text messages purportedly sent on RMG's behalf. (Dowd Decl., ¶ 18.) At least two complaints involved the following text messages:

> Chase is offering $1500 cash loans deposited within 2hrs.  NO credit checks or faxing!  Get the money today by applying right now on your phone at CashIn2Hrs.com

> Chase is offering $1,500 cash loans deposited within 2hrs.  NO credit checks! Get the money today by applying right now directly on your phone at CashIn2Hrs.com

(Dowd Decl., ¶ 18, Exs. M and N.) RMG subsequently received other complaints from recipients of text messages purportedly sent on RMG's behalf. (Dowd Decl., ¶ 19.) The recipients stated that they never provided prior express consent to receive these text messages. (Dowd Decl., ¶ 19.)

After receiving these complaints, Dowd personally spoke with Lenahan, notifying Lenahan of the complaints. (Dowd Decl., ¶ 20.) Lenahan conceded to Dowd that he had sent text messages with links to non-RMG websites that re-directed to RMG-affiliated websites and that the content of his text messages did not match the content of the approved Creatives for his

1    campaigns. (Dowd Decl., 20.) Dowd told Lenahan that because he had sent unauthorized text

2    messages that did not comply with the terms of the Agreement, he was not entitled to payment

3    under the Lenahan Agreement and further demanded that Lenahan cease sending unauthorized

4    text messages with links to non-RMG websites that then re-directed to RMG-affiliated websites.

5    (Dowd Decl., ¶ 20.)

6            After this conversation with Lenahan, Dowd received more complaints regarding

7    unsolicited text messages from their recipients and personally spoke with Lenahan again,

8    demanding that Lenahan cease sending text messages that were not compliant with the terms of

9    the Lenahan Agreement and in violation of the law. Dowd further demanded that Lenahan

10   provide to him the OPTIN information Lenahan used to determine the recipients of his text

11   messages, that he ensure all of his marketing efforts were compliant with the CAN-SPAM Act of

12   2003, and that he ensure that he was following best practices with regard to publication of

13   advertisements. (Dowd Decl., ¶ 21.) Despite his demands, Dowd never received from Lenahan

14   the OPTIN information or certification from him that his marketing efforts were compliant with

15   the CAN-SPAM Act of 2003 and in accord with best practices for publication of advertisements.

16   (Dowd Decl., ¶ 22.)

17           On or about August 25, 2012, Dowd received an email from one of RMG's former

18   employees, Luciano Castro, stating a proposed text message advertisement:

19

20           US lenders are offering cash loans up to $1,000 deposited within 24hrs.  BAD CREDIT
             OK!  Secure the money today by applying now on your phone at www.bit.ly/B2eW4

21

22   (Dowd Decl., ¶ 23, Ex. O.) The embedded link was supposed to direct the recipient directly to an

23   RMG website, not to a non-RMG website that would then redirect the recipient to the authorized

24   website. (Dowd Decl., ¶ 23.) The email chain's originating email from August 24, 2012 was sent

25   by RMG's Chief Operating Officer, Rick Hoeye, to Lenahan. (Dowd Decl., ¶ 23, Ex. O.)  Dowd

26   subsequently approved the use of the proposed text message advertisement presented by Mr.

27   Castro in the August 25, 2012 email. (Dowd Decl., ¶ 24, Ex. O.)

28

DLA PIPER LLP (US)
SAN FRANCISCO

-7- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

**D.      Lenahan and Danna Are Suspended As RMG Publishers**

Some time on or about August 25, 2012 or August 26, 2012, Dowd received another complaint regarding an unsolicited text message advertisement, and on or about August 26, 2012, Dowd personally authorized the official suspension of Lenahan as an RMG publisher because Lenahan had admitted he altered the content of the approved Creatives for the campaigns he contracted to publish for without prior written approval from RMG.  (Dowd Decl., ¶ 26.) Dowd also personally informed RMG's Accounting department to withhold payment to Lenahan because he failed to comply with the terms of the Lenahan Agreement. (Dowd Decl., ¶ 26.)

Subsequently, on or about September 6, 2012, Dowd personally spoke with Lenahan again, reminding him that he was suspended as an RMG publisher as a result of his noncompliance with the Lenahan Agreement. (Dowd Decl., ¶ 27.)

A day later, on or about September 7, 2012, Dowd received an email from Lenahan, in which Lenahan wrote, among other things, that (1) he understood that Dowd was "very upset over all the issues" his text messages had created for Dowd; (2) acknowledged that he and Danna had sent text messages purportedly on RMG's behalf that had the name "Chase" in it; (3) acknowledged that Dowd provided Lenahan with two warnings, with the second and final warning or about August 25, 2012; (4) acknowledged that complaints Dowd received after August 25, 2012 could have been the result of text messages he, Danna, or another affiliate sent; and (5) stated that he was open to negotiating a deduction from his claimed invoice of $12,298 "to cover [Dowd's] time dealing with this."  (Dowd Decl., ¶ 28, Ex. P.)

On or about September 11, 2012, RMG officially suspended Danna as an RMG publisher. (Dowd Decl., ¶ 29.)

On or about September 12, 2012, RMG received a Class Action Complaint filed in this matter, alleging that RMG violated the TCPA by sending, or having sent on its behalf, unsolicited text message advertisements to Plaintiff's and purported class members' cell phones. Specifically, Plaintiff alleged that the text message advertisements were sent without the prior express consent of their recipients, in violation of the TCPA. The text messages identified in the

DLA Piper LLP (US)
San Francisco

-8- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

1  Class Action Complaint are the following:

2      Lenders offering $1,500 cash loans deposited within 2hrs. NO credit checks! Get money
3      today by applying right now directly on your phone at www.TwoHourCash.com

4      Chase is offering $1500 cash loans deposited within 2hrs. NO credit checks! Get the
       money today by applying right now directly on your phone at CashIn2Hrs.com
5
       Chase is offering $1500 cash loans deposited within 2hrs. NO credit checks! Get the
6      money today by applying right now on your phone at www.TwoHourCash.org

7      Chase is offering $1500 cash loans deposited within 2hrs. NO credit checks or faxing!
       Get the money today by applying right now on your phone at TwoHourCash.net
8
       Chase is offering $1,500 cash loans deposited within 2hrs. NO credit checks! Get the
9      money today by applying right now on your phone at www.TwoHourCash.org.

10     Wells Fargo: Get up to $1500 deposited into your account today.  Not a scam &
       bad credit ok. Apply from your phone at bit.ly/NmCRO0 now.  Instant approval.
11

12  Plaintiff alleged that the websites CashIn2Hrs.com, TwoHourCash.net, www.TwoHourCash.org

13  and the link bit.ly/NmCRO0 all lead directly to RMG-owned and/or operated websites, including

14  CashAdvanceDiamond.com and MobileCashSource.com. (Dowd Decl., ¶ 30.)

15      None of RMG's pre-approved Creatives for its campaigns included the text message

16  advertisements identified in the Class Action Complaint against RMG. (Dowd Decl., ¶ 31, Exs. I

17  and J.) In fact, each of the messages alleged in the complaint contains bank names, loan amounts

18  or other text that RMG specifically directed not be included in messages sent for its campaigns.

19  Moreover, none of the alleged links direct the recipient to an authorized RMG website, and RMG

20  never authorized the use of intermediate websites or re-directions.

21      On or about September 19, 2012, Dowd received an email from Mr. Hoeye, forwarding

22  another email sent from Lenahan to Mr. Hoeye that same day. In Lenahan's email, he stated that

23  Danna was "doing the exact same thing as me, word for word . . ." and provided instant messages

24  by Danna stating the fact that RMG paid Danna but not Lenahan would help Lenahan in court

25  against RMG. (Dowd Decl., ¶ 32, Ex. Q.) These statements, in combination with Lenahan's prior

26  concession that text messages he sent purportedly on RMG's behalf were not in compliance with

27  any of RMG's Creatives, indicated to RMG that Danna sent noncompliant text messages, as well.

28  (Dowd Decl., ¶ 32,)

DLA PIPER LLP (US)
SAN FRANCISCO

-9- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

1   Dowd then informed RMG's Accounting department to withhold payment to Danna on or

2   about September 19, 2012 because he had not complied with the terms of his Agreement with

3   RMG. (Dowd Decl., ¶ 33.) Dowd learned that a bank wire had already been issued to Danna's

4   bank account the day before, that the clearing house had received the wire, and that the receiving

5   bank had not yet received it. (Dowd Decl., ¶ 33.) As such, Dowd instructed one of RMG's

6   employees in the Accounting department to inform the receiving bank that the wire had been sent

7   without authorization, who then informed the receiving bank on or about September 19, 2012 that

8   the wire had been sent without authorization. RMG never received word from the bank that

9   Danna attempted to dispute the stop status placed on the wire. (Dowd Decl., ¶ 33.)

10   Because Lenahan and Danna had not sent text message advertisements that were in

11   compliance with the approved Creatives for their advertising campaigns, RMG was required to

12   reimburse the advertisers associated with those campaigns the fees they had paid RMG. (Dowd

13   Decl., ¶ 34.)

14   **E.     Lenahan Posts Defamatory Statements About RMG and Dowd**

15   On or about September 28, 2012, Dowd received an email from "Ryan Lenahan"

16   addressed to "Internet-Advertising – People Who Don't Pay." The email contained two

17   comments by the individual "Ryan Lenahan", made two minutes apart from one another. The

18   first comment was:

19
20   > Roger Dowd from Reach Media group owes me $13,000 and forcing me to hire
    > Harrison Gevirtz to take them to court. I'm also aware that they owe another
    > network $xx,xxx in addition to another affiliate they owe $xx,xxx. Roger claims
21   > we were using "unapproved" sms content however I have countless emails, skype
    > transcripts….etc where he told me to use his exact word for word message on my
22   > marketing materials or else risk non payment, which I did under threat and now
    > hes claiming tis unapproved BS story.
23

24   The second comment, written only two minutes later, stated:

25   > Roger Dowd sent a 14k wire to my partner whom was using the very same sms
    > content, then 3 days later contacted the bank and pretended the wire they sent was
26   > fraud in attempts to get it reversed. Luckily a signed IO, invoice, emails,
    > transcripts…etc got the bank to realize it was a BS story and stopped the
27   > fraudulent reversal.

28

DLA PIPER LLP (US)
SAN FRANCISCO

-10- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

1  (Dowd Decl., ¶ 35, Ex. R.)

2      The reference to Dowd's name in the first sentence "Roger Dowd from Reach Media

3  group owes me $13,000 and forcing me to hire Harrison Gevirtz to take them to court" was

4  linked to Dowd's personal Facebook page. (Dowd Decl., ¶ 36.)

5      Dowd authorized RMG's counsel, DLA Piper LLP (US), to send a cease and desist letter

6  to Lenahan, demanding that he cease and desist from this conduct and from engaging in further

7  unlawful conduct directed at Dowd or RMG, and that he confirm his compliance with these

8  demands in writing to the offices of DLA Piper LLP (US). (Dowd Decl., ¶ 37.) RMG's counsel

9  never received any confirmation in writing or otherwise from Lenahan. (TPC, ¶ 33.)

10      Subsequently, on or about November 4, 2012, Dowd received another email from "Ryan

11  Lenahan" addressed to "Internet Advertising – People Who Don't Pay," which included a third

12  comment from an individual named "Ryan Lenahan" stating "Just an update, over 3 months have

13  passed and have still not seen a dime." (Dowd Decl., ¶ 38.) The email also showed two

14  comments by individuals to Lenahan's September 28, 2012 posts about Dowd and RMG. (Dowd

15  Decl., ¶ 38.) They said "Good to know, thanks for the heads up" and "oh my. . . not going near

16  that network." (Dowd Decl., ¶ 38.)

17      As a result of Lenahan's Facebook postings about Dowd and RMG, both Dowd's and

18  RMG's reputations in the affiliate networking industry have been severely damaged. (Dowd

19  Decl., ¶ 39.) RMG received notification that one of its largest clients saw the second Facebook

20  comment posted by Lenahan and now requires prepayment or a personal guarantee from RMG as

21  a condition to participating with RMG on campaigns. (Dowd Decl., ¶ 39.) Additionally, RMG

22  received notice that the Chief Financial Officer of another affiliate in RMG's network saw the

23  Facebook posts and now seeks an explanation and that other affiliates in RMG's network have

24  expressed concern about receiving payment from RMG. (Dowd Decl., ¶ 39.)

25

26

27

28

DLA PIPER LLP (US)
SAN FRANCISCO

-11- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

**ARGUMENT**

I.      **THE LEGAL STANDARDS GOVERNING RELIEF UNDER THE ANTI-SLAPP STATUTE COMPEL DENIAL OF THIS MOTION**

California courts apply a two-step process for determining whether an action should be dismissed pursuant to CCP § 425.16. Initially, the court decides whether the (third-party) defendant has made a threshold showing that the challenged cause of action is one arising from acts in furtherance of the (third party) defendant's constitutional right of petition or free speech in connection with a public issue. *See*, CCP §425.16(b)(1), (e). "In deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts [on] which the liability or defense is based.'" *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89. It is Lenahan's burden in the pending anti-SLAPP motion to demonstrate that RMG's causes of action for libel per se, tortious interference with contractual relations, and tortious interference with prospective economic advantage are within the class of suits subject to a motion to strike under section 425.16. *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal. App. 4th 294, 304 (a party seeking to benefit from a statute bears the burden of making a prima facie showing the statute applies). As set forth below, Lenahan has not met this burden.

If the court finds that such a showing has been made, it must then determine whether the (third-party) plaintiff has demonstrated a probability of prevailing on the claim. See *Navellier*, 29 Cal.4th at 89 ("Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute -- i.e., that arises from protected speech or petitioning *and* lacks even minimal merit -- is a SLAPP, subject to being stricken under the statute.") (emphasis in original). As California courts have repeatedly held, the anti-SLAPP statute "does not bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning, it subjects to potential dismissal *only* those actions in which the plaintiff cannot 'state[ ] and substantiate[ ] a legally sufficient claim.'" *Navellier*, 29 Cal.4th at 93 (internal citation omitted) (emphasis added). Here, neither prong can be met.

DLA PIPER LLP (US)
SAN FRANCISCO

-12- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

1    II.    **LENAHAN HAS NOT SATISFIED THE FIRST PRONG OF THE ANTI-SLAPP
            STATUTE AND HAS FAILED TO MEET HIS BURDEN OF PROOF TO INVOKE
2          THE PROTECTION OF THE ANTI-SLAPP STATUTE**

3          Lenahan alleges that three of RMG's five causes of action arise from protected speech

4    under section 425.16(e)(3). These causes of action are (a) Count III—Libel Per Se; (b) Count

5    IV—Tortious Interference with Contractual Relations, and (c) Count V—Tortious Interference

6    with Prospective Economic Advantage. Specifically, Lenahan contends that the statements made

7    were written statements made in a public forum on a Facebook Group webpage in connection

8    with an issue of public interest, namely warning other publishers about networks who fail to pay

9    their publishers.

10         A.    **RMG's Causes of Action are Exempt from the Anti-SLAPP Statute Pursuant
                 to Section 425.17(c)**
11

12         Recognizing a "disturbing abuse" of the California anti-SLAPP statute, the Legislature

13   adopted CCP section 425.17, in which two exemptions were created to the applicability of the

14   Anti-SLAPP statute. The first exemption applies to actions brought solely in the public interest or

15   on behalf of the general public where certain conditions are met. The second exemption applies to

16   commercial speech.  Specifically, section 425.17(c) exempts:

17         any cause of action brought against a person primarily engaged in the business of
           selling or leasing goods or services . . . arising from any statement or conduct by
18         that person if . . .

19
           (1) The statement or conduct consists of representations of fact about that
20         person's or a business competitor's business operations, goods, or services, that is
           made for the purpose of obtaining approval for, promoting, or securing sales or
21         leases of, or commercial transactions in, the person's goods or services, or the
           statement or conduct was made in the course of delivering the person's goods or
22         services.

23
           (2) The intended audience is an actual or potential buyer or customer, or a person
24         likely to repeat the statement to, or otherwise influence, an actual or potential
           buyer or customer . . . .
25

26         The Legislature's intention was to exempt "purely commercial" disputes from the Anti-

27   SLAPP statute. *Taheri Law Group v. Evans* (2008) 160 Cal. App. 4th 482, 491. The exemption

28

1    applies to individual proprietors who bring Anti-SLAPP motions. *See id.* at 491 (noting that like

2    proprietors of other commercial enterprises, lawyers sell their services to prospective buyers and

3    customers and engage in commercial speech when they advertise their services); *see also*

4    *Hawran v. Hixson* (2012) 209 Cal. App. 4th 256, 271 n.5 (holding that the Legislature's

5    statement in enacting section 425.17 does not limit the exemption by excluding anti-SLAPP

6    motions made by individual defendants). Accordingly, the exemption is applicable to Lenahan,

7    even in his capacity as a sole proprietor. (See Dowd Decl., ¶ 13, Ex. G, listing Lenahan as an

8    "Owner" under the signatory portion of the Lenahan Insertion Order.)

9          Here, Lenahan's statements are not strictly about RMG; they are also about Lenahan's

10   own publication services. He refers to his "marketing materials" and the actions he purportedly

11   took in furtherance of his publication services for RMG. (Dowd Decl., ¶ 35, Ex. R.) Moreover,

12   by presenting skewed representations of his services on a Facebook group that he concedes is

13   accessible to thousands of individuals, he did not simply intend to promote his own services, but

14   he in fact successfully did. At least one individual commented on Lenahan's statements with

15   contact information for an RMG affiliate manager, included a note about the affiliate manager

16   "looking for network placement and internal email traffic to our exclusives," and listing various

17   advertising campaigns. (Declaration of Jeffrey M. Rosenfeld In Support Of Third-Party

18   Defendant Ryan Lenahan's Motion to Strike Claims Under Cal. Code of Civ. Proc. 425.16 (Anti-

19   SLAPP Motion), Ex. B.) Additionally, Lenahan's intended audience was undoubtedly potential

20   customers or persons likely to repeat the statements to a potential customer. As Lenahan himself

21   notes, the Facebook group is comprised of publishers, and indeed, with a title of "Internet

22   Advertising – People Who Don't Pay," it would not be a stretch to expect that of the thousands

23   of members in this Facebook group, and the "many, many more" Internet users who do not need

24   to become a member of the Facebook group to view its contents (Anti-SLAPP Motion, p. 9, lns.

25   26-28), that many other networks like RMG, who offer opportunities for publishers like Lenahan

26   (i.e. that are Lenahan's "clients"), would view the comments as well.

27         The conditions of the commercial speech exemption having been satisfied, this Court

28   should deem the Anti-SLAPP statute inapplicable to Lenahan's statements.

DLA Piper LLP (US)
San Francisco

-14- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

**B.    Lenahan's Statements Were Made In Connection With a Private Payment Dispute**

Even if the statements are afforded some First Amendment protection, they still do not fall within the ambit of the anti-SLAPP statute. Contrary to Lenahan's assertion that his publication of statements to Facebook are protected as a "written or oral statement or writing made in a place open to the public or a public forum *in connection with an issue of public interest*", *see*, Anti-SLAPP Motion, p. 7 (emphasis added); CCP §425.16(e)(3), the Legislature intended this requirement to have a limiting effect on the types of conduct that come within the statute. *Weinberg v. Feisel* (2003) 110 Cal. App. 4th 1122; *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal. App. 4th 913, 926. Lenahan's statements were not made in connection with an issue of public interest.

Generally, statements about a particular business are not matters that concern a public issue or matter of public interest within the meaning of California's anti-SLAPP statute. *Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal. App. 4th 26, 33-34 (denying anti-SLAPP motion to strike in case involving claims made about telemarketing pitch); *Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal. App. 4th 595, 600-601 (denying motion to strike in case involving ads for breast enlargement herbal supplements); *Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal. App. 4th 39, 47-48 (denying anti-SLAPP motion in case involving dietary supplements); *Rivero*, 105 Cal. App. 4th at 924 (denying anti-SLAPP motion in libel suit about criticisms of university's workplace activities).

Only three categories of cases fit within the definition of "public interest": (1) the subject of the statement was a person or entity in the public eye; (2) the statement involved conduct that could affect large numbers of people beyond the direct participants; and (3) the statement involved a topic of widespread, public interest. *Commonwealth Energy*, 110 Cal. App. 4th at 33; *Rivero*, 105 Cal. App. 4th at 924. Lenahan's statements do not fit within any of these definitions. First, RMG is a small, privately owned company with only eleven employees—and not in the public eye. (Dowd Decl., ¶ 4.) Second, the statements are about a private dispute, namely RMG's right to withhold payments from Lenahan and Danna because of their failure to use approved text

DLA PIPER LLP (US)
SAN FRANCISCO

-15- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

1   message advertisements in providing publication services to RMG. The gravamen of Lenahan's

2   statements involve RMG and Lenahan—two private parties to a business transaction – and an

3   alleged non-payment that only affects the two parties involved. Lenahan argues that statements

4   pertaining to a private payment dispute is an issue of public interest because it was posted in a

5   forum dedicated to "the issue of Internet publisher networks that do not pay their publishers."

6   (Anti-SLAPP Motion, p. 10, lns. 4-5.)  However, the mere act of publishing private information

7   onto the Internet in and of itself is insufficient to transform the information into an issue of public

8   interest. *See Rivero*, 105 Cal. App. 4th at 924, 926 (court denied motion to strike where the only

9   people involved in the dispute were a supervisor and eight employees, and noted that publication

10  on the Internet does not turn private information into a matter of public interest).

11          Third and finally, the statements do not concern a topic of widespread public interest.

12  Where, as here, the statements solely concern the business relationship between RMG and

13  Lenahan and RMG and Danna, anti-SLAPP motions are routinely denied. See, e.g.

14  *Commonwealth Energy*, 110 Cal. App. 4th at 34 (denying motion to strike under first prong

15  where statements concern company's particular services, not about investments scams in

16  general); *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal. App. 4th 90, 111 (denying anti-

17  SLAPP motion where statements "not about pollution, or potential public health and safety issues

18  in general, but about the [plaintiff's] specific business practices."); *World Financial Group, Inc.*

19  *v. HBW Insurance & Financial Services, Inc.* (2009) 172 Cal. App. 4th 1561, 1568-70 (denying

20  motion under first prong where statements only about plaintiff's business capacity). Indeed, the

21  very case Lenahan cites in his anti-SLAPP Motion for the proposition that the term public interest

22  "has been interpreted expansively to include private conduct that has a broad interest," (Anti-

23  SLAPP Motion, p. 9, lns. 1-4), provides – on closer look -  "guiding principles" that demonstrate

24  the non-public nature of Lenahan's statements.  In *Hailstone v. Martinez* (2009) 169 Cal. App.

25  4th 728, the court explained that:

26

27          'Public interest' is not mere curiosity. Further, the matter should be something of
        concern to a substantial number of people. Accordingly, a matter of concern to the
28          speaker and a relatively small, specific audience is not a matter of public interest.

DLA PIPER LLP (US)
SAN FRANCISCO

-16- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

1    Additionally, there should be a degree of closeness between the challenged
     statements and the asserted public interest. The assertion of a broad and
2    amorphous public interest is not sufficient. *Moreover, the focus of the speaker's*
     *conduct should be the public interest, not a private controversy.* Finally, a
3    defendant charged with defamation cannot, through his or her own conduct, create
     a defense by making the claimant a public figure. *Otherwise private information*
4    *is not turned into a matter of public interest simply by its communication to a*
     *large number of people.*
5

6

7    *Id.* at 736 (emphasis added). In *Hailstone*, the court concluded that statements about a union

8    representative and trustee's misappropriation of union funds was of interest to "the more than

9    10,000 members of Local 948." *Id.* at 738. As the court further explained, statements about an

10   investigation into potentially illegal actions of a union official "who was [] serving in a fiduciary

11   capacity as a trustee of the trust that *provides health and welfare benefits to those members*" did

12   fall within the "public issue" domain. *Id.* at 738-39 (emphasis added). In complete contrast,

13   Lenahan cannot point to any relationship between his or Danna's private business dispute with

14   RMG and the "health and welfare" of the 2,244 individuals he identified as members of the

15   Facebook group, the "many, many more" he states likely view the Facebook group, or the

16   unidentified individuals that produce "ten thousand visits per month" on another website to which

17   those statements are syndicated. (See Anti-SLAPP Motion, p. 9, lns. 26-28; p. 10 lns. 1-3.) In

18   fact, in each of the three additional cases Lenahan cites for the proposition that the public interest

19   "covers matters of interest to a specific group, where the speech occurs in the context of an

20   ongoing dispute or discussion" (see Anti-SLAPP Motion, p. 9, lns. 5-7), the statements or

21   conduct at issue affected members of a distinct segment of the population who all had a definable

22   relationship with the entity or individual to whom the statements were directed, or were potential

23   consumers (not business partners) of that entity or individual. *See Wilbanks v. Wolk* (2004) 121

24   Cal. App. 4th 883, 898 (distinguishing a consumer watchdog's comments on a brokerage firm's

25   business practices, which did not fall within the "public interest" domain, from consumer

26   protection information); *Thomas v. Quintero* (2005) 126 Cal. App. 4th 635 (allegations against a

27   landlord of wrongful evictions, improper retention of security deposits, and refusal to make

28   needed repairs to rental properties affected the stability and the threat of potential urban blight in

-17- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

1   the neighborhoods in which his properties were located); *Damon v. Ocean Hills Journalism Club*

2   (2000) 85 Cal. App. 4th 468 (publication in a homeowners association newsletter about a former

3   manager concerned "public issue" in part given the size of the residential community led by the

4   former manager).

5          Here, Lenahan's comments about RMG are directed at the specific conduct of RMG as it

6   relates to Lenahan. Moreover, the intimate focus of his statements on his own dispute with RMG,

7   and not RMG's relationships with other publishers, is further evidenced by the fact that he posted

8   a follow up comment a few months later stating "Just an update, over 3 months have passed and

9   have still not seen a dime." (Dowd Decl., ¶ 38, Ex. S.) Nor do his statements act as a "direct call

10  for public involvement in an ongoing controversy, dispute or discussion." *See Thomas*, 126 Cal.

11  App. 4th at 661-62. Lenahan's statements about a private dispute simply do not involve an issue

12  of public interest. If they were, then virtually every statement relating to a disagreement between

13  two parties about any business dispute would fall under the purview of the anti-SLAPP statute.

14  The California courts have made clear that "judges and attorneys will, or should, know a public

15  concern when they see it." *Du Charme v. Int'l Bro. of Elec. Workers, Local 45* (2003) 110 Cal.

16  App. 4th 107, 117. This is not one of them.

17  **III.    THE SECOND PRONG OF THE ANTI-SLAPP STATUTE COMPELS DENIAL**
        **OF THIS MOTION AS RMG'S COMPLAINT IS BOTH LEGALLY SUFFICIENT**
18      **AND SUPPORTED BY A *PRIMA FACIE* SHOWING OF FACTS SUFFICIENT TO**
        **SUPPORT A FAVORABLE JUDGMENT**
19

20         Plaintiffs' claims should not be dismissed for the independent reason that Plaintiffs have a

21  probability of prevailing on each of their claims. In order to establish a probability of prevailing

22  for purposes of section 425.16, Plaintiffs need only state and substantiate a legally sufficient

23  claim. *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal. App.

24  4th 658, 675. The California Supreme Court has referred to this test as the "minimal merit" prong

25  of section 425.16. *Navellier*, 29 Cal.4th at 89; *Grewal v. Jammu* (2011) 191 Cal. App. 997, 989.

26  According to the California Supreme Court, the plaintiff need only demonstrate that the

27  complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to

28  sustain a favorable judgment if the evidence submitted by the plaintiff is credited. *Navellier*, 29

-18- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

1    Cal.4th at 88-89. Only a minimum level of legal sufficiency and triability is required. See *Soukup*

2    *v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.

3        **A.**    **RMG Has Demonstrated A Probability of Prevailing On Its Third Cause of Action for Libel Per Se Against Third-Party Defendant Lenahan**

4

5          A statement is libelous "per se" if it defames the plaintiff or a defamatory meaning

6    appears from the language itself without the necessity of an explanation or the pleading of

7    extrinsic facts. Cal. Civ. Code §45a. A statement is libelous per se when on its face the words of

8    the statement are of such a character as to be actionable. *Slaughter v. Friedman* (1982) 32 Cal.3d

9    149, 153. A statement can also be libelous per se if it contains a charge by implication from the

10   language employed by the speaker and a listener could understand the defamatory meaning

11   without the necessity of knowing extrinsic explanatory matter. *McGarry v. University of San*

12   *Diego* (2007) 154 Cal. App. 4th 97, 112; Cal. Civ. Code, § 45a.

13         In order to recover for defamation, RMG must demonstrate that Lenahan's statements

14   were false. Because the statement must contain a provable falsehood, courts distinguish between

15   statements of fact and statements of opinion for purposes of defamation liability. Although

16   statements of fact may be actionable as libel, statements of opinion are constitutionally protected.

17   *McGarry, supra,* 154 Cal. App. 4th at 112. That does not mean that statements of opinion enjoy

18   blanket protection. On the contrary, where an expression of opinion implies a false assertion of

19   fact, the opinion can constitute actionable defamation. *Milkovich v. Lorain Journal Co.* (1990)

20   497 U.S. 1, 18–19. The critical question is not whether a statement is fact or opinion, but

21   "whether a reasonable fact finder could conclude the published statement declares or implies a

22   provably false assertion of fact." *McGarry, supra,* 154 Cal. App. 4th at 113. Courts utilize a

23   totality of circumstances test to determine whether a statement is fact or opinion—by analyzing

24   the language of the statement and context in which the statement was made. *Id.*

25         In *Wong v. Jing* (2010) 189 Cal. App. 4th 1354, a dentist brought an action for libel per se

26   against an individual who posted a negative review on Yahoo's review website stating that dentist

27   was "really fast", that child was "lightheaded for several hours" after having cavities filled, that

28   reviewer later spoke to better dentist who "would never use the laughing gas on kids, which was

1  the cause of my son's dizziness," that nitrous oxide was "general anesthetic, not local," and that

2  "general anesthetic harms a kid's nerve system." *Id.* at 1361. The defendant brought an anti-

3  SLAPP motion asserting that the plaintiff could not demonstrate that the statements were false or

4  anything more than opinion. The court held that the plaintiff showed a likelihood of success that

5  the statements were libel per se. Similarly, in *Maponics, LLC v. Wahl*, 2008 WL 2788282 (N.D.

6  Cal. July 18, 2008), this Court addressed a number of tort counterclaims brought by the

7  defendants against the plaintiff company's sales manager, including a defamation claim.  This

8  Court concluded that the manager's statements in emails to one of the defendant's customers

9  stating that the defendants "stole data" and that there were errors in one of the defendant's

10  products "imply a provably false assertion of fact which is actionable" and thus were libel per se.

11  *Id.* at *4. In *Silverstein v. E360Insight, LLC*, 2008 WL 1995217 (C.D. Cal. May 5, 2008), the

12  district court concluded that a defendant's statement on a website using Google News that

13  plaintiff was a " 'criminal vigilante' could be understood by the reader as either fact or opinion,"

14  and noting that the "statement appear[ed] immediately after an excerpt from this Court's order . . .

15  dismissing plaintiff's complaint," the statement "might suggest to the average reader that plaintiff

16  filed an unlawful, fraudulent suit." *Id.* at *11 The court denied the defendants' motion for

17  summary judgment as to the plaintiff's libel per se claim based on that statement, as a result.

18          RMG alleges a libel per se claim against Lenahan as to multiple comments he posted on

19  the Facebook group webpage:

20      Roger Dowd from Reach Media group owes me $13,000 and forcing me to hire
        Harrison Gevirtz to take them to court.  I'm also aware that they owe another
21      network $xx,xxx in addition to another affiliate they owe $xx,xxx.  Roger claims
        we were using "unapproved" sms content however I have countless emails, skype
22      transcripts...etc where he told me to use his exact word for word message on my
        marketing materials or else risk non payment, which I did under threat and now
23      hes claiming its unapproved BS story.

24      . . .

25      Roger Dowd sent a 14k wire to my partner whom was using the very same sms
        content, then 3 days later contacted the bank and pretended the wire they sent was
26      fraud in attempts to get it reversed.  Luckily a signed IO, invoice, emails,
        transcripts...etc got the bank to realize it was a BS story and stopped the
27      fraudulent reversal.

28

1    As alleged in RMG's Third-Party Complaint, these statements were posted within two minutes of

2    one another on the Facebook group page by Lenahan, specifically on a page entitled "Internet

3    Advertising – People Who Don't Pay."  (TPC, ¶ 28.)

4          Here, Lenahan's first Facebook posting about Dowd and RMG accuses Dowd of

5    "threat[ening]" him, asserting a "BS story" about the requirements of the marketing materials

6    Lenahan produced, forcing Lenahan to take RMG to court for funds, and not paying thousands of

7    dollars to affiliate networks to whom RMG owes money. Like the statements in *Wong*, *Maponics*

8    and *Silverstein*, Lenahan's comments are not mere opinions. These comments create serious

9    implications – here that RMG engaged in improper, unethical, unprofessional, and deceitful

10   business activity. No extrinsic evidence is necessary to reach this implication.

11         Moreover, Lenahan's second Facebook posting, only two minutes later, accuses Dowd

12   lying to a bank ("…contacted the bank and pretended the wire they sent was fraud in attempts to

13   get it reversed"; "got the bank to realize it was a BS story…"). In fact, he explicitly accuses

14   Dowd of attempting a "fraudulent reversal" of a bank wire transfer, which, to the "average

15   reader" might suggest that Dowd engaged in unlawful behavior, such as wire fraud. At a

16   minimum, these comments imply that RMG engages in deceitful, fraudulent business activity.

17   RMG has properly asserted a claim for libel per se against Lenahan.

18         Lenahan's statements imply provably false assertions of fact. Contrary to Lenahan's

19   assertion that his statements are true, first that "RMG owes Lenahan $13,200 for work Lenahan

20   performed on behalf of RMG," (Anti-SLAPP Motion, p. 11, lns. 17-18), Lenahan's own

21   statements to Dowd reveal the falsity of his online postings. Like all publishers in RMG's

22   network, Lenahan received the Creatives for each of the eight campaigns he signed up to publish

23   for through automated emails directed to him.  (Dowd Decl., ¶ 14, Ex. I.)  Additionally, he

24   received Special Instructions about the content of the text message advertisements, specifically

25   that they could not contain bank names, amounts over $1000, or the phrase "cash in 2 hours", and

26   that they were required to include opt-out language. (Dowd Decl., ¶ 16, Ex. K.)  Critical to this

27   analysis is Lenahan's own confession to Dowd that he had been sending text message

28   advertisements that did not comply with RMG's Creatives. (Dowd Decl., ¶ 20.)  In fact, he

DLA Piper LLP (US)
San Francisco

-21- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

conceded the same *in writing*, stating:

> I understand your very upset over all the issues these sms have brought upon you.
> I know if I were in your shoes I'd be very upset too.  However please understand
> that I did stop 100% when you gave me that 2nd and final warning and authorized
> me to continue sending SMS with your approved content only which was August
> 25th. . . .I do remember Kyle and I were talking about how some of the SMS
> which had Chase within it had converted a few days after we stopped using it
> completely. . . . Again, when you gave me my final warning and gave us approved
> sms content to use I complied with your demands 100% and did NOT go behind
> your back, not even with 1 single sms.  If you received any complaints after
> August 25th 2012 these were either NOT from me (Possibly Kyle or another
> affiliate) or were from me but the sms was sent before you gave me my final
> warning. . . . Ive also now have optin payday loan data . . . If you feel it is fair to
> deduct some money from the $12,298 to cover your time dealing with this I'm
> open to fair negotiation.

(Dowd Decl., ¶ 28, Ex. P.)  That he now claims "RMG specifically approved the content of [his]

ads" and that he "believes that his advertisements fully complied with RMG's standards" is

stunning.  (Anti-SLAPP Motion, p. 11, l. 25; p. 14, lns. 2-5.)  He failed to acknowledge in his

Motion his concession both verbally and in writing to Dowd that he did not comply with the

language of the original, preapproved Creatives RMG provided to him. Moreover, his Anti-

SLAPP Motion is absolutely silent on a key provision of the Agreement, which states that

"[a]ny changes to [a] Creative, without prior written permission will result in the loss of

payment of Leads." (Dowd Decl., ¶ 11, Ex. E.) Lenahan's first statement does not "reflect two

sides of a debate"; they imply provably false assertions of fact.

Similarly, Lenahan's second statement, that Dowd and RMG engaged in a "fraudulent

reversal" attempt of a bank wire, "pretend[ing] the wire they sent was fraud," is a false assertion

of fact which can be proved. Like Lenahan, Danna received the Creatives for the campaign he

signed up to publish for through an automated email directed to him. (Dowd Decl., ¶ 15, Ex. J.)

Additionally, he received Special Instructions about the content of the text message

advertisements, specifically that they could not contain bank names, amounts over $1000, or the

phrase "cash in 2 hours", and that they were required to include opt-out language. (Dowd Decl.,

¶ 16, Ex. K.) There is no doubt that Danna received these Special Instructions – specifically the

prohibitions on bank names, amounts over $1000, the phrase "no credit checks", and the phrase

DLA PIPER LLP (US)
SAN FRANCISCO

-22- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

1    "cash in 2 hours" - as they were provided in an email to Danna from one of RMG's former

2    employees. (Dowd Decl., ¶ 17, Ex. L.) Because Lenahan admitted that Danna had used the

3    exact same Creatives as Lenahan, Danna had stated that "the fact that they paid me and not you

4    is really going to hurt them in court," and Lenahan had previously conceded to Dowd that he

5    sent noncompliant text messages, it was evident that Danna had not complied with the

6    Creatives, either. (Dowd Decl., ¶ 32, Ex. Q.) As a result, Lenahan's statement that Dowd and

7    RMG engaged in not just a wire reversal, but a "fraudulent reversal," is also a provably false

8    assertion of fact. At a minimum, a reasonable fact finder could conclude Lenahan's statements

9    declare or imply a provably false assertion of fact, which is all that is needed to establish a

10    probability of libel per se.

11    **B.    RMG Has Demonstrated A Probability of Prevailing On Its Fourth Cause of**
**Action for Tortious Interference with Contractual Relations Against Third-**
12    **Party Defendant Lenahan and Its Fifth Cause of Action for Tortious**
**Interference with Prospective Economic Advantage Against Third-Party**
13    **Defendant Lenahan**

14    A prima facie showing of tortious, or intentional, interference with contractual relations

15    requires pleading the following elements: (1) a valid contract between plaintiff and a third party;

16    (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a

17    breach or disruption of the contractual relationship; (4) actual breach or disruption of the

18    contractual relationship; and (5) resulting damage. *Pacific Gas & Electric Co. v. Bear Stearns &*

19    *Co.* (1990) 50 Cal.3d 1118, 1126. The elements of tortious interference with prospective

20    economic advantage claim are similar: (1) an economic relationship between the plaintiff and

21    some third party, with the probability of future economic benefit to the plaintiff; (2) the

22    defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant

23    designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic

24    harm to the plaintiff proximately caused by the acts of the defendant. *Korea Supply Co. v.*

25    *Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153.

26    The allegations in the Third-Party Complaint, along with the evidence presented in

27    support of this Opposition, sufficiently establish RMG's probability of prevailing on both of these

28    claims. Indeed, one of two theories available to RMG giving rise to these claims does not arise

-23- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

from the defamatory Facebook postings at all, and thus does not fall within the purview of the

anti-SLAPP statute. Specifically, one set of contracts and economic relationships with which

Lenahan has intentionally interfered are those between RMG and its advertisers. RMG has valid

contracts, and economic relationships, with the advertisers that seek RMG's publication services.

Indeed, advertisers enter into marketing and distribution agreements with RMG, which govern the

responsibilities of RMG, payment to RMG by the advertiser, and representations and warranties,

among other issues. (Dowd Decl., ¶ 8, Ex. B.) Although Lenahan had been warned on more than

one occasion not to send noncompliant text message advertisements (Dowd Decl., ¶ 28, Ex. P)

and all publishers are generally aware that third party advertisers seek to purchase Leads from

RMG as a result of its campaigns (Dowd Decl., ¶ 8) he deliberately continued to send

noncompliant text messages, reflecting a complete disregard for the implications his actions had

on RMG's contractual and economic relations with advertisers seeking to purchase lawful Leads

from RMG from these advertising campaigns. As a result of Lenahan's noncompliant text

messages, RMG refunded its fees to the advertisers associated with Lenahan's campaigns and

suffered a loss in profit as a result. (Dowd Decl., ¶ 34.)  While the Third-Party Complaint does

not directly rely upon this theory in asserting Counts IV and V, evidence presented in support of

this Opposition, along with certain allegations of the Third-Party Complaint, support this theory.

To the extent this Court requires, for purposes of its ruling, an amended Third-Party Complaint to

reflect the entirety of these allegations, *but without altering Counts IV and V themselves*, RMG

respectfully requests leave to amend its Third-Party Complaint accordingly, in accordance with

the proposed amendments attached as Exhibit A to the Declaration of Vishali Singal In Support

Of Opposition to Third-Party Defendant Ryan Lenahan's Motion to Strike Claims Under Cal.

Civ. Proc. Code § 425.16 (Anti-SLAPP Motion). Critically, should this Court permit RMG to

assert this theory of facts in support of Counts IV and V, the anti-SLAPP statute is no longer

applicable to them and showing a probability of prevailing on the merits is no longer required.[1]

---

[1] Separately, RMG has established a probability of success on the merits of Counts IV and V even
based on the defamatory statements themselves. RMG pled the existence of a valid contract and
economic relations with one of its largest clients. (TPC, ¶ 30.) Additionally, the Third-Party
Complaint alleged that Lenahan was aware of RMG's strong reputation in the advertising

DLA PIPER LLP (US)
SAN FRANCISCO

-24- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

1   Additionally, RMG respectfully requests that this Court still grant RMG's leave to amend the

2   Third-Party Complaint in relation to the separate issues addressed in Lenahan's and Danna's

3   Motion to Dismiss and/or Strike Third-Party Complaint, should it choose to grant any or all

4   portions of that second motion.

5   **III.     CONCLUSION**

6           Lenahan is trying to hide behind California's Anti-SLAPP law to escape responsibility for

7   deliberately posting fabricated statements about RMG on a Facebook forum and then linking

8   those comments to RMG's president and CEO Roger Dowd's personal Facebook page. This

9   lawsuit is not the story of a corporation trampling on consumers' freedom of speech, or concerned

10  citizens mobilizing to take action on an issue. This is a case of a disgruntled independent

11  contractor who, after admitting that he breached the contractual terms of his business engagement

12  with RMG, publicly posted knowingly false statements relating to a private issue, namely a

13  payment dispute between himself and RMG. California's anti-SLAPP statute was not designed to

14  give individuals carte blanche to destroy a company's reputation and interfere with their business

15  and contractual relationships by posting defamatory statements about a business dealing.

16          Lenahan's Anti-SLAPP Motion must be denied for the following reasons: (1) Lenahan has

17  failed to make a threshold showing that the challenged causes of action arise from the exercise of

18  protected free speech as defined in CCP sections 425.16(e) and 425.17, (2) the evidence before

19  the Court independently demonstrates that RMG has a probability of prevailing on the merits of

20  its claims for libel per se (Count III), tortious interference with contractual relations (Count IV)

21  and tortious interference with prospective economic advantage (Count V), and (3) regarding

22  Counts IV and V, these claims do not fall within the scope of the anti-SLAPP statute where the

23  theory upon which they are based are Lenahan's conduct of sending noncompliant text messages.

24  industry and the existence of RMG's multiple contracts with its clients, which are not limited to

25  publishers. (TPC, ¶¶ 47 and 53; Dowd Decl., ¶¶ 5, 8.) Lenahan has not pointed to authority
    requiring that at this "probability" stage, that is, a minimum level of legal sufficiency, more than a
    pleading of knowledge that RMG has contracts with entities generally is required. Additionally,

26  as established previously, Lenahan committed an intentional tort on a Facebook group page,
    designed to "[c]all them out and let the world know" – specifically to induce disruption of RMG's

27  contractual and economic relationships. Indeed, this larger client of RMG's now requires
    prepayment or personal guarantees from RMG as to future campaigns, such that RMG has

28  suffered damages in the form of future indebtedness with this larger client.

DLA Piper LLP (US)
San Francisco

-25- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

1

Dated: February 1, 2013

2

DLA PIPER LLP (US)

3

By: _____

4

ERIN JANE ILLMAN
VISHALI SINGAL

5

Attorneys for Defendant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-26- OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER
CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)