1  JOSHUA M. BRIONES (Bar No. 205293)
   joshua.briones@dlapiper.com
2  DLA PIPER LLP (US)
   2000 Avenue of the Stars, Suite 400 North Tower
3  Los Angeles, California 90067-4704
   Tel: 310-595-3000
4  Fax: 310-595-3300

5  ALBERT E. HARTMANN (*pro hac vice* pending)     ERIN J. ILLMAN (Bar No. 236282)
   albert.hartmann@dlapiper.com                    VISHALI SINGAL (Bar No. 267481)
6  DLA PIPER LLP (US)                              vishali.singal@dlapiper.com
   203 North LaSalle Street, Ste 1900              DLA PIPER LLP (US)
7  Chicago, IL 60601-1293                          555 Mission Street, Suite 2400
   Tel: 312-368-4000                               San Francisco, CA 94105-2933
8  Fax: 312-236-7516                               Tel: 415.836.2500
                                                   Fax: 415.836.2501
9  Attorneys for Defendant and Third-Party Plaintiff
   REACH MEDIA GROUP, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID TRINDADE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REACH MEDIA GROUP, LLC, a Delaware limited liability company,<br><br>Defendant.<br><br>REACH MEDIA GROUP, LLC, a Delaware limited liability company,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>RYAN LENAHAN, individually, KYLE DANNA, individually, and EAGLE WEB ASSETS INC., a corporation,<br><br>Third-Party Defendants. | CASE NO 5:12-CV-04759 (PSG)<br><br>(Complaint Filed: September 12, 2012)<br><br>**CLASS ACTION**<br><br>**DECLARATION OF VISHALI SINGAL IN SUPPORT OF OPPOSITION TO THIRD PARTY DEFENDANT RYAN LENAHAN'S MOTION TO STRIKE CLAIMS UNDER CAL. CIV. PROC. CODE §425.16 (ANTI-SLAPP MOTION)**<br><br>DATE: MARCH 12, 2013<br>TIME: 10:00 a.m.<br>DEPT: COURTROOM 5, 4TH FLOOR<br>JUDGE: HON. PAUL SINGH GREWAL |

DLA PIPER LLP (US)
SAN FRANCISCO

DECLARATION OF VISHALI SINGAL ISO OPPOSITION TO MOTION TO STRIKE
CLAIMS UNDER CAL. CODE CIV. PROC. § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)

I, VISHALI SINGAL, hereby declare as follows:

1. I am an attorney admitted to practice law in the State of California and authorized to practice before this Court. I am an associate with the law firm of DLA Piper LLP (US), counsel for Defendant and Third-Party Plaintiff Reach Media Group, LLC. I have personal knowledge of the matters contained herein and, if called as a witness, I could and would competently testify to the following.

2. Attached hereto as Exhibit A is a true and correct copy of a proposed amended Third-Party Complaint to assert allegations in support of Counts IV and V as to Third-Party Defendant Ryan Lenahan.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that this Declaration is executed on February 1, 2013, at San Francisco, California.

_____
VISHALI SINGAL

-1-

DECLARATION OF VISHALI SINGAL ISO OPPOSITION TO MOTION TO STRIKE CLAIMS UNDER CAL. CODE CIV. PROC. § 425.16 (ANTI-SLAPP MOTION)
CASE NO. 5:12-CV-04759 (PSG)



**EXHIBIT A**

| | |
|---|---|
| 1 | JOSHUA M. BRIONES (Bar No. 205293) |
| | joshua.briones@dlapiper.com |
| 2 | DLA PIPER LLP (US) |
| | 2000 Avenue of the Stars, Suite 400 North Tower |
| 3 | Los Angeles, California 90067-4704 |
| | Tel: 310-595-3000 |
| 4 | Fax: 310-595-3300 |

ALBERT E. HARTMANN (*pro hac vice* pending)
albert.hartmann@dlapiper.com
DLA PIPER LLP (US)
203 North LaSalle Street, Ste 1900
Chicago, IL 60601-1293
Tel: 312-368-4000
Fax: 312-236-7516

ERIN J. ILLMAN (Bar No. 238262)
erin.illman@dlapiper.com
VISHALI SINGAL (Bar No. 267481)
vishali.singal@dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

Attorneys for Defendant and Third-Party Plaintiff
REACH MEDIA GROUP, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID TRINDADE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REACH MEDIA GROUP, LLC, a Delaware limited liability company,<br><br>Defendant.<br><br>REACH MEDIA GROUP, LLC, a Delaware limited liability company,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>RYAN LENAHAN, individually, KYLE DANNA, individually, and EAGLE WEB ASSETS INC., a corporation,<br><br>Third-Party Defendants. | CASE NO 5:12-CV-04759 (PSG)<br><br>(Complaint Filed: September 12, 2012)<br><br>**AMENDED THIRD-PARTY COMPLAINT OF REACH MEDIA GROUP, LLC FOR:**<br><br>**1) BREACH OF WARRANTY**<br><br>**2) BREACH OF CONTRACT**<br><br>**3) LIBEL PER SE**<br><br>**4) TORTUOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**<br><br>**5) TORTUOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br><br>**DEMAND FOR JURY TRIAL** |

## THIRD-PARTY COMPLAINT

Third-Party Defendant REACH MEDIA GROUP, LLC, a Delaware limited liability company ("RMG"), for its Third-Party Complaint against RYAN LENAHAN, individually, KYLE DANNA, individually, and EAGLE WEB ASSETS INC., a corporation organized and existing under the laws of Illinois (collectively, "Third-Party Defendants"), alleges as follows:

## INTRODUCTORY ALLEGATIONS

1. RMG is a leading performance based publisher network that provides advertisers with a single stop solution for scaling their affiliate market solutions.

2. In a class action filed on September 12, 2012, Plaintiff David Trindade ("Plaintiff") sued RMG for allegedly violating the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* Plaintiff contends that RMG repeatedly made or directed to be made on its behalf unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the alleged Class, for the purpose of "driv[ing]e consumers to information collection websites and payday loan offers", without their prior express consent, and thus, in violation of 47 U.S.C. § 227(b)(1)(A)(iii). (Dkt. 1, ¶¶ 1-4, 39.) Among other examples, Plaintiff alleges that RMG made, or had made on its behalf, an unsolicited text message to Plaintiff's cellular phone on August 13, 2012, stating: "Lenders offering $1,500 cash loans deposited within 2hrs. NO credit checks! Get money today by applying right now directly on your phone at www.TwoHourCash.com." (Dkt. 1, ¶ 17.) Furthermore, Plaintiff contends that these text message calls caused Plaintiff and the members of the purported Class "actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text message calls, and the monies paid to their wireless carriers for the receipt of such text message calls." (Dkt. 1, ¶¶ 1-4, 39.) RMG denies Plaintiff's claims and denies any liability for any damages alleged by Plaintiff.

3. As a publisher network, RMG frequently enters into agreements with advertisers or media companies ("Company"), whereby the Company purchases advertising and related services from RMG. These agreements govern the services provided by RMG, payment and the terms of payment to RMG, the representations and warranties by RMG and Company, and the

nature of the relationship between RMG and the Company, among other things. To become a purchaser of RMG's advertising services, a Company must execute a Marketing and Distribution Agreement.

4. As a publisher network, RMG frequently enters into agreements with third party publishers for the publication of advertisements. These agreements govern the content of the advertisements, the terms of payment to the third party publishers, the representations and warranties by the third party publishers, and the nature of the relationship between RMG and the third party publishers, among other things. To join RMG's publisher network, a publisher must submit an application on RMG's website, available at http://www.reachmediagroup.com/signup. By submitting this application, the publisher agrees to RMG's Terms and Conditions ("Agreement"), which is located on the application page and accessible for review before a publisher submits an application. Under the Agreement the publisher agrees to "display the Advertisement and perform lead generation services described in the attached Insertion Order". The publisher understands that they will be publishing advertisements for RMG's advertising campaigns benefitting both RMG and the Companies that enter into Marketing Distribution Agreements with RMG.

5. Within the past five months, each of the Third-Party Defendants, Ryan Lenahan ("Lenahan"), Kyle Danna ("Danna"), and Eagle Web Assets Inc. ("EWA") applied on RMG's website to join RMG's publisher network. In so doing, they agreed to the Terms and Conditions. Each of the Third-Party Defendants also agreed to Insertion Orders which specified the advertising campaigns for which they would publish advertisements specified by RMG, also called RMG's Creatives, and start and end dates for the campaigns, among other things.

6. RMG is informed and believes, and thereon alleges, during the time period the Third-Party Defendants published advertisements relating to Companies, that each Company had a valid existing contract with RMG.

7. RMG is informed and believes, and thereon alleges, Third-Party Defendants had knowledge of the existence of the contracts with these Companies during the time period they were publishing advertisements purportedly pursuant to RMG's campaigns for these Companies.

8. The Agreements into which each of the Third-Party Defendants entered were identical to one another and specified that each party to them were independent contractors, not authorized or empowered to obligate the other or incur any costs on behalf of the other without the other party's prior written consent. Attached hereto as Exhibit A, and incorporated herein by this reference, is a true and correct copy of the Terms and Conditions. Additionally, the Agreements required Third-Party Defendants to display an advertisement and perform lead generation services in accordance with accompanying Insertion Orders. Furthermore, each Agreement prohibited editing to RMG's Creative without the prior written consent of RMG, and explained that any violation of this requirement would result in the loss of payment per leads. The Agreements also included a representation and warranty by each Third-Party Defendant that the Third-Party Defendant's efforts in association with the Agreement would comply with the laws of the United States, and any applicable laws of any other jurisdiction, and that the Third-Party Defendant would not engage in or promote any illegal activities of any kind in association with the Agreement.

9. RMG is informed and believes, and thereon alleges, that each Third-Party Defendant breached their warranties under the Agreements by sending text messages to cellular phone numbers without the prior express consent of the called parties. Moreover, RMG is informed and believes, and thereon alleges, that Third-Party Defendants also breached the Agreements by sending text messages to cellular phone numbers that did not comply with RMG's Creatives, without receiving prior written approval from RMG.

10. Third-Party Defendants Lenahan and EWA are now engaged in defamatory conduct apparently intended to smear the reputation of RMG and its President and Chief Executive Officer, Roger Dowd ("Dowd"). The damaging conduct of Third-Party Defendant Lenahan has already deteriorated RMG's relationship with one of its largest customers, and is intended to further interfere with RMG's existing and future contractual relations, as well as its prospective economic advantage.

11. Under the terms of the Agreements, RMG is not liable for any damage caused by Third-Party Defendants Lenahan, Danna, and EWA, arising out of or in connection with the

Agreements. Moreover, the Agreements specify that under no circumstances shall RMG be liable to publishers or any third parties "for any reason." (Ex. A, ¶ 15.) Rather, Third-Party Defendants are required to indemnify, defend and hold harmless RMG and its employees, agents, officers and directors, against claims, causes of actions, judgments, demands, damages, losses or liabilities, including costs and expenses, arising out of or relating to any breach of any representation or warranty in the Agreement, among other things. (Id., ¶ 16.) Accordingly, to the extent Plaintiff or purported Class members have suffered damages in relation to text messages described in Plaintiff's Complaint and those text messages were sent by Third-Party Defendants, Third-Party Defendants, and each of them, are the actual and proximate cause of any such damage and liable to Plaintiff for such harm, if any.

**THE PARTIES AND JURISDICTION**

12. Defendant and Third-Party Plaintiff RMG is a limited liability company organized and existing under the laws of the State of Delaware. Its principal place of business is located at 3715 Northside Parkway, Building 100, Suite 300, Atlanta, Georgia 30327. RMG conducts business in the State of California and in this District.

13. Third-Party Defendant Ryan Lenahan ("Lenahan") is a natural person and resident of the State of California.

14. Third-Party Defendant Kyle Danna ("Danna") is a natural person and resident of the State of Louisiana.

15. Third-Party Defendant Eagle Web Assets Inc. ("EWA") is a corporation organized and existing under the laws of the State of Illinois. Its principal place of business is located at 9933 Lawler, Suite 355, Skokie, IL 60077. EWA conducts business in the State of California and in this District.

16. This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

**VENUE**

17. Venue is proper in the Northern District of California because a substantial part of

the events or omissions giving rise to the claims occurred in this District.

## LEGAL BASIS FOR THIS THIRD-PARTY COMPLAINT

18. Third-Party Defendants, and each of them, are parties to the Agreements with RMG. The Agreements contain the following indemnification provision, stated in its entirety here:

> Each party agrees to indemnify, defend and hold harmless the other party and its employees, agents, officers and directors, against any and all claims, causes of actions, judgments, demands, damages, losses or liabilities, including costs and expenses (including reasonable attorneys fees and costs of suit), arising out of or relating to (a) any claim based upon infringement of copyright, trademark, patent, or trade secret or other intellectual property right of any third party; (b) any claim, representation, or statement made in the Advertisement; **(c) any breach of any representation or warranty contained in this Agreement.**

(Ex. A, ¶ 16) (emphasis added). Under each of the Agreements, each Third-Party Defendant represents and warrants, among other things, that the Third-Party Defendant's

> efforts associated with this Agreement comply with the laws of the United States, and any other laws of any other jurisdictions which are applicable to PUBLISHER. PUBLISHER will not engage in or promote any illegal activities of any kind in association with this Agreement.

(Id. A, ¶ 11.) Because Third-Party Defendants represented and warranted to RMG that they would comply with all federal laws, which include the TCPA, they must indemnify and hold harmless RMG and its employees, agents, officers and directors, against claims, judgments, damages, losses or liabilities, among others, arising out of or relating to their breach of this representation and warranty, including any violations of the TCPA.

## GENERAL ALLEGATIONS

**Publication Agreements Entered Into By and Between RMG and Third-Party Defendants**

19. On or around July 21, 2012, Third-Party Defendant EWA entered into an Agreement with RMG to publish RMG's Creative, specifically for the Cash Advance Diamond – WEB/WAP campaign. This Agreement required that EWA "display the Advertisement and perform lead generation services described in the attached Insertion Order." (Ex. A, ¶ 1.) The Agreement further specified that any editing of RMG's Creative was "strictly prohibited, without

prior written approval from Reach Media Group." (Id., ¶ 4.) Indeed, any violation of this prohibition would result in the loss of payment per lead basis, pursuant to the Agreement. (Id.) Subsequently, on or around August 27, 2012, EWA agreed to publish advertisements pursuant to the Quick Cash Money Loan – WEB/WAP campaign, as well.

20. On or around August 9, 2012, Third-Party Defendant Lenahan entered into an Agreement with RMG to publish RMG's Creatives, as well. The terms of this Agreement were identical to the terms of the Agreement entered into on RMG's website between RMG and Third-Party Defendant EWA. The Insertion Order for Ryan Lenahan detailed eight different advertising campaigns, entitled: (1) Auto Loan Professionals, (2) Cash Advance Diamond, (3) Central Payday Advance, (4) Honest Cash Loan, (5) Huge Cash Advance, (6) Instant Cash Express, (7) Mobile Cash Source, and (8) Second Chance Cash Advance.

21. Finally, on or around September 4, 2012, Third-Party Defendant Danna also entered into an Agreement with RMG to publish RMG's Creative for another advertising campaign. That campaign was entitled Homeland Cash Advance. The terms of this Agreement were identical to the terms of the Agreement to which RMG and Lenahan agreed, and the terms of the Agreement to which RMG and EWA agreed.

22. By entering into the Agreements with RMG, Third-Party Defendants represented and warranted that:

> (1) the recipients of all email addresses used by PUBLISHER in connection with this Agreement have manifested affirmative consent to receive commercial emails from PUBLISHER and none of the email addresses were obtained through email harvesting or dictionary attacks; (2) PUBLISHER will not fraudulently add leads or clicks or inflate leads or clicks by fraudulent traffic generation (as determined solely by Reach Media Group, such as pre-population of forms or mechanisms not approved by Reach Media Group); (3) PUBLISHER will not attempt in any way to alter, modify, eliminate, conceal, or otherwise render inoperable or ineffective the Site tags, source codes, links, pixels, modules or other data provided by or obtained from Reach Media Group that allows Reach Media Group to measure ad performance and provide its services and **(4) all of PUBLISHER's efforts associated with this Agreement comply with the laws of the United States, and any other laws of any other jurisdictions which are applicable to PUBLISHER. PUBLISHER will not engage in or promote any illegal activities of any kind in association with this Agreement.**

(Ex. A, ¶ 11) (emphasis added).

23. Furthermore, under the indemnification provision of the Agreements, each party agreed to indemnify, defend and hold harmless the other party against - in part - damages, losses or liabilities arising out of or relating to "any breach of any representation or warranty contained in this Agreement." (Id., ¶ 16.)

24. Beginning some time after July 21, 2012, Roger Dowd, President and Chief Executive Officer of RMG, received a complaint from a recipient of a text message, purportedly sent on RMG's behalf. The recipient complained that he received a text message advertisement, which provided a link that itself linked to a website owned by RMG, but that he never provided authorization to receive the text message at issue. Subsequently, Dowd received numerous other complaints from recipients of text messages sent some time after July 21, 2012 purportedly on RMG's behalf. RMG never authorized the transmission of any of the text messages for which Dowd received complaints, including the following advertisement:

> Chase is offering $1500 cash loans deposited within 2hrs. NO credit checks or faxing! Get the money today by applying right now on your phone at TwoHourCash.net.

25. As a result of these complaints, Dowd spoke with Lenahan, notifying Lenahan that Dowd had received complaints regarding text messages purportedly sent on RMG's behalf. Based upon information and belief, Dowd told Lenahan that the unauthorized text messages had been sent by Lenahan and that Lenahan was in breach of the Agreement because he had sent text messages on RMG's behalf that were not in compliance with the terms of the Agreement between RMG and Lenahan. Dowd also demanded that Lenahan cease sending unlawful text messages on RMG's behalf. Subsequent to these conversations with Lenahan, Dowd received additional complaints regarding text messages purportedly sent on RMG's behalf. As a result, Dowd spoke with Lenahan again, demanding that Lenahan cease sending non-compliant and unlawful text messages on RMG's behalf, that Lenahan provide to Dowd the OPTIN information Lenahan used to determine the recipients of his text messages, that Lenahan ensure all of his marketing efforts were compliant with the CAN-SPAM Act of 2003, and that Lenahan was following best

practices with regard to publication of advertisements.

26. Lenahan failed to provide to Dowd the OPTIN information and failed to certify to Dowd that his marketing efforts were compliant with the CAN-SPAM Act of 2003 and in accord with best practices for publication of advertisements. As a result, Lenahan was officially suspended as a RMG publisher on or around August 26, 2012.

27. Soon after, it came to RMG's attention that EWA was sending text messages, purportedly pursuant to the Agreement entered into by and between RMG and EWA, which, upon information and belief, were developed by Lenahan, and which were in violation of the terms and conditions of the Agreement between RMG and EWA. On or around August 31, 2012, EWA was officially suspended as a RMG publisher. Additionally, on or around September 21, 2012, Dowd sent an email to Harrison Gevirtz, a co-founder of EWA, itemizing the specific problems of the text messages sent by EWA.

28. Upon information and belief, EWA learned that Danna was also sending text messages, purportedly on behalf of RMG, not incompliance with the terms of the Agreement he entered into with RMG. On or around September 11, 2012, Danna was officially suspended as a RMG publisher as well.

29. As a result of Third-Party Defendants' failure to comply with the terms of the Agreements and Insertion Orders, none of the Third-Party Defendants were entitled to payment pursuant to the Payment provision of the Agreements, which states:

> PUBLISHER will invoice Reach Media Group on a monthly basis at the payout rates reflected in the Insertion Order. The invoice will reflect delivery of final Qualified Lead numbers that are based upon numbers reported by Reach Media Group to PUBLISHER pursuant to the terms of this Agreement.

(Ex. A, ¶ 8.)

30. RMG is informed and believes, and thereon alleges, that each of Third-Party Defendants have engaged in multiple instances of unauthorized advertising through text messaging. By associating RMG's name with these unauthorized text messages, Third-Party Defendants have damaged the reputation of RMG, as well as the advertising industry.

31. As a result of the Third-Party Defendants' failure to comply with the terms and

conditions of the Agreements with RMG, including but not limited to, the sending of unauthorized text messages, RMG has been forced to absorb the costs associated therewith and has been unable to charge the Companies for services rendered.

**Defamation by Third-Party Defendants Lenahan and EWA**

32. After RMG refused to pay Lenahan pursuant to the Agreement on the grounds that Lenahan did not comply with the terms and conditions of the Agreement, RMG is informed and believes, and thereon alleges, that Lenahan posted defamatory statements about Dowd and RMG on the social networking site Facebook. Specifically, on September 28, 2012, an email was sent from "Ryan Lenahan", at the email address notification+pfdvelcf@facebookmail.com, to "Internet Advertising – People Who Don't Pay," at the email address internetdeadbeats@groups.facebook.com, entitled "Re: [Internet Advertising – People Who Don't Pay] Roger Dowd from Reach Media group owes me $13,000…". The September 28, 2012 email included two comments by an individual named "Ryan Lenahan". The first, posted at 10:19 pm on September 28, 2012, stated:

> Roger Dowd from Reach Media group owes me $13,000 and forcing me to hire Harrison Gevirtz to take them to court. I'm also aware that they owe another network $xx,xxx in addition to another affiliate they owe $xx,xxx. Roger claims we were using "unapproved" sms content however I have countless emails, skype transcripts…etc where he told me to use his exact word for word message on my marketing materials or else risk non payment, which I did under threat and now hes claiming its unapproved BS story.

The second comment was posted at 10:21 pm on September 28, 2012, and stated:

> Roger Dowd sent a 14k wire to my partner whom was using the very same sms content, then 3 days later contacted the bank and pretended the wire they sent was fraud in attempts to get it reversed. Luckily a signed IO, invoice, emails, transcripts…etc got the bank to realize it was a BS story and stopped the fraudulent reversal.

33. RMG is informed and believes, and thereon alleges, that these two comments were drafted by Lenahan on a public group Facebook site. The comments accuse Dowd and RMG of unjustifiably withholding funds from Lenahan, and they accuse Dowd of fraudulently

reversing a bank wire. But Lenahan was well aware that neither accusation was true.

34. At least one of these postings has already damaged RMG's excellent reputation with one of its larger clients. In its correspondence with RMG, this client notified RMG that it had seen the second September 28, 2012 comment and it further indicated to RMG that it would require a personal guarantee or prepayment in future engagements with RMG.

35. Similarly, after RMG refused to pay EWA for publication services it performed purportedly pursuant to the Agreement on the grounds that EWA breached the terms and conditions of the Agreement, RMG is informed and believes, and thereon alleges, that one of EWA's co-founders, Ryan Eagle ("Eagle"), also posted a defamatory comment about Dowd and RMG on Facebook. Specifically, on September 21, 2012, an email was sent from an individual named "Ryan Eagle", at the email address notification+pfdvelcf@facebookmail.com, to "Internet Advertising – People Who Don't Pay," at the email address internetdeadbeats@groups.facebook.com, entitled "[Internet Advertising – People Who Don't Pay] Roger Dowd – We're having a little flack from…". The September 21, 2012 email included the following comment, posted at 11:58 a.m.:

> Roger Dowd – We're having a little flack from him, anyone having any problems? I heard he was a good guy so I'm a bit surprised.

Additionally, RMG is informed and believes, and thereon alleges, that on or around September 21, 2012, Eagle posted the following message on Dowd's personal Facebook page:

> Hey Roger – We're apparently having some problem with getting paid by you. I was wondering if you could get that through to us consider you hold such a good name in the industry. Thanks a lot pal

36. These two postings suggest that Dowd unjustifiably withheld funds owed to EWA. But EWA was well aware that this accusation was not true.

37. As a result of the defamatory postings by Lenahan and Eagle, RMG's counsel, DLA Piper LLP (US), sent cease and desist letters by Federal Express and e-mail to Lenahan and Eagle on October 15, 2012, demanding that they cease and desist from this conduct and from engaging in further unlawful conduct directed at Dowd and RMG, and that they confirm their

compliance with these demands in writing to the offices of DLA Piper LLP (US) no later than Monday, October 22, 2012. RMG's counsel never received confirmations in writing from either Lenahan or Eagle. Moreover, on November 4, 2012, another email was sent from "Ryan Lenahan", at the email address notification+pfdvelcf@facebookmail.com, to "Internet Advertising – People Who Don't Pay," at the email address internetdeadbeats@groups.facebook.com, entitled "Re: [Internet Advertising – People Who Don't Pay] Roger Dowd from Reach Media group owes me $13,000...". The November 4, 2012 email included another comment by the individual named "Ryan Lenahan" stating "Just an update, over 3 months have passed and have still not seen a dime." Additionally, the email included two comments by other individuals to Ryan Lenahan's September 28, 2012 11:19 p.m. defamatory comment about Dowd and RMG. They said "Good to know, thanks for the heads up" and "oh my... not going near that network". As evidenced by these comments and those of one of RMG's largest clients, it is evident that Lenahan's defamatory statements about Dowd and RMG have already injured their reputation in the publishing network and advertising industries.

## COUNT I

### Breach of Warranty Against All Third-Party Defendants

38. RMG incorporates by reference Paragraphs 1 through 37 as if fully set forth herein.

39. Third-Party Defendants, and each of them, were obligated to comply with the Terms and Conditions of the Agreements. Pursuant to the Agreements, Third-Party Defendants, and each of them, represented and warranted that all their efforts associated with the Agreements complied with the laws of the United States, and any other laws of any other jurisdictions applicable to each of them, and that they would not engage in or promote any illegal activities of any kind in association with the Agreements.

40. RMG is informed and believes, and thereon alleges, that Third-Party Defendants, and each of them, independently breached their warranties to RMG by sending text messages to cellular phone numbers without the prior express consent of the called parties, in violation of

federal law.

41. To the extent Plaintiff and members of the purported Class have suffered any damage as a result of these text messages, each of the Third-Party Defendants' conduct solely, actually and proximately caused those damages.

### COUNT II
### Breach of Contract Against All Third-Party Defendants

42. RMG incorporates by reference Paragraphs 1 through 41 as if fully set forth herein.

43. Third-Party Defendants, and each of them, were obligated to comply with the Terms and Conditions of the Agreements. Under the Agreements, each of them were prohibited from editing RMG's Creatives without RMG's written prior approval.

44. RMG is informed and believes, and thereon alleges, that Third-Party Defendants, and each of them, independently breached this obligation by sending text messages to cellular phone numbers which language did not comply with RMG's Creatives, although none of the Third-Party Defendants received RMG's prior written approval for any change to the Creatives.

### COUNT III
### Libel Per Se Against Third-Party Defendants Lenahan

45. RMG incorporates by reference Paragraphs 1 through 44 as if fully set forth herein.

46. RMG is informed and believes, and thereon alleges, that Third-Party Defendant Lenahan published on a Facebook public group page at least two written, false, and unprivileged comments about Dowd and RMG. Lenahan accused Dowd and RMG of unjustifiably withholding funds from Lenahan and accused Dowd of fraudulently reversing a bank wire.

47. These written statements and communications are defamatory on their face, as they attack both RMG's and Dowd's business reputations and Dowd's trustworthiness, falsely indicating that RMG and Dowd have unjustifiably withheld funds in the past in business dealings. As a result of Lenahan's conduct, RMG's relationship with one of its largest clients has already deteriorated, and Lenahan's conduct have undermined RMG's strong reputation in the publisher

Margin comments:
- Deleted: and EWA
- Deleted: and that Third-Party Defendant EWA's cofounder Eagle published on a Facebook public group page at least one written, false, and unprivileged comment about RMG
- Deleted: Additionally, EWA's co-founder Eagle accused RMG of unjustifiably withholding funds from EWA
- Deleted: both
- Deleted: and EWA's

network and advertising industries.

48. Unless restrained by order of the court, Third-Party Defendant Lenahan will continue to wrongfully attempt to harm RMG's and Dowd's strong reputation in the publisher network and advertising industries, for which damages will not afford adequate relief. Therefore, RMG seeks injunctive relief, among other relief.

### COUNT IV
**Tortuous Interference with Contractual Relations Against Third-Party Defendant Lenahan**

49. RMG incorporates by reference Paragraphs 1 through 48 as if fully set forth herein.

50. As a leading performance based publisher network, RMG has multiple contractual relations with customers seeking advertising services, from which RMG draws significant profits.

51. Third-Party Defendant Lenahan, a self-proclaimed publication expert, is well aware of RMG's strong reputation in the advertising industry and the existence of these multiple contracts.

52. RMG is informed and believes, and thereon alleges, that Lenahan intentionally, purposefully, willfully, and with knowledge sent unauthorized text messages to cellular phone numbers which did not comply with RMG's Creatives. This conduct was unjustified and was the moving or procuring cause of the inability to perform on the contract between RMG and Companies. Lenahan's conduct resulted in damages to RMG, including, but not limited to the inability to collect payment under the contract with Companies.

53. Further, after Lenahan intentionally, purposefully, willfully and with knowledge sent these unauthorized text messages, Lenahan published on a Facebook public group page false, unprivileged information about Dowd and RMG, accusing Dowd and RMG of unjustifiably withholding funds from Lenahan and accusing Dowd of fraudulently reversing a bank wire, committing libel.

54. Not only was it reasonably foreseeable that Lenahan's act of sending unauthorized text messages to cellular phone numbers which did not comply with RMG's Creatives would interfere with or disrupt these contractual relations, but Lenahan's wrongful conduct was intended

-13-

and designed to interfere with RMG's contractual relations.

55. Further, it was reasonably foreseeable that Lenahan's libelous conduct would interfere with or disrupt these contractual relations, and Lenahan's wrongful conduct was intended and designed to interfere with RMG's contractual relations. His conduct was grossly negligent, and as a result, at least one of RMG's contractual relations has already deteriorated.

56. Unless restrained by order of the court, Third-Party Defendant Lenahan will continue to wrongfully attempt to harm RMG's and Dowd's strong reputation in the publisher network and advertising industries, for which damages will not afford adequate relief. Therefore, RMG seeks injunctive relief, among other relief.

## COUNT V
### Tortuous Interference With Prospective Economic Advantage Against Third-Party Defendant Lenahan

57. RMG incorporates by reference Paragraphs 1 through 56 as if fully set forth herein.

58. As a leading performance based publisher network, RMG has multiple contractual relations with customers seeking advertising services, from which RMG draws significant profits.

59. Third-Party Defendant Lenahan, a self-proclaimed publication expert, is well aware of RMG's strong reputation in the advertising industry and the existence of these multiple contracts.

60. RMG is informed and believes, and thereon alleges, that Lenahan knew of and intended to interfere with RMG's prospective business.

61. RMG is informed and believes, and thereon alleges, that Lenahan intentionally, purposefully, willfully, and with knowledge sent unauthorized text messages to cellular phone numbers which did not comply with RMG's Creatives. Lenahan's intentional, purposeful, willful, and with knowledge, sending of unauthorized text messages to cellular phone numbers which did not comply with RMG's Creatives was unjustified and was the moving or procuring cause of the inability to perform on the contract between RMG and Companies. Lenahan's conduct resulted in damages to RMG, including, but not limited to the inability to collect payment under the contract

DLA PIPER LLP (US)
SAN FRANCISCO

AMENDED THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)

with the Companies.

62. Further, Lenahan published on a Facebook public group page false, unprivileged information about Dowd and RMG, accusing Dowd and RMG of unjustifiably withholding funds from Lenahan and accusing Dowd of fraudulently reversing a bank wire, Lenahan committed libel.

63. Not only was it reasonably foreseeable that Lenahan's sending of unauthorized text messages to cellular phone numbers which did not comply with RMG's Creatives and libelous conduct would interfere with or disrupt these contractual relations, but Lenahan's wrongful conduct was intended and designed to interfere with RMG's contractual relations and prospective economic advantage. His conduct was grossly negligent, and as a result, at least one of RMG's contractual relations has already deteriorated.

64. Unless restrained by order of the court, Third-Party Defendants Lenahan will continue to wrongfully attempt to harm RMG's and Dowd's strong reputation in the publisher network and advertising industries, for which damages will not afford adequate relief. Therefore, RMG seeks injunctive relief, among other relief.

## PRAYER FOR RELIEF

WHEREFORE, RMG respectfully requests that this Court enter judgment in its favor and against Third-Party Defendants, and each of them, and that this Court award the following relief to RMG:

A. A declaratory judgment that Third-Party Defendants, and each of them, breached their respective Agreements and warranties within those Agreements and should be held individually liable to RMG for any loss or damage RMG incurs as a result of Plaintiff's lawsuit;

B. A declaratory judgment that the breaches of contract and warranty by Third-Party Defendants, and each of them, were the actual and proximate cause of any injuries and damages sustained by Plaintiff and other members of the purported Class;

C. Judgment against Third-Party Defendants compelling them to pay in full to RMG any loss or damage incurred by RMG as a result of Plaintiff's lawsuit;

| | | |
|---|---|---|
| 1 | D. | Injunctive relief enjoining Third-Party Defendant Lenahan and Third-Party Defendant EWA, their principals, agents, servants, employees, successors, and assigns, from doing any other act or making any other statements tending to, or likely to result in damage to Third-Party Plaintiff's reputation or business, and from continuation of these unfair, unlawful, and/or fraudulent business practices. |
| 6 | E. | An award to RMG for its attorneys' fees and costs for bringing the Third-Party Complaint; and |
| 8 | F. | Such other or further relief as this Court may deem just and proper. |

Dated:

DLA PIPER LLP (US)

By: _____
ERIN JANE ILLMAN
VISHALI SINGAL
Attorneys for Defendant

-16-

AMENDED THIRD-PARTY COMPLAINT
CASE NO. 5:12-CV-04759 (PSG)