**KRONENBERGER ROSENFELD, LLP**

Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Virginia A. Sanderson (Bar No. 240241)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
ginny@KRInternetLaw.com

Attorneys for Third-Party Defendants
Ryan Lenahan and Kyle Danna

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID TRINDADE**, individually and on behalf of all others similarly situated, | Case No. 5:12-cv-04759 (PSG) |
| Plaintiff, | **THIRD-PARTY DEFENDANT RYAN LENAHAN'S REPLY IN SUPPORT OF MOTION TO STRIKE CLAIMS UNDER CAL. CIV. PROC. CODE §425.16 (ANTI-SLAPP MOTION)** |
| v. | |
| **REACH MEDIA GROUP, LLC**, a Delaware limited liability company, | |
| Defendant, | |
| **REACH MEDIA GROUP, LLC**, a Delaware limited liability company, | DATE: March 12, 2013<br>TIME: 10:00 a.m.<br>CTRM: 5, 4th Floor<br>JUDGE: The Hon. Paul S. Grewal |
| Third-Party Plaintiff, | |
| v. | |
| **RYAN LENAHAN**, an individual, **KYLE DANNA**, an individual, and **EAGLE WEB ASSETS INC.**, a corporation, | |
| Third-Party Defendants. | |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES........................................................ 1

INTRODUCTION............................................................................................................. 1

BACKGROUND.............................................................................................................. 2

EVIDENTIARY OBJECTIONS......................................................................................... 3

ARGUMENT................................................................................................................... 4

    A.  The Statements are not exempt from anti-SLAPP under section 425.17(c) .... 4

    B. The Statements concern an issue of public interest where they warn other publishers about RMG's mistreatment of contractors ....................................... 7

    C. RMG has failed to demonstrate a probability of prevailing on its defamation claim where it has not shown that the Statements are false ............................ 9

    D. RMG has failed to demonstrate a probability of prevailing on its defamation claim where the Statements are non-actionable opinion ................................ 10

    E. RMG has attempted to reformulate its interference claims to avoid the anti-SLAPP motion ................................................................................................ 11

        1.  RMG's interference claims arise from the Statements ........................ 12

        2.  RMG has failed to submit evidence supporting numerous elements of its interference claims ........................................................................ 12

        3.  RMG cannot avoid anti-SLAPP by revising its interference claims ..... 14

CONCLUSION ............................................................................................................. 15

*All One God Faith, Inc. v. Organiz and Sustainable Industry Standards, Inc.,* 183 Cal. App. 4th 1186 (2010) ................................................................................. 5

*Commonwealth Energy Corp. v. Investor Data Exchange, Inc.,*
110 Cal. App. 4th 26 (2003) ..................................................................... 7

*Consumer Justice Center v. Trimedica Int'l, Inc.,* 107 Cal. App. 4th 595 (2003) ............ 8

*Du Charme v. Int'l Broth. of Elec. Workers, Local 45,* 110 Cal. App. 4th 107 (2003)....... 7

*Flores v. Emerich & Fike,* No. 1:05-cv-0291, 2006 WL 2536615 (E.D. Cal. Aug. 31, 2006).............................................................................................. 14

*Gardner v. Martino,* 563 F.3d 981 (9th Cir. 2009)......................................... 14

*Hawran v. Hixson,* 209 Cal. App. 4th 256 (2012) ....................................... 6, 9

*Hilton v. Hallmark Cards,* 599 F.3d 894 (9th Cir. 2010) .................................. 9

*Marsh v. Anesthesia Serv. Med. Group, Inc.,* 200 Cal. App. 4th 480 (2011) ................ 13

*Nagel v. Twin Laboratories, Inc.,* 109 Cal. App. 4th 39 (2003) ........................... 8

*Navarro v. IHOP Properties, Inc.,* 134 Cal. App. 4th 834 (2005) ......................... 6

*Price v. Stossel,* 590 F. Supp. 2d 1262 (C.D. Cal. 2008) ................................ 9

*Rickel v. Schwinn Bicycle Co.,* 144 Cal. App. 3d 648 (1983) ........................... 13

*Ringler Associates Inc. v. Maryland Cas. Co.,* 80 Cal. App. 4th 1165 (2000)................ 9

*Rivera v. First DataBank, Inc.,* 187 Cal. App. 4th 709 (2010)........................... 5

*Rivero v. American Federation of State, County, and Municipal Employees, AFL-CIO,*
105 Cal. App. 4th 913 (2003) .................................................................. 8

*Simpson Strong-Tie Co. v. Gore,* 49 Cal. 4th 12 (2010) ................................. 5

*Underwager v. Channel 9 Australia,* 69 F.3d 361 (9th Cir. 1995) ......................... 10

*United States v. Bennett,* 363 F.3d 947 (9th Cir. 2004) .................................. 3

*Verizon Delaware, Inc. v. Covad Communications Co.,* 377 F.3d 1081 (9th Cir. 2004) 14

*Wallace v. McCubbin,* 196 Cal. App. 4th 1169 (2011)..................................... 3

*Winchester Mystery House, LLC v. Global Asylum, Inc., 210 Cal. App. 4th 579 (2012)* 13

*Wong v. Tai Jing,* 189 Cal. App. 4th 1354 (2010)......................................... 10

## Federal Statutes and Other Authorities

CIVIL PROC. C. §425.16 ................................................................................................... *passim*

CIVIL PROC. C. §425.17(c) ............................................................................................. *passim*

CIVIL PROC. C. §426.16(e)(3) ................................................................................................. 8

FED. R. EVID. 401 ..................................................................................................................... 3

FED. R. EVID. 602 ..................................................................................................................... 3

FED. R. EVID. 802 ..................................................................................................................... 3

FED. R. EVID. 901 ..................................................................................................................... 3

FED. R. EVID.1002 .................................................................................................................... 3

1    Third-Party Defendant Ryan Lenahan ("Lenahan") respectfully submits the

2    following memorandum of points and authorities in reply to Third-Party Plaintiff Reach

3    Media Group, LLC ("RMG")'s opposition to Lenahan's motion to strike the third, fourth,

4    and fifth causes of action from RMG's Third-Party Complaint.

5                          **MEMORANDUM OF POINTS AND AUTHORITIES**

6                                          **INTRODUCTION**

7        Despite the length of RMG's opposition, and despite the volume of the Dowd

8    Declaration, RMG has produced virtually no evidence supporting its claims.  Nor has

9    RMG provided any persuasive explanation for why the statements that Lenahan posted

10   on the Facebook group (the "Statements") are not covered by the anti-SLAPP statute.

11       Despite RMG's arguments, the Statements are not commercial speech exempted

12   under Civil Procedure Code section 425.17(c).  The authority cited by RMG makes clear

13   that section 425.17(c) applies to advertisements designed to promote the sale of goods

14   or services.  By comparison, the Statements are not advertisements, but rather, are

15   warnings to other publishers to be wary of working with RMG.  Thus, RMG's defamation

16   and interference claims are subject to anti-SLAPP.

17       RMG also fails to establish a prima facie defamation claim.  While RMG argues

18   that the Statements are false, it has submitted virtually no evidence of their falsity.  To

19   wit, while RMG claims that Lenahan and Third-Party Defendant Kyle Danna ("Danna")

20   sent unlawful and unauthorized ads on behalf of RMG, it has failed to produce any

21   evidence of those ads.  In fact, RMG has not even submitted copies of the supposedly

22   non-compliant ads.  Thus, RMG has failed to substantiate its defamation claims with

23   admissible evidence, as required by the anti-SLAPP statute.

24       Similarly, RMG has submitted no evidence supporting its interference claims.

25   RMG has not identified any third party whose contract/relationship was supposedly

26   disrupted.  RMG has not submitted any contract supposedly at issue.  RMG has not

27   submitted evidence of Lenahan's knowledge of the supposed contract/relationship.  And

28   RMG has not submitted any evidence of damages.

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1    As explained in more detail below, RMG's complaint is a classic SLAPP suit,

2  designed to impose onerous litigation costs on a person who has exercised his free

3  speech rights.  Thus, the Court should strike RMG's third, fourth, and fifth causes of

4  action and award Lenahan his costs and attorneys' fees.

5                            **BACKGROUND**

6    In the opening and opposition briefs, Lenahan and RMG have provided the Court

7  with a detailed description of the facts.  Thus, Lenahan limits this section to clarifying

8  some of the misleading assertions in RMG's opposition:

9  •   Contrary to RMG's claim, nothing in RMG's contracts with Lenahan and Danna

10       prohibited them from creating and using their own advertisements.  In fact, the

11       Marketing & Distribution Agreement specifically required Lenahan to create

12       unique web generated and online acquisition campaigns.  (Declaration of Roger

13       Dowd in support of Opposition to Third Party Defendant Ryan Lenahan's Motion

14       to Strike Claims Under Cal. Civ. Proc. Code §425.16 ("Dowd Decl.") Exs. A & E.)

15  •   Contrary to RMG's claim, RMG has submitted no evidence of if and when RMG

16       sent Lenahan and Danna emails with the content of the approved Creatives.

17       (Dowd Decl. ¶12 & Ex. F.)

18  •   Contrary to RMG's claim, RMG has submitted no evidence that Lenahan or

19       Danna published unlawful or unauthorized ads.  In fact, RMG failed even to

20       submit examples of the supposedly unlawful and unauthorized ads.  (Dowd Decl.

21       *passim.*)

22  •   Contrary to RMG's claim, RMG has submitted no evidence of if and how RMG

23       sent Lenahan and Danna "special instructions" for their text message ads,

24       except in a strangely redacted email dated September 5, 2013—a month after

25       Lenahan began as a publisher with RMG.  (Dowd Decl. ¶16 & Ex. K.)

26  •   Contrary to RMG's claim, in late August 2012, Lenahan did not concede to Dowd

27       that he had sent unlawful or unauthorized text messages.  (Declaration of Ryan

28

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

Lenahan in Support of Anti-SLAPP Motion [D.E. No. 43] ("Lenahan Decl.") *passim.*)

## EVIDENTIARY OBJECTIONS

When faced with an anti-SLAPP motion, the plaintiff must produce *admissible evidence* from which a trier of fact could find in the plaintiff's favor as to every element of the plaintiff's claims. *See Wallace v. McCubbin*, 196 Cal. App. 4th 1169, 1206 (2011). Here, RMG's evidence suffers from several defects:

- Dowd Decl. ¶12 – Dowd states that RMG sent Lenahan and Danna emails with approved Creatives. However, Dowd has not produced these supposed emails. Federal Rule of Evidence 1002 states that to prove the contents of a writing, the original writing is required. Rule 1002 applies where a witness seeks to testify about the contents of a writing without producing the writing itself. *United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004) (finding that customs officers' testimony about GPS display data was barred by best evidence rule because the data was a writing).

- Dowd Decl. ¶16 & Exhibit K – Dowd states that he provided Lenahan and Danna "special instructions," and he attaches a screenshot of these instructions. However, Dowd has failed to explain who drafted these special instructions, how Dowd obtained them, and when, how, or if they were communicated to Lenahan and Danna. Thus, Dowd has failed to authenticate Exhibit K in violation of Federal Rules of Evidence 602 and 901.

- Dowd Decl. ¶¶18-19, 25 & Exs. M-N – Dowd states that after July 21, 2012 he began receiving complaints about unsolicited text messages. These paragraphs and exhibits are irrelevant under Federal Rule of Evidence 401 because there is no apparent connection between the complaints and Lenahan or Danna—*i.e.* Dowd has submitted to evidence that Lenahan or Danna sent the complained-about ads.

//

- Dowd Decl. ¶39 – Dowd describes supposed statements made by third parties, which were conveyed to employees of RMG, which were then conveyed to Dowd. Dowd does not identify the speaker(s) of these statements or provide any detail about what these statements were about. Regardless, Dowd's description of these statements is impermissible hearsay, barred by Federal Rule of Evidence 802.

## ARGUMENT

RMG makes several creative arguments to avoid the simple fact that it has brought a SLAPP suit. RMG's arguments fail. First, while RMG argues that the Statements are exempt from anti-SLAPP under the commercial speech exception, RMG's own authority shows that this exception is limited to advertisements; it does not apply to warnings to other potential victims of RMG's misconduct. Second, while RMG argues that it has established a prima facie claim for defamation, it has not shown that the Statements are false. To wit, RMG has submitted no evidence that Lenahan or Danna circulated unlawful or unauthorized ads. Finally, RMG all but admits that it has no evidence supporting its interference claims. Instead, RMG seeks to amend its interference claims so as to remove them from the ambit of anti-SLAPP. For all of these reasons, the Court should strike RMG's third, fourth, and fifth claims.

**A. The Statements are not exempt from anti-SLAPP under section 425.17(c).**

RMG argues that the Statements are exempt from anti-SLAPP under the commercial speech exemption of section 425.17(c). This argument fails because the Statements are not about the goods or services of Lenahan or a competitor of Lenahan; rather they are complaints designed to warn other publishers about RMG's treatment of its publishers.

Section 425.17 provides a "commercial speech" exception to the anti-SLAPP statute where:

a) The cause of action is against a defendant primarily engaged in the business of selling or leasing goods or services;

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

b) The cause of action arises from a statement by the defendant about the defendant's or a business competitor's business operations, goods, or services;

c) The statement was made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the defendant's goods or services or in the course of delivering the defendant's goods or services; and

d) The intended audience of the statement is an actual or potential customer of the defendant's goods or services, or a person likely to repeat the statement to an actual or potential customer.  *See Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 30 (2010).

The commercial speech exemption should be construed narrowly, and the plaintiff has the burden of demonstrating that the exemption applies.  *See Rivera v. First DataBank, Inc.*, 187 Cal. App. 4th 709, 717 (2010).

California courts have emphasized that not all commercial speech is exempt under section 425.17.  *See All One God Faith, Inc. v. Organiz and Sustainable Industry Standards, Inc.*, 183 Cal. App. 4th 1186, 1217 (2010).  Specifically, where the speech at issue does not attack a competitor's goods or services, but rather complains about another's separate business conduct, courts have not applied section 425.17(c).  The following cases reflect this limitation:

- *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12 (2010):  A screw manufacturer brought a lawsuit against an attorney for defamation based on the attorney's newspaper ad stating that owners of decks built with the screws might have legal rights against the manufacturer.  *See id.* at 17-19.  The attorney filed an anti-SLAPP motion, and the manufacturer argued that anti-SLAPP did not apply under the commercial speech exemption.  *See id.* at 20.  The court rejected the manufacturer's argument, finding that even if the statements at issue falsely implied that the screws were defective, the statements were not about the attorney's goods or services or those of a competitor.  *See id.* at 30-33.

- *Hawran v. Hixson*, 209 Cal. App. 4th 256 (2012): A corporation's former CFO brought a lawsuit against the corporation and three of its directors for defamation. *See id.* at 264. The CFO alleged that the corporation's press release had falsely stated that the corporation had obtained the CFO's resignation after implicating the CFO's involvement in mishandled research. *See id.* at 264. The corporation filed an anti-SLAPP motion, and the CFO argued that the press release was commercial speech exempted under section 425.17. *See id.* at 265-66. The court rejected the CFO's argument, finding that even though the press release broadly concerned the corporation's business decisions, the allegedly defamatory statements did not concern the corporation's business operations, goods, or services. *See id.* at 272-73.

- *Navarro v. IHOP Properties, Inc.*, 134 Cal. App. 4th 834 (2005): A franchisee brought a lawsuit against IHOP, alleging that IHOP had made false promises that it would quickly process potential buyers of the franchisee's franchise rights. *See id.* at 838. IHOP filed an anti-SLAPP motion and the franchisee argued that anti-SLAPP did not apply under the commercial speech exemption. *See id.* The court rejected the franchisee's argument, finding that IHOP's allegedly false promises did not qualify as representations of fact about the franchisee's or a competitor's business operations, goods, or services; rather the promises were part of a dispute resolution process. *See id.* at 840-41.

The situation here parallels the above-cited cases, and thus section 425.17(c) does not apply for several reasons. First, Lenahan and RMG are not competitors—thus RMG's goods and services are not relevant to the inquiry. Second, the Statements are not about Lenahan's goods or services. Rather the Statements concern disputes about unpaid invoices submitted to RMG. Third, the Statements were not made to obtain approval for, to promote, or to secure the sale of Lenahan's goods or services. Rather, the Statements were made to inform other publishers about RMG's practice of not paying its publishers. Fourth, the intended audience of the Statements was not actual or

potential customers of Lenahan's goods or services. Rather, the intended audience was other publishers who might consider working with RMG. In summary, the Statements were not designed to encourage consumers to purchase Lenahan's services or to discourage consumers from purchasing the goods or services of a competitor. Rather, the Statements were designed to warn similarly-situated publishers about working with RMG.

For all of these reasons, the Statements do not satisfy the four requirements of section 425.17(c), and are thus subject to anti-SLAPP protection.

## B. The Statements concern an issue of public interest where they warn other publishers about RMG's mistreatment of contractors.

As discussed in Lenahan's opening brief, the anti-SLAPP statute's public interest requirement is not limited to topics of general interest to the public at large. Rather, the public interest requirement also covers matters of interest to a specific group, where the speech occurs in the context of an ongoing dispute or discussion. *See Du Charme v. Int'l Broth. of Elec. Workers, Local 45*, 110 Cal. App. 4th 107, 119 (2003). Here, the Statements were posted in a public forum dedicated to issues of interest to a specific group—*i.e.* Internet publishers—and viewed by thousands of subscribers. Because the Statements address the core subject of this public forum (*i.e.* advertisers that do not pay their publishers), the Statements pertain to an issue of public concern.

In its opposition, RMG argues that "statements about a particular business are not matters that concern a public issue or matter of public interest within the meaning of California's anti-SLAPP statute." (Opp. at 15:12-13.) RMG's argument is overly-simplistic, and its authority is readily distinguishable from this case, as discussed below.

- *Commonwealth Energy Corp. v. Investor Data Exchange, Inc.*, 110 Cal. App. 4th 26, 33-34 (2003): The court addressed whether anti-SLAPP applied to sales-pitch telephone calls made to "a small group of presumably sophisticated investors who had, by definition, already invested in one specific firm." By comparison, the Statements here were made in a public forum viewed by

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

thousands of people, and were about the core subject of the forum—*i.e.* advertisers that do not pay their publishers.

- *Rivero v. American Federation of State, County, and Municipal Employees, AFL-CIO*, 105 Cal. App. 4th 913, 926 (2003): The court addressed whether statements about a janitor supervisor, made by three of the eight janitors he supervised, where made in connection with an issue of public concern. By comparison, the Statements were made in a public forum, subscribed to by thousands of members who are interested in learning about issues like the ones raised in the Statements.

- *Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 47-48 (2003): The court addressed whether the list of ingredients on a nutritional supplement was speech in connection with a matter of public interest, where the labeling was designed to further the manufacturer's private interest of increasing sales. By comparison, the Statements are not a rote list of ingredients designed to increase sales. Rather, the Statements are designed to warn other publishers about RMG.

- *Consumer Justice Center v. Trimedica Int'l, Inc.*, 107 Cal. App. 4th 595, 600-01 (2003): The court addressed a specific advertisement by an herbal supplement manufacturer that claimed its supplement increased a woman's breast size. By comparison, the Statements were not advertisements designed to increase sales. Rather the Statements warned other publishers to be wary of working with RMG.

As RMG's own authority shows, where a statement interests a large number of people about an ongoing dispute, and where the statement is more than an advertisement promoting a good or service, that statement concerns an issue of public interest. These criteria apply here. Because the Statements were designed to warn thousands of publishers about an unscrupulous network, the Statements are covered by the anti-SLAPP statute. *See* Civil Proc. C. §426.16(e)(3).

//

//

## C. RMG has failed to demonstrate a probability of prevailing on its defamation claim where it has not shown that the Statements are false.

As explained in Lenahan's opening brief, truth is a complete defense to a defamation claim. *Hawran v. Hixson*, 209 Cal. App. 4th 256, 293 (2012). Moreover, a defendant need not justify the literal truth of every word of the allegedly defamatory matter. *Ringler Associates Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1180-81 (2000). It is sufficient if the defendant shows that the substance of the statement is true, regardless of slight inaccuracies in the details, so long as the imputation is substantially true. *See id.*

As explained in Lenahan's opening brief, the Statements are true. To wit, all of the following facts are true: a) Dowd approved Lenahan's ads, b) RMG owed Lenahan $13,000 for leads generated from these ads, c) Dowd then claimed that Lenahan had used unapproved ads, and d) Dowd tried to reverse a wire to Danna, claiming that Danna had also used unapproved ads.

RMG argues that these Statements are false because both Lenahan and Danna "sent text message advertisements that did not comply with RMG's Creatives," and thus RMG had a right to withhold/reverse payments. (Opp. at 21:27-28.) However, RMG has not submitted any evidence that Lenahan or Danna sent any unlawful or unauthorized ads. In fact, RMG did not even submit examples of the supposedly non-compliant ads. While RMG states that it received complaints about certain ads, it in no way connects those ads to Lenahan or Danna. (Dowd Decl. ¶¶18-19, 25 & Exs. M-N.) Moreover, even if Lenahan and Danna had sent ads that did not consist of RMG's Creatives, there was no requirement that they only use RMG's Creatives in circulating ads. (Dowd Decl. Exs. A & E.) RMG even takes the bizarre position that "[n]o extrinsic evidence is necessary to reach this implication" that the Statements are false statements of fact. (Opp. at 21:10.)

As a reminder, it is RMG's burden to demonstrate a probability of prevailing on its claims with competent and admissible evidence. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010); *Price v. Stossel*, 590 F. Supp. 2d 1262, 1266 (C.D. Cal. 2008). RMG has failed to show that the Statements are false.

**D. RMG has failed to demonstrate a probability of prevailing on its defamation claim where the Statements are non-actionable opinion.**

As explained in Lenahan's opening brief, the Statements cannot serve as a basis for a defamation claim for the additional reason that they comprise non-actionable opinion. Statements of opinion are constitutionally protected. *See Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1370 (2010). The critical question is whether a reasonable fact finder could conclude that the statement declares or implies a provably false assertion of fact. *See id.* In the context of online message boards, courts in the Ninth Circuit have found that viewers are far more likely to treat heated discussion and hyperbole as opinions.

Here, RMG concedes that the Statements were posted on an Internet message board as part of a heated debate. Thus, under the Ninth Circuit's three part inquiry, two of the relevant factors (*i.e.* the broad and narrow context) strongly suggest that a reasonable viewer would understand the Statements as Lenahan's opinions. *See Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995) (setting forth three-factor inquiry for analyzing statements of opinion).

The final factor of the *Underwager* test asks whether the Statements themselves are sufficiently factual to be susceptible of being proved true or false. RMG identifies three supposedly false factual components of the Statements. However, each of these components would readily be perceived as Lenahan's opinion:

- RMG argues that the following statement is capable of being proved true or false: " . . . he told me to use his exact word for word message on my marketing materials or else risk non payment, which I did under threat and now hes claiming its uanapproved BS story." Specifically, RMG argues that the terms "threat" and "BS story" are provable statements of fact. (Opp. at 21:5.) Contrary to RMG's argument, these terms are indistinct and colorful expressions used to communicate the author's perception of events. They are not capable of being proved true or false.

- RMG argues that the following statement is capable of being proved true or false:

"Roger Dowd from Reach Media group owes me $13,000 . . ." (Opp. at 21:6-7.) This statement is clearly an opinion where the parties themselves cannot agree on whether RMG owes Lenahan these funds. Thus, any reasonable viewer of the Statement, made in the context of a debate in an online forum, would also understand this statement as Lenahan's opinion.

- RMG argues that the following statements are capable of being proved true or false: Dowd "contacted the bank and pretended the wire they sent was fraud in attempts to get it reversed," but Danna "got the bank to realize it was a BS story." (Opp. at 21:12-13.) As discussed above, the term "BS story" is an indistinct and colorful term used to express the author's perception of events. Regarding the reversal of the wire, RMG concedes that Dowd sought to effect this reversal. (Dowd Decl. ¶33.) Whether this reversal attempt was "fraudulent" is clearly an opinion where the parties themselves dispute whether RMG owed Danna these funds. Any reasonable viewer of the Statement, made in the context of a debate in an online forum, would also understand this statement as Lenahan's perception of the events at issue.

As discussed above, the broad and narrow contexts of the Statements strongly indicate that a reasonable viewer would understand the Statements as opinions. Moreover, when one deconstructs the actual Statements, it is clear that they consist of indistinct and colorful language, like the terms "BS" and "threat," which no reasonable person would understand as communicating a provably false statement. Because the Statements constitute opinions, RMG has failed to satisfy its burden of showing that the Statements are defamatory. Thus, the Court should strike RMG's defamation claim.

## E. RMG has attempted to reformulate its interference claims to avoid the anti-SLAPP motion.

In its opposition, RMG attempts to reformulate its tortious interference claims to remove them from the ambit of anti-SLAPP. Not only is RMG's reformulation contradicted by the language of the complaint, it is precisely the sort of revisionist

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

conduct that the anti-SLAPP statute seeks to prevent—*i.e.* bringing an onerous lawsuit attacking Lenahan's First Amendment rights, only to try to revise it when the claims' facial deficiencies are raised to the Court.

### 1. RMG's interference claims arise from the Statements.

In its opposition, RMG argues that its interference claims do not arise from the Statements, and therefore, the interference claims are not subject to anti-SLAPP. (Opp. at 23:8-24:2.) However, RMG's complaint shows just the opposite: that RMG's interference claims arise directly from the Statements. Specifically, RMG's interference claims state:

- "When Lenahan published on a Facebook public group page false, unprivileged information about Dowd and RMG . . . Lenahan committed libel."

- "Not only was it reasonably foreseeable that Lenahan's libelous conduct would interfere or disrupt these contractual relations, but Lenahan's wrongful conduct was intended and designed to interfere with RMG's contractual relations [and prospective economic advantage]." (TPC ¶¶48-49, 54-55.)

Moreover, RMG alleges little else in its interference claims. Thus, RMG cannot argue that its interference claims arise from something other than the Statements.

### 2. RMG has failed to submit evidence supporting numerous elements of its interference claims.

While RMG has alleged claims for intentional interference with a contract and intentional interference with prospective economic advantage, RMG has not submitted any evidence supporting nearly every element of these claims:

With respect to RMG's claim for intentional interference with a contract:

- RMG has not submitted any evidence of a contract between RMG and a third party. In fact, RMG has not even identified the third party supposedly at issue or submitted any contract.

- RMG has not submitted any evidence that Lenahan knew about the supposed contract between RMG and a third party.

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1     •   RMG has not submitted any evidence of an actual breach or disruption of the

2         supposed contract between RMG and a third party.

3     •   RMG has not submitted any evidence of any damages flowing from the

4         supposed breach of a contract between RMG and a third party. *See*

5         *Winchester Mystery House, LLC v. Global Asylum, Inc.*, 210 Cal. App. 4th

6         579, 596 (2012) (setting forth elements of claim).

7        With respect to RMG's claim for intentional interference with prospective economic

8  advantage:

9     •   RMG has not submitted any evidence of an economic relationship between RMG

10        and a third party with the probability of future economic benefit to RMG.  In fact,

11        RMG has not even identified the third party supposedly at issue.

12     •   RMG has not submitted any evidence that Lenahan knew about RMG's

13        relationship with this supposed third party.

14     •   RMG has not submitted any evidence that RMG's relationship was actually

15        disrupted by the intentional and wrongful conduct of Lenahan.

16     •   RMG has not submitted any evidence that RMG was somehow damaged by this

17        supposed disruption.  See *Marsh v. Anesthesia Serv. Med. Group, Inc.*, 200 Cal.

18        App. 4th 480, 504 (2011) (setting forth elements of claim).

19        The only evidence that RMG offers to support either of these claims is Paragraph

20  39 of the Dowd Declaration.  However, this Paragraph contains only the vaguest

21  allusions to some hypothetical interference.  As an initial matter, Paragraph 39 is

22  inadmissible as impermissible hearsay and should not be considered at all. *See supra*

23  Evidentiary Objections; *see also Rickel v. Schwinn Bicycle Co.*, 144 Cal. App. 3d 648,

24  662 (1983) (affirming summary judgment to defendant in interference case where plaintiff

25  only submitted hearsay evidence of interference).

26        Even if Paragraph 39 were admissible—and it is not—the paragraph does not

27  come close to establishing a prima facie claim for interference.  To wit, Paragraph 39

28  does not identify any third party, it does not identify RMG's relationship with any third

party, it does not attach any contract between RMG and any third party, it does not describe the expectation of RMG's prospective economic benefit from working with the third party, and it does not describe how RMG's relationship with that third party was damaged as a result of Lenahan's conduct.  It is hard to imagine a vaguer and more deficient evidentiary submission.

Thus, the Court should strike both of RMG's interference claims under section 425.16.

### 3.    RMG cannot avoid anti-SLAPP by revising its interference claims.

RMG recognizes that its interference claims are facially deficient.  Thus, RMG has submitted a proposed amended complaint that seeks to modify the interference claims to remove them from the ambit of anti-SLAPP.  (Singal Decl. *passim.*)  This device fails.

Allowing a plaintiff to amend its complaint after an anti-SLAPP motion has been granted eviscerates the purpose of the anti-SLAPP statute.  *See Flores v. Emerich & Fike*, No. 1:05-cv-0291, 2006 WL 2536615, *10 (E.D. Cal. Aug. 31, 2006); *see also Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009) (finding that application of similar Oregon anti-SLAPP law, requiring dismissal of claims without leave, did not "directly collide" with the Federal Rules); *but see Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (stating that leave to amend should be granted when striking claims under anti-SLAPP).

While *Verizon* indicates that RMG should be granted leave to fix deficiencies in its SLAPP claims, RMG should not be permitted simply to replace the SLAPP claims altogether with claims not covered by the statute without adverse consequence—.*e.g* without paying Lenahan's costs and fees.  Permitting RMG to do so would frustrate the purpose of the anti-SLAPP statute.

//

//

//

//

**CONCLUSION**

For the all of the reasons set forth above, in addition to those stated in Lenahan's moving papers, Lenahan respectfully requests that the Court: a) strike Counts Three, Four, and Five from RMG's Third-Party Complaint, and b) award Lenahan the costs and fees he incurred in bringing this motion.

Respectfully submitted,

DATED:  February 8, 2013                    KRONENBERGER ROSENFELD, LLP


                                            By:   s/Jeffrey M. Rosenfeld
                                                  Jeffrey M. Rosenfeld

                                            Attorneys for Third-Party Defendants Ryan
                                            Lenahan and Kyle Danna