1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DAVID TRINDADE,

              Plaintiff,

    v.

REACH MEDIA GROUP, LLC,

            Defendant.

Case No.: 12-CV-4759-PSG

**ORDER DENYING THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND GRANTING-IN-PART MOTION TO DISMISS**

**(Re: Docket Nos. 38, 41)**

Third-party defendants Ryan Lenahan ("Lenahan") and Kyle Dana ("Danna"), brought into this action by Defendant Reach Media Group, LLC ("RMG"), move to strike RMG's claims as violations of California's anti-SLAPP statute. They alternatively move to dismiss RMG's claims as legally insufficient, and Danna individually moves to dismiss on the separate grounds of lack of personal jurisdiction. Having reviewed the parties' papers and considered their arguments, the court GRANTS Danna's request to dismiss on personal jurisdiction grounds, DENIES the anti-SLAPP motion, and GRANTS-IN-PART the motion to dismiss.

## I.     BACKGROUND

This case arises out of a putative class action brought by Plaintiff David Trindade ("Trindade") against RMG.[1] In the underlying case, Trindade alleges that RMG violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by sending non-consensual ad

---

[1] *See* Docket No 1, 22.

1

messages to class members.[2] Because the court determines below that the anti-SLAPP motion must be denied because Lenahan fails to establish that his speech is protected by the anti-SLAPP law, it draws the facts of the case from RMG's complaint as is customary with motions to dismiss rather than under the heightened standard necessary under the second stage of the special motion to strike.[3]

RMG is a performance-based publisher network that provides advertisers with avenues for marketing their services.[4]  As part of its business model, RMG "frequently enters into agreements with third party publishers for the publication of advertisements."[5]  To work with RMG, publishers must submit an application to RMG's website and thereby agree to its terms and conditions.[6]  The terms and conditions – which RMG labels the "agreement" – govern the relationship established.[7]

Around August 9, 2012, Lenahan submitted an application to join RMG's publisher network,[8] and Danna followed suit on or around September 4, 2012.[9]  By submitting these applications, Lenahan and Danna each accepted the terms of the agreement, which allowed them to send pre-approved advertisements on RMG's behalf.[10]     Lenahan's agreement contained an

---

[2] *See* Docket No 1.

[3] *See Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 841 (9th Cir. 2001) ("Once it is determined that an act in furtherance of protected expression is being challenged, the plaintiff must show a reasonable probability of prevailing in its claims for those claims to survive dismissal.  To do this, the plaintiff must demonstrate that the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.  This burden is much like that used in determining a motion for nonsuit or directed verdict, which mandates dismissal when no reasonable jury could find for the plaintiff.").

[4] *See id.* at ¶ 1.

[5] *Id.* at ¶ 3.

[6] *See id.*

[7] *See id.* at ¶ 5.

[8] *See id.* at ¶ 17.

[9] *See id.* at ¶ 18.

**United States District Court**
For the Northern District of California

"insertion order" detailing the eight different advertising campaigns for which Lenahan was approved:[11]  Auto Loans Professional, Cash Advance Diamond, Central Payday Advance, Honest Cash Advance, Instant Cash Express, Mobile Cash Source, and Second Chance Cash Advance.[12] Danna was approved for the campaign Homeland Cash Advance.[13]

Pursuant to their respective agreements, Lenahan and Danna warranted that the email recipients of the campaigns had previously opted-in to receiving the ads, that the email addresses were not fraudulently obtained, that they would not alter the site tags accompanying the ads, and that they would comply with all applicable laws.[14] The agreement also prohibited altering the content of the text messages – which RMG labels "creative" – without RMG's express written approval and provided for indemnification for any breach of the representation or warranty provision in the contract.[15]

On or after July 21, 2012, RMG started receiving complaints from consumers that did not expressly consent to receiving ads that were texted to them.[16]  RMG alleges that these ads were sent by Lenahan in violation of the agreement.[17]  In response to the complaints, RMG's Chief Executive Officer Roger Dowd ("Dowd") spoke with Lenahan and demanded that he stop sending non-compliant and unlawful messages on RMG's behalf and requested "Opt-In" information used by Lehanan to ensure compliance with the insertion order terms.[18]  Dowd also apparently told

---

[10] *See id.* at ¶ 4.

[11] *See id.* at ¶ 17.

[12] *See id.*

[13] *See id.*

[14] *See id* at ¶ 19.

[15] *See id.* at ¶ 11.

[16] *See id.* at ¶ 21.

[17] *See id.* at ¶ 22.

[18] *See id.*

3

United States District Court
For the Northern District of California

Lenahan to ensure his texts complied with the CAN-SPAM Act of 2003, 15 U.S.C. § 7701, and with "best practices with regard to publication of advertisements."[19]

Lenahan never provided Dowd with this information and failed to certify that he was in compliance with the CAN-SPAM Act.[20]  On August 26, 2012 Dowd suspended Lenahan's account.[21]  On September 11, 2012, Dowd also suspended Danna after EWA learned that Danna had sent text messages that did not comply with his agreement.[22]

On September 12, 2012, RMG was served with a class-action complaint filed by Trindade alleging that RMG had violated the TCPA by sending or having sent on its behalf unsolicited text messages to Trindade and purported class members' cell phones.[23] Trindade alleges the following messages were sent containing websites that led to RMG owned or operated sites.

> Lenders offering $1,500 cash loans deposited within 2hrs. NO credit checks! Get money today by applying right now directly on your phone at www.TwoHourCash.com
>
> Chase is offering $1500 cash loans deposited within 2hrs. NO credit checks! Get the money today by applying right now directly on your phone at Cashin2Hrs.com
>
> Chase is offering $1500 cash loans deposited within 2hrs. NO credit checks! Get the money today by applying right now on your phone at www.TwoHourCash.org
>
> Chase is offering $1500 cash loans deposited within 2hrs. NO credit checks or faxing! Get the money today by applying right now on your phone at TwoHourCash.net
>
> Chase is offering $1,500 cash loans deposited within 2hrs. NO credit checks! Get the money today by applying right now on your phone at www.TwoHourCash.org.
>
> Wells Fargo: Get up to $1500 deposited into your account today. Not a scam & bad credit ok. Apply from your phone at bit.ly/NmCROO now. Instant approval[24]

---

[19] *Id.*

[20] *See id* at ¶ 23.

[21] *See id.*

[22] *See id.* at ¶ 25.

[23] *See* Docket No. 1.

[24] *See id.*

In its answer to Trindade's complaint, RMG denies that it "repeatedly made or directed to be made on its behalf unsolicited text message calls" to Trindade's or any other putative class member's phone.[25]

RMG refused to pay Lenahan because the ads he published were non-compliant with the guidelines RMG provided in its agreement with him.[26] On September 28, 2012, Lenahan posted the following comments to a public Facebook page created to warn fellow publishers about non-paying clients:

> Roger Dowd from Reach Media group owes me $13,000 and forcing me to hire Harrison Gevirtz to take them to court. I'm also aware that they owe another network $xx,xxx in addition to another affiliate they owe $xx,xxx. Roger claims we were using "unapproved" sms content however I have countless emails, skype transcripts ... etc where he told me to use his exact word for word message on my marketing materials or else risk non payment, which I did under threat and now hes claiming its unapproved BS story.

> Roger Dowd sent a 14k wire to my partner whom was using the very same sms content, then 3 days later contacted the bank and pretended the wire they sent was fraud in attempts to get it reversed. Luckily a signed IO, invoice, emails, transcripts ... etc got the bank to realize it was a BS story and stopped the fraudulent reversal.[27]

According to RMG, Lenahan was aware that the substance of his statements was false.[28]  RMG's counsel sent a cease-and-desist letter to Lenahan by email and FedEx demanding that he refrain from engaging in further unlawful conduct directed at RMG and Dowd and requesting a written confirmation of receipt of the letter.[29] A written confirmation was never received and on November 4, 2012 Lenahan posted another Facebook message stating "Just an update, over 3 months have passed and have still not seen a dime."[30]  RMG claims that as a result of these postings, its

---

[25] Docket No. 17 at ¶ 2.

[26] *See* Docket No. 22 at ¶ 28.

[27] *Id.*

[28] *See id.* at ¶ 29.

[29] *See id.* at ¶ 33.

[30] *Id.*

**United States District Court**
For the Northern District of California

reputation in the affiliate networking industry has been severely damaged.[31]  RMG additionally asserts that one of its largest clients saw the Facebook post and now requires prepayment or a personal guarantee as a condition to participating in campaigns with them.[32]

RMG seeks indemnification for any damages or losses resulting from the class-action suit and asserts additional claims of breach of contract, breach of warranty, libel per se, tortious interference with contractual relations, and tortious interference with prospective economic advantage for its damages resulting from Lenahan's Facebook post and Lenahan's, Danna's, and EWA's noncompliance with the publisher agreements.

Lenahan and Danna move to dismiss the claims brought by RMG on the grounds that RMG's impleader is improper and alternatively that RMG failed to state claims as required by Fed. R. Civ. P. 12(b)(6). Danna individually moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Lenahan separately requests that the court strike RMG's libel per se, tortious interference with contractual relations, and tortious interference with prospective economic advantage claims because they are SLAPP claims designed to interfere with his exercise of constitutionally protected speech.

## II.  LEGAL STANDARDS

### A.  Impleader

Fed. R. Civ. P. 14(a)(1) provides that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  "[A] third-party claim may be asserted only when the third party's liability is in some

---

[31] *See id.* at ¶ 33.

[32] *See id.*

way dependent on the outcome of the main claim and is secondary or derivative thereto."[33]  "The crucial characteristic of a Rule 14 claim is that [the] defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff" and so "[t]he mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough."[34]

## B.     Anti-SLAPP Motion to Strike

California law provides a special motion to strike for "strategic lawsuits against public participation," or "SLAPPs."[35]  Aimed at protecting "the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances,"[36] the anti-SLAPP statute permits striking causes of action "against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue" unless "the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."[37]  Although ostensibly a state law procedural action and recently subject to criticism for its application in federal courts,[38] the anti-SLAPP motion to strike remains a viable mechanism for defendants in this court.[39]

"To prevail on an anti-SLAPP motion, the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional

---

[33] *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199 (9th Cir. 1988); *see also Great Am. Ins. Co. v. Chang*, Case No. 12-00833-SC, 2013 WL 183976, at *2 (N.D. Cal. Jan. 17, 2013).

[34] *Stewart*, 845 F.2d at 200 (quoting 6 Fed. Prac. & Proc. § 1446 at 257 (1971 ed.)).

[35] *See* Cal. Civ. P. Code § 425.16.

[36] *Id.* § 425.16(a).

[37] *Id.* § 425.16(b)(1).

[38] *See Makaeff, LLC*, 715 F.3d at 273 (Kozinski, C.J., concurring) (arguing that the anti-SLAPP motion is more appropriately considered a "procedural mechanism" that should not be applicable in federal courts).

[39] *See id.* at 261 (applying the anti-SLAPP statute to case for defamation in brought in federal court); *see also Batzel v. Smith*, 333 F.3d 1018, 1023 (9th Cir. 2003).

**United States District Court**
For the Northern District of California

right to free speech."[40] "The burden then shifts to the plaintiff . . . to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal."[41] A claim should be dismissed "if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, no reasonable jury could find for the plaintiff."[42]

In considering an anti-SLAPP motion to strike, the court "shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."[43] An "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."[44]

## C.    Motion to Dismiss

A complaint may be dismissed under Rule 12(b)(6) "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."[45] The court must generally accept as true all "well-pleaded factual allegations,"[46] and must construe the alleged facts in the light most favorable to the plaintiff.[47] But any factual allegations "must be enough to raise a

---

[40] *Id.*

[41] *Id.*

[42] *Id.* (internal quotations omitted).

[43] Cal. Civ. Code § 425.16(b)(2).

[44] *Id.* § 425.16(e).

[45] *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

[46] *Ashcroft v. Iqbal*, 566 U.S. 662, 664 (2009).

[47] *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988).

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

right to relief above the speculative level" such that the claim "is plausible on its face."[48]  Thus, a complaint should only be dismissed where it "appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[49]

Leave to amend shall be freely given when justice so requires.[50]  But a motion for leave to amend may be denied if it would be futile or legally insufficient.[51]  A proposed amendment is futile if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.[52]

### III.   DISCUSSION

### A.   Improper Impleader

Lenahan and Danna first assert that RMG improperly impleaded them into this case because RMG's actions against Lenahan and Danna do not involve shifting responsibility to them for the claims Trindade brings against RMG.  They argue that RMG instead is improperly attempting to use Rule 14 to address within the context of Trindade's action a separate business dispute they have with RMG.  RMG responds that it has alleged that Lenahan and Danna were responsible for the texts that Trindade accuses RMG of sending unlawfully, and because of the indemnification clause in the contract between RMG and Lenahan and Danna, RMG has properly impleaded them.

In its complaint, RMG claims that Lenahan and Danna "applied on RMG's website to join RMG's publisher network," and by doing so "agreed to [RMG's] Terms and Conditions" and "Insertion Orders [that] specified the advertising campaigns for which they would publish

---

[48] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).

[49] *Clegg v. Cult of Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).

[50] Fed R. Civ. P. 15(a).

[51] *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

[52] *See id.*

advertisements specified by RMG."[53]   The agreements that Lenahan and Danna entered, RMG

further alleges, "prohibited editing to RMG's [c]reative[54] without the prior written consent of

RMG, and explained that any violation of this requirement would result in the loss of payment per

leads."[55]

The agreement that RMG attached to its complaint, and into which it alleges it entered with

Lenahan and Danna,[56] provides that:

> Each party agrees to indemnify, defend and hold harmless the other party and its
> employees, agents, officers and directors, against any and all claims, causes of actions,
> judgments, demands, damages, losses or liabilities, including costs and expenses (including
> reasonable attorneys fees and costs of suit), arising out of or relating to (a) any claim based
> upon infringement of copyright, trademark, patent, or trade secret or other intellectual
> property right of any third party; (b) any claim, representation, or statement made in the
> Advertisement; (c) any breach of any representation or warranty contained in this
> Agreement.[57]

The attached agreement also includes a "Representations and Warranties" provision:

> Publisher represents and warrants that: (1) the recipients of all email addresses used by
> PUBLISHER in connection with this Agreement have manifested affirmative consent to
> receive commercial emails from PUBLISHER and none of the email addresses were
> obtained through email harvesting or dictionary attacks; (2) PUBLISHER will not
> fraudulently add leads or clicks or inflate leads or clicks by fraudulent traffic generation (as
> determined solely by Reach Media Group, such as pre-population of forms or mechanisms
> not approved by Reach Media Group); (3) PUBLISHER will not attempt in any way to
> alter, modify, eliminate, conceal, or otherwise render inoperable or ineffective the Group
> that allows Reach Media Group to measure ad performance and provide its devices and (4)
> all of PUBLISHER's efforts associated with this Agreement comply with the laws of the
> United States, and any other laws of any other jurisdictions which are applicable to
> PUBLISHER.  PUBLISHER will not engage in or promote any illegal activities of any kind
> in association with this Agreement.[58]

---

[53] Docket No. 22 ¶ 4.

[54] As noted above, RMG uses the term "creative" to describe the content of the advertisements
provided to publishers.  *See* Docket No. 22 at ¶ 5.

[55] *Id.* ¶ 5.

[56] *Id.* ¶ 8.

[57] *Id.* Ex. A ¶ 16.

[58] *Id.* Ex. A ¶ 11.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

According to RMG, Lenahan and Danna "independently breached their warranties to RMG by sending text messages to cellular phone numbers without the prior express consent of the called parties, in violation of federal law."[59]   RMG further claims that "[t]o the extent [Trindade] and members of the purported Class have suffered any damage as a result of these text messages, each of the [t]hird-[p]arty [d]efendants' conduct solely, actually and proximately caused those damages."[60]

"Because Rule 14(a) is procedural, and creates no substantive remedies," RMG is obligated to "demonstrate an existing right of action against" Lenahan and Danna.[61]   On the basis of their breach of the agreement, RMG has alleged sufficient facts to support its impleader of Lenahan and Danna to this case.   RMG asserts that Lenahan and Danna sent text messages without the recipient's consent, that the transmission of those texts violated the representations and warranties provision, and that the breach triggered the indemnification clause of the agreement.   RMG seeks a declaratory judgment that Lenahan and Danna breached the agreement and therefore are liable to RMG for any damages RMG must pay to Trindade and the putative class for that breach.   RMG's claims, at least on their face, reflect its attempt to shift liability from the underlying class action to Lenahan and Danna because of their breach.   That attempt is the essence of an impleader action.

Pursuant to Fed. R. Civ. P. 18(a), RMG properly may join its other claims for libel per se, tortious interference with contractual relations, and tortious interference with prospective economic advantage.   Rule 18 provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."   And so, although "Claim A against Defendant 1 should not be joined with

---

[59] *Id.* ¶ 36.

[60] *Id.* ¶ 37.

[61] *Miller v. Security Life of Denver Ins. Co.*, Case No. C 11-1175 PJH, 2012 WL 1029279, at *2 (N.D. Cal. Mar. 26, 2012).

United States District Court
For the Northern District of California

unrelated Claim B against Defendant 2," "multiple claims against a single party are fine."[62]

RMG's proper impleader of Lenahan and Danna thus permits the inclusion of other, unrelated

claims.

## B.    Personal Jurisdiction over Danna

The court turns now to the second threshold issue that Danna raises, which is that the court

does not have personal jurisdiction over him for this case.  According to the complaint, Danna is "a

natural person and resident of the State of Louisiana."[63]  Danna argues that the complaint fails to

allege any facts that suggest that he has consented to personal jurisdiction with this forum or that

he has sufficient contacts to establish either general or specific jurisdiction over him.  In support of

his argument, Danna submits a declaration stating that he lives and works in Louisiana and does

not own property in California.[64]  RMG in response does not dispute Danna's arguments that its

complaint is insufficient regarding personal jurisdiction over Danna but rather argues for limited

discovery to firm up its allegations.

Pursuant to Fed. R. Civ. P. 12(b)(2), the court can dismiss an action for lack of personal

jurisdiction.  "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the

plaintiff bears the burden of establishing that jurisdiction is proper."[65]  If no federal statute

authorizes personal jurisdiction, "the district court applies the law of the state in which the court

sits."[66]  "California's long-arm statute, Cal. Civ. Proc. Code S 410.10, is coextensive with federal

due process requirements, so the jurisdictional analyses under state law and federal due process are

---

[62] *Turner v. Smith*, Case No. C 11-05176 CRB, 2012 WL 6019103, at *4 (N.D. Cal. Dec. 3, 2012)
(quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)).

[63] Docket No. 22 ¶ 11.

[64] *See* Docket No. 39.

[65] *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

[66] *Id.*

United States District Court
For the Northern District of California

the same."[67]  Personal jurisdiction over a nonresident requires that the defendant have "certain

minimum contacts with the relevant forum such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice."

The court need not engage in the full personal jurisdiction analysis, however, because

RMG's allegations do not even suggest that Danna meets any of the jurisdictional requirements,

and RMG offers no further support for its jurisdictional assertion in its opposition.  RMG's

restraint is well-taken, given that its factual allegations against Danna state only that he entered into

an agreement with RMG and that Eagle Web Assets ("EWA"), another third-party defendant,

"learned that Danna was also sending text messages, purportedly on behalf of RMG, not

incompliance [sic] with the terms of the [a]greement."[68] The locations of these actions are

noticeably absent.

RMG instead focuses on a request for discovery in an attempt to establish Danna's contacts

with California and then amend the complaint.  The court has discretion to allow discovery in aid

of showing jurisdiction.[69]  "[W]here pertinent facts bearing on the question of jurisdiction are in

dispute,"[70] or "where a more satisfactory showing of facts is necessary,"[71] discovery should be

allowed.  But "when it is clear that further discovery would not demonstrate facts sufficient to

constitute a basis for jurisdiction,"[72] or "[w]here a plaintiff's claim of personal jurisdiction appears

---

[67] *Id.*

[68] Docket No. 22 ¶ 25.

[69] *See Am. West. Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989); *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cit. 1977).

[70] *Am. West.*, 877 F.2d at 801.

[71] *Wells Fargo*, 556 F.2d at 430 n.24.

[72] *Id.*

13

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to be both attenuated and based on bare allegations in the face of specific denials made by the defendants,"[73] the court properly may deny discovery.

RMG argues that "[i]n light of Danna's motion to dismiss on personal jurisdiction grounds," the court should permit it "sufficient time to conduct limited jurisdictional discovery and leave to amend" its complaint.[74]  RMG, however, does not explain how discovery – limited or otherwise – could aid it in offering better allegations.  It identifies no facts supporting personal jurisdiction that further discovery could uncover nor does it in any way challenge Danna's assertions that he does not own property in California, does not own interest in any California business, and transacts all business from his home in Louisiana.[75]  Faced with Danna's uncontroverted affidavit claiming residency in Louisiana and no business interests in California, a complaint that mentions nothing about Danna engaging in any activity in California, and a vague request for limited discovery in an opposition to a motion to dismiss (without any explanation about the nature or extent of the request), the court finds further discovery on the issue of personal jurisdiction is not warranted.

Given that the complaint fails to allege any contacts between Danna and California, the court finds that dismissal of Danna for lack of personal jurisdiction under Rule 12(b)(2) is appropriate.  Although the court will not permit RMG to engage in discovery for the purposes of showing jurisdiction, its denial largely is based on RMG's faulty request.  As such, the court believes that an amendment to add factual allegations supporting jurisdiction over Danna acquired through RMG's own investigation[76] would not be futile.  The motion to dismiss therefore is GRANTED WITH LEAVE TO AMEND.

---

[73] *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006).

[74] Docket No. 46.

[75] *See* Docket No. 39.

C.      **Anti-SLAPP Motion to Strike**

Having disposed of the threshold procedural issues, the court now turns to the remainder of the issues presented, beginning with the anti-SLAPP challenge brought by Lenahan.  Lenahan asserts that RMG's causes of action for libel per se, tortious interference with contractual relations, and tortious interference with prospective economic advantage, which arise out of the factual allegations regarding Lenahan's Facebook posting, are SLAPP claims.  Lenahan argues that the three causes of action are attempts to squelch his legitimate complaints about RMG's business practices, and he asserts that the complaints address a public issue and were expressed in a public forum.  He further argues that RMG has failed to meet its burden to show the probability of prevailing on its claims.

RMG responds that the anti-SLAPP statute does not apply to Lenahan's comments because the comments either fit within the commercial speech exception to the anti-SLAPP protections or because the complaints do not concern a public issue.  RMG alternatively asserts that even if the causes of action are subject to anti-SLAPP, it has met its burden to show that it can prevail on the claims.

The court thus begins with the first of its two-part inquiry:[77] did Lenahan meet his burden of making a prima facie showing that his comments fall within the anti-SLAPP protections? Only if the answer to that question is "yes" does the court turn to RMG's proffer of evidence to support its claims.  As noted, RMG challenges Lenahan's prima facie showing on two grounds: first, that

---

[76] The court cautions that RMG should continue to heed its Fed. R. Civ. P. 11 obligations.

[77] Although it engages in this inquiry because current Ninth Circuit law requires consideration of the anti-SLAPP motion in federal courts, the court is compelled to highlight Chief Judge Kozinski's recent skepticism about the appropriateness of applying the anti-SLAPP statute in federal courts.  *See Makaeff*, 715 F.3d at 272-75.  As Chief Judge Kozinski observed, the statute provides only procedural remedies for defendants faced with claims that are attempts to obstruct their speech or petition rights.  *See* Cal. Civ. P. Code § 425.16 (describing the mechanism of the motion to strike, the consequential stay of discovery, and the possibility of attorneys' fees awards).  Not all of the anti-SLAPP provisions apply in federal court, *see Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845 (9th Cir. 2001), but those that do apply require the court to engage in a procedural inquiry seemingly at odds with the standards set by the Federal Rules of Civil Procedure.

United States District Court
For the Northern District of California

the speech falls within the commercial speech exception to anti-SLAPP protection and second, that

the speech is not about a public issue.  The court begins with the commercial speech exception.

### 1.   Commercial Speech Exception

Concerned with abuse of the Anti-SLAPP statute, the California Legislature exempted "any

cause of action brought against a person primarily engaged in the business of selling or leasing

goods or services."[78]  Two conditions must be met for the exception to apply:

> (1)   [t]he statement or conduct consists of representations of fact about that person's or a
> business competitor's business operations, goods, or services, that is made for the
> purpose of obtaining approval for, promoting, or securing sales or leases of, or
> commercial transactions in, the person's goods or services, or the statement or
> conduct was made in the course of delivering the person's goods or services[79] [and]

> (2)   [t]he intended audience is an actual or potential buyer or customer, or a person
> likely to repeat the statement to, or otherwise influence an actual or potential buyer
> or customer.[80]

From this statutory framework, the California Supreme Court has established a four-factor

test by which to determine whether the commercial speech exception applies.  Section 425.17(c)

exempts a cause of action arising from commercial speech when (1) "the cause of action is against

a person primarily engaged in the business of selling or leasing goods or services"; (2) "the cause

of action arises from a statement or conduct by that person consisting of representations of fact

about that person's or a business competitor's business operations, good, or services"; (3) "the

statement or conduct was made either for the purpose of obtaining approval for, promoting, or

securing sales or leases of, or commercial transactions in, the person's goods or services"; and (4)

"the intended audience for the statement or conduct meets the definition set forth in [S]ection

---

[78] Cal. Civ. P. Code § 425.17(c).

[79] *Id.* § 425.17(c)(1).

[80] *Id.* § 425.17(c)(2).

United States District Court
For the Northern District of California

425.17(c)(2)."[81] Section 425.17 notably does not apply to all commercial speech,[82] but rather a subset of speech from persons engaged primarily in selling or leasing products or services.

RMG argues that Lenahan's comments meet all four elements because (1) Lenahan sells his publishing services; (2) his statements include factual statements about his professional services, specifically that he complied with RMG's requirements; (3) the statements had the effect of promoting Lenahan's publishing services; and (4) given the forum in which he made the statements, Lenahan's statements inevitably reached publishers and other networks like RMG and so influenced those "consumers" of the services.  Lenahan on the other hand contends that his statements reflect a business dispute with RMG, rather than an attempt to promote his services or to attract customers.

RMG has sufficiently alleged that Lenahan is primarily engaged in the sale of his publishing services and so has satisfied the first element.  Regarding the second element, however, the court has serious doubts.  Because RMG is not Lenahan's business competitor, it cannot point to Lenahan's complaints about its actions to satisfy the second element required under Section 425.17.  Perhaps in recognition of this reality, RMG instead urges that Lenahan's statements are about his own business because, within the greater context of the dispute with RMG, he mentions that he complied with the company's directives.  Any factual assertions about Lenahan's services appear only in the first Facebook statement (the second post describes only RMG/Dowd's attempt at reversing a wire transfer) and even then the assertions serve to support the overall message about RMG's actions – that RMG stiffed Lenahan even though Lenahan complied.

Even assuming, however, that these factual statements suffice under the second element, RMG still has failed to meet the third.  Lenahan's statements on a gripe Facebook site about his

---

[81] *Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12, 30 (2010).

[82] *See All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc.*, 183 Cal. App. 4th 1186, 1217 (2010).

compliance with RMG's requirements and RMG's failure to remunerate for that compliance do not amount to an attempt to "obtain[] approval for, promot[e], or secur[e] sales" of his services. RMG points to an individual who commented on Lenahan's post with suggestions for future advertising campaigns to show that Lenahan effectively promoted his services. But the fact that someone in fact sought Lenahan's services does not support that Lenahan made the statement for that purpose, which is what Section 425.17 requires. Taken in their full context, Lenahan's statements plainly reveal a business dispute, not an advertising scheme. His assertions about his "marketing materials" serve only to support the complaint about RMG refusing to pay.

For the sake of completeness, the court briefly addresses the fourth element, the audience for Lenahan's statements, to address a flaw in RMG's reasoning. RMG argues that many publishers, i.e. "customers," would see Lenahan's post because it was a site with, by Lenahan's admission, thousands of participants. But the publishers are not Lenahan's customers, nor are they RMG's. They are potential business partners for RMG, and they may want to provide services for which RMG offers compensation. The "intended audience" of Section 425.17(c)(2), by contrast, is the potential buyer or customer of the person who is making the statement – in other words, Lenahan's customers. RMG does not suggest that Lenahan's customers are other publishers, nor does it allege that other networks viewed the site. The failure to satisfy the audience requirement further undermines RMG's attempt to apply the commercial speech exception to Lenahan's statements.

Section 425.17 does not apply to Lenahan's statements and so the anti-SLAPP statute is applicable to Lenahan's comments. Whether it actually does apply depends on Lenahan's showing that his speech is the kind protected by the law, and that inquiry is the issue to which the court turns next.

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 2.    Public Interest

To make a prima facie showing that the anti-SLAPP statute protects his statements, Lenahan must show that the comments involved an "issue of public interest."[83]  RMG does not dispute that Lenahan's post on a Facebook site is a public forum, and so the court notes only in passing that California courts have determined website posts in fact are public forums.[84] The court instead turns toward the more difficult issue: were Lenahan's statements about a public interest?

Section 425.16 does not specifically define "public interest," but California courts interpreting the anti-SLAPP statute have identified three categories of information that fall within the term's ambit: (1) "[t]he subject of the statement or activity precipitating the claim was a person or entity in the public eye"; (2) "[t]he statement or activity precipitating the claim involved conduct that could affect large numbers of people beyond the direct participants"; or (3) "[t]he statement or activity precipitating the claim involved a topic of widespread public interest."[85]  But "the issue need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest."[86]  Statements made only to "a limited, but definable portion of the public (a private group, organization, or community)" are protectable if they "occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance."[87]

---

[83] Cal. Civ. P. Code § 425.16; *see also Chaker v. Mateo,* 209 Cal. App. 4th 1138, 1144 (2012) (discussing the public interest/public forum elements required to show that the speech was entitled to protection).

[84] *See Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1366 (2010) (listing cases).

[85] *Commonwealth Energy Corp. v. Investor Data Exchange, Inc.*, 110 Cal. App. 4th 26, 33 (2003).

[86] *Cross v. Cooper*, 197 Cal. App. 4th 357, 373 (2011) (quoting *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008)).

[87] *Du Charme v. Int'l Broth. of Elec. Workers, Local 45*, 110 Cal. App. 4th 107, 119 (2003).

19

California courts also have identified a "few guiding principles" for the determination of whether a statement involves an issue of public interest.[88]  First, "public interest does not equate with mere curiosity."[89]  Second, it "should be something of concern to a substantial number of people" and so "a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest."[90]  Third, "there should be some degree of closeness between the challenged statements and the asserted public interest; the assertion of a broad and amorphous public interest is not sufficient."[91]  Fourth, "the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of [private] controversy."[92]  Fifth, "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure."[93]

Lenahan does not argue that RMG is an entity within the public eye nor does he seriously argue that the conduct could affect large numbers of people outside of Lenahan and RMG. Lenahan primarily addresses the third prong, arguing that his statements involve a matter of public interest to the community of publishers that participate in the Facebook site.  Lenahan asserts that his statements warn other publishers about RMG's failure to pay, which is of interest to the community in which he made the statement.  RMG responds that the statements involve only a private dispute, and Lenahan's publication of the details of the dispute to the internet does not transform the private issue into a public one.

---

[88] *See Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132-33 (2003); *see also Thomas v. Quintero*, 126 Cal. App. 4th 635, 658 (2005).

[89] *Weinberg*, 110 Cal. App. 4th at 1132.

[90] *Id.*

[91] *Id.* (internal citations omitted).

[92] *Thomas*, 126 Cal. App. 4th at 658-59 (quoting *Weinberg*, 110 Cal. App. 4th at 1132).

[93] *Weinberg*, 110 Cal. App. 4th at 1132.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lenahan relies on *Du Charme v. International Brotherhood of Electrical Workers, Local 45*, in which the California Court of Appeal held that if a statement addresses an issue of interest to only a limited portion of the population, instead of a widespread interest, the anti-SLAPP statute nevertheless may protect the statement if it involves an "ongoing controversy, dispute or discussion."[94]  Lenahan extrapolates from that holding to argue that because Lenahan and RMG were engaged in an ongoing dispute about the failure to pay and because other publishers might be interested in that dispute, the statement falls within the protection of the Anti-SLAPP law. Lenahan's gloss on *Du Charme* is unsupported by the Court of Appeal's opinion.  The court held that statements of interest to a limited group received protection only if they involved "an ongoing controversy, debate or discussion within that community" and were employed in a manner  that they "warrant[] protection by a statute that embodies the public policy of encouraging participation in matters of public significance."[95]  Central to that reasoning was that the other members of the smaller group had a stake in the controversy, debate or discussion.[96]  Interest, notably, was not enough.[97]

Here, Lenahan's statements do not suggest that the dispute between him and RMG requires participation or involvement by the community within which he aired his grievance.  Nor does he argue that he wanted to encourage other publishers to become involved or even take a stand against

---

[94] *See Du Charme*, 110 Cal. App. 4th at 119.

[95] *Id.*; *see also Thomas*, 126 Cal. App. 4th 635, 654-55 (2005) (finding defendant's participation in an organized protest regarding tenants' rights aimed at "a genuine effort to engage the members of [the plaintiff's] congregation in discussing and finding a solution to the disputes" protected activity); *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000) (noting statements about self-governance within a limited community were attempts to persuade the community and were protected speech).

[96] *See Du Charme*, 110 Cal. App. 4th at 119 (holding that the statement at issue was not protected because the audience to which it was directed "were not being urged to take any position on the matter").

[97] *See id.* (noting that the statement at issue "was presumably of interest to the membership . . . but unconnected to any discussion, debate or controversy").

21

RMG.  His statements amount to an allegation of wrongdoing against RMG, not a dispute or controversy in which the publisher community had a stake.  A cautionary tale is not a call to arms, and by Lenahan's own admission, he sought only to warn off, not engage.

Although not explicit in his briefs, Lenahan also appears to argue that because his statements to other publishers were really a warning, it was of sufficient interest to that community to warrant anti-SLAPP protection.  The court notes that Lenahan seemingly concedes in both his opening and reply briefs that the audience for his statements was a specific group, rather than the public at large.[98]  And as the court just explained, the interest of a specific group – here, a Facebook group of 2,244 people – is insufficient to garner protection for a statement under the statute unless the statement promotes participation by the group in an ongoing dispute.  On that reasoning alone, Lenahan's argument that warning the members of the Facebook group renders his statements protectable fails.

The court nevertheless addresses this side argument because recently other courts have found posts on consumer protection websites to fall within the "public interest" umbrella of the anti-SLAPP statute.  In *Chaker v. Mateo*, the California Court of Appeal addressed statements posted to a website "where members of the public may comment on the reliability and honesty of various providers of goods and services" and to a "social networking Web site which provided an open forum for members of the public to comment on a variety of subjects."[99]  The court had "little difficulty" finding that the statements, which warned of the plaintiff's untrustworthiness, fell "within the rubric of consumer information" and so "were of public interest."[100]  The district court in *Piping Rock Partners, Inc. v. David Lerner Assoc., Inc.*, likewise addressed complaints posted on "Ripoff Reports," a consumer-report website, warning about the plaintiffs' "dishonest,

---

[98] *See* Docket No. 41 at 9; Docket No. 55 at 7.

[99] 209 Cal. App. 4th at 1142.

[100] *Id.* at 1146.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

fraudulent, and potentially criminal business practices."[101]   Like *Chaker*, the court found that the statement was "a warning to consumers not to do business with plaintiffs because of their allegedly faulty business practices" and so it fell within the ambit of a public interest.[102]

The genesis of anti-SLAPP protection of consumer warnings posted on websites appears to be the California Court of Appeal's decision in *Wilbanks v. Wolk*, in which the court found that the defendant's post was "consumer protection information" and so of public interest.[103]   At issue in *Wilbanks* was a post by a "consumer watchdog" about the practices of a viatical settlements broker.[104]   The defendant warned on her website of the broker's problems with the California department of insurance among other complaints about its actions.[105]   Noting the "importance of the public's access to consumer information," that "the viatical industry touches a large number of persons," and that the defendant's goal was to provide "information for the purpose of aiding viators and investors to choose between brokers," the court found that the statement was "in the nature of consumer protection information."[106]   The statements were "not simply a report of one broker's business practices, of interest only to that broker and to those who had been affected by those practices."   Instead the statements "were a warning not to use plaintiffs' services," arose in the "context of information ostensibly provided to aid consumers choosing among brokers," and so "were directly connected to an issue of public concern."[107]

---

[101] Case No. C 12-04634 SI, --- F. Supp. 2d --- (N.D. Cal. May 17, 2013).

[102] *Id.*

[103] 121 Cal. App. 4th at 889-900.

[104] *See id.* at 889.

[105] *See id.*

[106] *Id.* at 899-900.

[107] *Id.* at 900.

Lenahan's complaints, however, do not amount to the same kind of consumer protection information. There was no actual warning. Lenahan complained about RMG's failure to pay and Dowd's reversal of the wire transfer, but he never actually told other publishers not to work with RMG. Perhaps the nature of the website could overcome this flaw – it is, after all, titled "Internet Advertising – People Who Don't Pay"[108] – but even if the context of the statement were enough to turn a gripe into a warning, nothing suggests that the site or the information posted on it serve as the type of consumer protection information that California courts interpret as protectable. The site has only 2,244 members.[109] Lenahan asserts – with no evidence in support – that "many, many more" people likely viewed the site because it is an open group. Maybe, maybe not. The court has nothing from which to assess that claim. Lenahan also points to shoemoney.com, on which the statements are syndicated and which apparently has over 10,000 hits per month.[110] Those hits suggest greater traffic, but from Lenahan's own evidence, the site serves as "a solution provider of choice developing and marketing web hosting products and security services that offer ask-oriented 'know how' solutions for businesses and home-office entrepreneurs and professionals alike,"[111] not a consumer protection site. Lenahan's evidence fails to parse the traffic to the complaints reposted from the Facebook site from the website's general audience.[112]

The numbers involved here fall well below the factual situations in which California courts have found statements should receive protection as "consumer information." In *DuPont Merch Pharmaceutical Co. v. Superior Court*, the California Court of Appeal found that the 1.8 million Americans who received statements alongside a pharmaceutical drug reflected that the statements

---

[108] *See* Docket No. 42-1 Ex. A.

[109] *See id.*

[110] *See* Docket No. 42-1 Ex. C.

[111] *Id.*

[112] *See* Docket No. 42 (describing in the declaration that the graph in Exhibit C reflects visits to the shoemoney.com website rather than a particular page).

24

were of public interest.[113]  In *ComputerXpress, Inc. v. Jackson*, the Court of Appeal considered

statements regarding a publicly traded company with 12,000,000 to 24,000,000 shares and losses

nearing $10,000,000 and found those statements were of public interest.[114]  The plaintiffs in

*Wilbanks* asserted that they had $58,333 in monthly income before the defendant's statements were

published, which led in part to the court's determination that the defendant's statements about the

business were of public interest.[115]

     "Consumer information" therefore appears to be the label courts apply when they can

ascertain that the statements involve products or services that potentially reach a widespread group

of potential purchasers.  The publisher community may be incredibly widespread, but from the

evidence that Lenahan has offered (and at this stage it is his burden to make the prima facie

showing) the numbers do not compare with the kind of consumer protection sites that other courts

have found warrant protection.

     Tellingly, the number of the potential audience members for Lenahan's posts, as supported

by the evidence he submits, more closely aligns with the numbers in *Macias v. Hartwell*[116] and

*Damon v. Ocean Hills Journalism Club*,[117] specifically 10,000 labor union members for the former

and 3,000 homeowners' association members for the latter.  As the *Du Charme* court highlighted,

the protection of statements in those cases turned on the fact that the statements sought to persuade

the audience members to become involved in the underlying controversy and discussion.  Those

cases are the exception to the rule that to qualify as a matter of "public interest," the private

---

[113] 78 Cal. App. 4th 562, 567 (2000).

[114] 93 Cal. App. 4th 993, 1008 (2001).

[115] 121 Cal. App. 4th at 899.

[116] 55 Cal. App. 4th 669, 673-74 (1997).

[117] 85 Cal. App. 4th at 479.

United States District Court
For the Northern District of California

conduct must "impact[] a broad segment of society."[118]  Lenahan's evidence does not support that his complaints reach that level.

And so, the court is back where it started.  Lenahan's statements speak to a "relatively small, specific audience" and so his obligation was to show that in some way his statements occurred "in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance."[119]  He has not made that showing and so the court need not look to RMG's likelihood of prevailing on its claims.  The anti-SLAPP motion to strike is DENIED.

**D.    Motion to Dismiss**

Lenahan also challenges all of RMG's claims under the more traditional Rule 12(b)(6) standard.  As to the breach of warranty and breach of contract claims, RMG does not oppose the motion and instead seeks leave to amend to clarify its theories.  The court finds that pursuant with the liberal standard of Rule 15(a), leave is appropriate.  For those claims, the court dismisses them with leave to amend.  The court now turns to the remaining three claims: libel per se, tortious interference with prospective economic advantage, and tortious interference with contractual relations.

**1.    Libel Per Se**

California defines libel as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."[120]  "A libel which is defamatory of the plaintiff without

---

[118] *Du Charme*, 110 Cal. App. 4th at 115.

[119] *Id.* at 119.

[120] Cal. Civ. Code § 45.

United States District Court
For the Northern District of California

the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face."[121]   Libel per se does not require a showing of special damages.[122]

"The initial determination as to whether a publication is libelous on its face, or libelous per se, is one of law."[123]  "It is error for a court to rule that a publication cannot be defamatory on its face when by any reasonable interpretation the language is susceptible of a defamatory meaning."[124]  "[D]efamatory meaning must be found, if at all, in a reading of the publication as a whole."[125]  "[T]he publication is to be measured, not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader."[126]

Lenahan first asserts that the statements at issue refer to Dowd, not RMG, which, according to Lenahan, means the comments are not "of and concerning" RMG as required by California law. In *Blatty v. New York Times Co.*, the California Supreme Court noted that the plaintiff had failed to allege that the publication at issue was "of and concerning" him and needed to "effectively plead that the statement at issue either expressly mentions him or refers to him by reasonable implication."[127]  "Under California law, [t]here is no requirement that the person defamed be mentioned by name . . . . It is sufficient if from the evidence the jury can infer that the defamatory

---

[121] Cal. Civ. Code § 45a.

[122] *See id.*

[123] *Selleck v. Globe Int'l, Inc.*, 166 Cal. App. 3d 1123, 1132 (1985).

[124] *Id.*

[125] *Kaelin v. Globe Comm. Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998) (citing *Stevens v. Storke*, 191 Cal. 329 (1923)).

[126] *Kaelin*, 162 F.3d at 1040 (quoting *Bates v. Campbell*, 213 Cal. 438 (1931)).

[127] 42 Cal. 3d 1033, 1046 (1986).

statement applies to the plaintiff . . . [or] if the publication points to the plaintiff by description or circumstance tending to identify him."[128]

Although Lenahan's posts refer to Dowd, the comments mention that Dowd is "from Reach Media group"[129] and that "they owe another network" money and that "the wire [transfer] they sent was fraud in attempts to get it reversed."[130] Given that RMG is explicitly mentioned and connected to Dowd and that Lenahan refers to "they" when he described the actions taken, it reasonably can be inferred that the statements referred to RMG as well as Dowd.[131]

Lenahan next challenges RMG's assertion that the statements are libelous on their face. He contends that because the statements require outside information to be understood in the manner RMG suggests, particularly that RMG withheld funds improperly from Lenahan, the comments cannot amount to libel per se. The statements, however, include references to Dowd and RMG improperly withholding the funds. In the first comment, Lenahan states that Dowd failed to pay the money on the basis that he was "using 'unapproved' sms content however [he] [has] countless emails, skype transcripts . . . etc where [Dowd] told [Lenahan] to use his exact word for word . . . which [he] did under threat and now hes [sic] claiming its unapproved BS story."[132] A reasonable person could understand that Lenahan was accusing Dowd/RMG of claiming the messages he was sending were unapproved but in fact had the language Dowd/RMG approved.

---

[128] *Church of Scientology of California v. Flynn*, 744 F.2d 694,697 (9th Cir. 1984) (quoting *DiGiorgio Fruit Corp. v. AFL-CIO*, 215 Cal. App. 2d 560 (1963)) (ellipses and alterations in original).

[129] Docket No. 22 ¶ 28.

[130] *Id.*

[131] *See powerlineman.com, LLC v. Kackson*, Case No. CIV. S-07-878 LKK/EFB, 2007 WL 3479562, at *6 (E.D. Cal. Nov. 15, 2007) (finding that statements mentioning website operator rather than website still stated a claim for libel per se because a "reasonable consumer might nevertheless construe that defendant's statement was directed toward the website as much as it was directed toward its operator").

[132] Docket No. 22 ¶ 28.

United States District Court
For the Northern District of California

The second statement likewise does not require extrinsic evidence to understand that Lenahan is claiming that Dowd/RMG attempted reverse a rightfully earned payment.  The statement provides that Dowd sent the wire to Lenahan's partner "whom [sic] was using the very same sms content, then . . . pretended the wire they sent was fraud in attempts [sic] to get it reversed."[133]  The comments sufficiently disclose that Lenahan was claiming that the reversal of the wire transfer was improper.  No extrinsic evidence is necessary to understand the meaning.  The court further finds that Lenahan's accusations are sufficiently defamatory to survive a motion to dismiss because they suggest that RMG refuses to pay its affiliates even after the affiliates performed work for which they were entitled to remuneration.  That accusation would have "a tendency to injury [RMG] in its occupation."[134]

In his motion to dismiss, Lenahan challenges the libel per se claim on only these grounds but the court briefly addresses his related arguments from his anti-SLAPP motion to strike.  There, he argues that the posts were his opinions and therefore cannot be susceptible to a claim of defamation.

As both the Supreme Court and the Ninth Circuit have observed, opinions may give rise to defamation liability where they "imply an assertion" that is "sufficiently factual to be susceptible of being proved true or false."[135]  "To determine whether an alleged defamatory statement implies a factual assertion," the court must "examine the 'totality of circumstances' in which the statement was made."[136]  The court should "look at the statement both in its broad context considering the general tenor of the entire work, the subject of the statements, the setting, and the format of the

---

[133] *Id.*

[134] Cal. Civ. Code § 45.

[135] *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990); *see also Rodriguez v. Panayiotou*, 314 F.2d 979, 985 (9th Cir. 2003).

[136] *Rodriguez*, 314 F.2d at 986.

work, and in its specific context, noting the content of the statements, the extent of the figurative or hyperbolic language used, and the reasonable expectations of the audience in that particular situation."[137]  In making this determination, the court puts itself in the position of the reader so that it can understand "the sense of meaning of the statement according to its natural and popular construction and the natural probable effect it would have upon the mind of the average reader."[138]

Lenahan argues that based on the setting of his comments and his use of "BS story," an average reader would understand that his statements were not factual assertions.  Isolated from the rest of the content, the abbreviated profanity may suggest the type of "loose, hyperbolic" language that identify for readers that statements are opinion rather than fact.  But the "BS story" term appears within a broader description of how Dowd/RMG owed Lenahan $13,000, owed other networks and affiliates five-figured amounts, and falsely claimed that the basis for the refusal to pay was a claim of posting unapproved content, which Lenahan then disputed.  The second comment likewise provides a factual account of the wire transfer activities.

The setting – a site where members could "call out" those advertisers who fail to pay – further underscores that Lenahan's statements provide sufficient factual assertions to be susceptible to a defamation claim.  Unlike the defendant in *Chaker*, on which Lenahan relies, here Lenahan gave relatively specific details about Dowd/RMG's actions and the accusations themselves were not so exaggerative that they would alert a reader that Lenahan was engaging in nothing more than name-calling.[139]  Lenahan claimed that Dowd/RMG failed to pay him for work he had performed,

---

[137] *Id.* (internal citations omitted).

[138] *Id.* (internal citations omitted).

[139] *See* 209 Cal. App. 4th at 1149 (noting that defendant's posts that plaintiff "picked up streetwalkers and homeless drug addicts and [was] a deadbeat dad" would be interpreted as nothing more than "insulting name calling").

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   which is a perfectly reasonable claim to make.  Nothing alerts readers that Lenahan was engaging

2   in anything more than that.

3       In sum, Lenahan's statements were sufficiently factual to be subject to RMG's defamation

4   claim.  The motion to dismiss the claim is DENIED.

5       **2.    Tortious Interference with Contractual Relations**

6       To state a claim for intentional interference with contractual relations, RMG must allege (1)

7   "the existence of a valid contract between [it] and a third party"; (2) Lenahan's "knowledge of that

8   contract"; (3) Lenahan's "intentional acts designed to induce a breach or disruption of the

9   contractual relationship"; (4) "actual breach or disruption of the contractual relationship"; and (5)

10  "resulting damage."[140]

11

12      Lenahan argues that RMG's intentional interference with contractual relations claim fails

13  because RMG has failed to allege with sufficient specificity that Lenahan had knowledge of a

14  contract or that RMG was harmed by the interference.[141]   RMG responds that its factual allegations

15  suffice.  RMG points to its allegation that as a result of Lenahan's comment, one of RMG's "larger

16  clients" required "a personal guarantee or prepayment in future engagements with RMG,"[142] which

17  RMG argues shows disruption and harm from the comment.  RMG also alleges that Lenahan had

18  knowledge of its contractual relationships because he was "aware of RMG's strong reputation in

19  the advertising industry and the existence of [the multiple contractual relations with customers]."[143]

20

21      The court agrees that RMG's allegations fail to state all elements of the claim, specifically

22  that Lenahan had knowledge of specific RMG contracts that could support an allegation that he

23

---

[140] *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004).

24

25  [141] Lenahan also asserts that RMG fails to allege a separate wrongful activity that amounts to interference.  For intentional interference with contractual relations, no separate wrongful activity is required; the interference itself is the wrongful action.  *See Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376 (1995).  Intentional interference with prospective economic advantage, on the other hand, requires a separate wrongful activity.  *See id.*

26

27  [142] Docket No. 22 ¶30.

28

[143] Docket No. 22 ¶¶ 46-47.

intended to interfere with those contracts.  RMG's theory is that because of its position in the

"performance based publisher network," it had "multiple contractual relations" and that Lenahan

knew about its reputation and the existence of the contracts.[144]  RMG has failed to allege, however,

that Lenahan had knowledge of any specific contracts or details about the contracts.[145]  RMG's

current allegations suggest only Lenahan had generalized knowledge that RMG was a party to

contracts with advertisers.  And RMG's allegations are bare even regarding the existence of the

contracts with which Lenahan purportedly interfered.[146]

Because RMG fails to sufficiently allege that Lenahan had anything more than generalized

knowledge of any contractual relationships, it likewise fails to allege that Lenahan developed the

requisite intent to disrupt those relationships.  But its intent allegations fail for another reason as

well.  "[T]he tort of intentional interference with performance of a contract does not require that the

actor's primary purpose be disruption of the contract," but a defendant nevertheless must "know[]

that the interference is certain or substantially certain to occur as a result of his action."[147]  Here,

RMG asserts conclusorily that it was "reasonably foreseeable" to Lenahan that the post "would

interfere with or disrupt these contractual relations" and that Lenahan so intended.[148]  But RMG

---

[144] *Id.* ¶¶ 46-47.

[145] *See Winchester Mystery House, LLC v. Global Asylum, Inc.*, 210 Cal. App. 4th 579, 596-97 (2012) (finding that plaintiff's notice to defendant about a contract without any specific details of that contract was insufficient to show that defendant had knowledge of the contract); *Sebastian Intern., Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1204 (C.D. Cal. 2001) (finding that even though defendant did not have knowledge of specific identities, the defendant had notice of contractual relationships, including a list of parties with whom plaintiff had contracts threatened by defendants' actions); *cf. Davis v. Nadrich*, 174 Cal. App. 4th 1, 10-11 (2009) (finding that where defendant and the party to the contract with the plaintiff asserted in declarations that defendant did not know about ongoing contract, plaintiff failed to bring forth facts to show that defendant in intentional interference with contractual relations claim "was sufficiently aware of the details of the . . . contract to form an intent to harm it").

[146] *See Reeves*, 33 Cal. 4th at 1148.

[147] *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 56 (1998) (quoting Rest. 2d Torts § 766 com. j, at 12).

[148] Docket No. 22 ¶ 49.

provides no factual bases to support that Lenahan's post on a site that appears to be aimed at other publishers would affect RMG's relationships with its advertisers.[149]  Given these deficiencies in the complaint, the motion to dismiss is GRANTED.  The court nevertheless finds that pursuant to Rule 15(a), leave to amend is appropriate because RMG has not yet had an opportunity to address the flaws in its complaint.

### 3.      Tortious Interference with Prospective Economic Advantage

To successfully plead intentional interference with prospective economic advantage, RMG must allege (1) "an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff"; (2) "the defendant's knowledge of the relationship"; (3) "intentional acts on the part of the defendant designed to disrupt the relationship"; (4) "actual disruption of the relationship"; and (5) "economic harm to the plaintiff proximately caused by the acts of the defendant."[150]  The third element "requires a plaintiff to plead intentional wrongful acts on the part of the defendant designed to disrupt the relationship" and those wrongful acts must be separate and apart from the interference itself.[151]

Lenahan first argues that RMG fails to allege a wrongful act separate and apart from the interference because its libel per se claim, on which RMG relies for this requirement, fails.  The court already has addressed the merit of the libel cause of action and so does not repeat itself here, other than to point out that RMG has sufficiently pleaded its claim.

Lenahan also argues that the claim fails because RMG has failed to allege with the requisite specificity the prospective economic relationship with which Lenahan allegedly interfered or

---

[149] RMG's complaint at times confuses the two types of parties with whom it has relationships.  For example, RMG's complaint alleges that the "contractual relations" are with "customers seeking advertising services," suggesting it is the people who pay RMG to send out the content of the text messages with whom Lenahan has interfered (and presumably, those people pay RMG).  *See id.* at ¶¶ 46, 52.  In its factual allegations, however, RMG asserts that one of its "larger clients" required "a personal guarantee or prepayment in future engagements with RMG," suggesting this client is a publisher, not an advertiser.  *See id.* ¶ 30.

[150] *Korea Supply Co.*, 29 Cal. 4th at 1153.

[151] *Id.* at 1154.

United States District Court
For the Northern District of California

Lenahan's knowledge of the relationship.  As with its allegations regarding interference with contractual relations – which are identical to its allegations for interference with prospective economic advantage – RMG responds that its factual allegations suffice.  RMG specifically alleges that as a result of Lenahan's comment, one of RMG's "larger clients" required "a personal guarantee or prepayment in future engagements with RMG."[152]  According to RMG, this allegation, if true, supports the existence of a future economic relationship, and its allegation that Lenahan was "aware of RMG's strong reputation in the advertising industry and the existence of [the multiple contractual relations with customers]" supports that Lenahan had knowledge of prospective economic relationships.[153]

"[A] defendant must have knowledge of the plaintiff's economic relationship," an element that "serves to restrict the class of plaintiffs that can state a claim for this tort."[154]  Like its allegations regarding interference with contractual relations, RMG's allegations are deficient.  RMG's theory appears to be that because Lenahan allegedly had knowledge that RMG had multiple contractual relations through his knowledge of RMG's reputation and because a disruption occurred in one relationship, RMG has successfully alleged all of the elements.  But RMG again fails to allege that Lenahan had knowledge of any specific relationships, rather than just a generalized knowledge that RMG was in the business of contracting with other publishers.[155]

Because RMG has not alleged that Lenahan had knowledge of a specific relationship, it also fails to allege that Lenahan had the intent to disrupt a specific relationship.  The motion to

---

[152] Docket No. 22 ¶30.

[153] Docket No. 22 ¶¶ 46-47.

[154] *Korea Supply Co.*, 29 Cal. 4th at 1164.

[155] *See* Docket No. 22 ¶ 47 (alleging that "Lenahan, a self-proclaimed publication expert, is well aware of RMG's strong reputation in the advertising industry and the existence of these multiple contracts").

United States District Court
For the Northern District of California

dismiss is GRANTED but with LEAVE TO AMEND because the court finds that pursuant to Rule 15(a), leave is appropriate.

## IV.    CONCLUSION

The court dismisses Danna from the action for lack of personal jurisdiction and denies RMG's request for jurisdiction discovery, although RMG may amend its complaint to allege that the court has jurisdiction over Danna.  The court also finds that RMG may implead Lenahan into the case based on the breach of contract and indemnification allegations in the agreement between Lenahan and RMG.  The court denies the anti-SLAPP motion to strike because Lenahan fails to meet his burden of showing that his comments are protected under the anti-SLAPP statute.  The court dismisses the breach of contract, breach of warranty, tortious interference with contractual relations, and tortious interference with prospective economic advantage claims but grants leave to amend those claims.  The court denies the request to dismiss the libel per se claim.  RMG shall file any amended complaint within fourteen days of this order.

**IT IS SO ORDERED.**

Date:   July 31, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

United States District Court
For the Northern District of California

35