Mark Eisen (SBN – 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID TRINDADE, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff,*<br><br>v.<br><br>REACH MEDIA GROUP, LLC, a Delaware limited liability company,<br><br>   *Defendant.* | Case No. 5:12-cv-04759 (PSG)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>Judge: Honorable Paul Singh Grewal<br>Date: June 24, 2014<br>Time: 10:00 a.m.<br>Action Filed: September 12, 2012 |
| REACH MEDIA GROUP, LLC, a Delaware limited liability company,<br><br>   *Third-Party Plaintiff,*<br><br>v.<br><br>RYAN LENAHAN, individually, KYLE DANNA, individually, and EAGLE WEB ASSETS INC., an Illinois corporation,<br><br>   *Third-Party Defendants.* | |

PLEASE TAKE NOTICE that on June 24, 2014 at 10:00 a.m., or as soon thereafter as counsel may heard, Plaintiff David Trindade will appear, through counsel, before the Honorable Paul Singh Grewal, or any judge sitting in his stead in Courtroom 5, 4th Floor of the United States District Court for the Northern District of California, located at 280 South First Street, San Jose, California 95113, and then and there move the Court for an Order entering a default judgment in his favor and against Defendant Reach Media Group, LLC.

Plaintiff's motion is based upon this Notice of Motion and the memorandum of law filed contemporaneously herewith, along with any additional material or argument that may be presented to the Court at the hearing on the motion.

WHEREFORE, Plaintiff David Trindade, by and through his undersigned counsel, respectfully requests that the Court enter an Order (i) granting the instant motion in its entirety, (ii) entering judgment in his favor and against Defendant Reach Media Group, LLC in the amount of $1,500.00, and (iii) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**DAVID TRINDADE**,

Dated: May 14, 2014

By: /s/ Benjamin H. Richman
   One of Plaintiff's Attorneys

Mark Eisen (SBN – 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

## I.    INTRODUCTION

Plaintiff David Trindade ("Trindade" or "Plaintiff") hereby seeks the entry of a default

judgment in his favor and against Defendant Reach Media Group, LLC ("RMG" or "Defendant"),

pursuant to Federal Rule of Civil Procedure 55, in the amount of $1,500.00—his individual

damages in this action.[1] RMG has refused to defend against this action, has failed to provide

substantive discovery responses to allow this case to proceed, and its attorneys have withdrawn as

counsel of record. Under the circumstances, the likelihood of an adjudication of Trindade's claims

on the merits is a near impossibility and therefore, the entry of a default judgment is necessary and

appropriate to ensure finality of this action and that Trindade obtains the relief to which he is

entitled.

For these reasons and as discussed further below, Plaintiff David Trindade, by and through

his undersigned counsel, respectfully requests that the Court enter an Order (i) granting the instant

motion in its entirety, (ii) entering judgment in his favor and against RMG in the amount of

$1,500.00, and (iii) providing such other and further relief as the Court deems reasonable and just.

## II.    FACTUAL BACKGROUND

In his Complaint (dkt. 1), Trindade alleges, individually and on behalf of a nationwide class

of similarly situated individuals, that RMG repeatedly made (or directed to be made on its behalf)

unsolicited text message calls to consumers informing them that certain lenders were "offering

$1500 cash loans deposited within 2hrs," in an effort to drive them to various information collection

websites and online payday loan offers, all in violation of the Telephone Consumer Protection Act,

47 U.S.C. § 227, *et seq.* ("TCPA"). (Dkt. 1 ¶ 1.) Trindade further alleges that neither he nor the

members of the proposed Class ever provided their cellular telephone numbers to RMG for any

purpose nor consented to receiving RMG's text message calls. (*Id.* ¶ 3.) For his part, Trindade

---

[1]    Plaintiff Trindade originally filed this case as a putative class action. However, class
certification has not been granted and therefore, Trindade seeks a default judgment only as to his
individual claim.

alleges that RMG knowingly caused at least one unsolicited text message to be made to his cellular telephone from the number (323) 400-9751, and thus seeks to recover $1,500.00 in damages pursuant to 47 U.S.C. 227(b)(3)(C). (*Id.* ¶¶ 17-18.)

After appearing through counsel, RMG answered Trindade's Complaint. (*See* dkts. 5, 17.) In its Answer, RMG admitted that it was a "performance based publisher" that "generates leads by contracting with third-party publishers to advertise payday loan offers to consumers through text messages…." (Dkt. 17 ¶ 1.) While RMG denied liability for the text message calls at issue here, it admitted that it owned and operated two of the websites—www.mobilecashsource.com and www.cashadvancediamond.com—to which Trindade and the putative class members had been directed after clicking the hyperlink contained in the text messages they received. (*Id.* ¶¶ 19, 27.)

Shortly after filing its Answer, RMG filed a Cross-Complaint against Ryan Lenahan and Kyle Danna, in their individual capacity, as well as EagleWeb Assets, Inc. (the "Third-Party Complaint," and the "Third-Party Defendants," respectively). (Dkt. 22.) While the Third-Party Complaint recognized that RMG had entered into contracts with each of the Third-Party Defendants to perform lead generation services—including sending text messages—it claimed that the Third-Party Defendants had breached their "obligation [to RMG] by sending text messages to cellular phone numbers [with] language [that] did not comply with RMG's Creatives…."[2] (*See, e.g., id.* ¶¶ 4, 5, 40.) In response, the Third-Party Defendants moved to dismiss and to strike the Third-Party Complaint, and in the months that followed, RMG and the Third-Party Defendants litigated their claims against each other. (*See generally* Dkts. 38-48.)

Around that same time, Trindade served his first set of written discovery requests to RMG, including interrogatories, requests for production, and requests for admission. (*See* Declaration of Benjamin H. Richman, attached as Exhibit 1, ¶ 3.) Consistent with RMG's Answer and Third-Party Complaint, in its written discovery responses, RMG conceded that "one or more" of the Third-Party

---

[2]    As explained by RMG in the Third-Party Complaint, the phrase "RMG Creatives" refers to orders that were attached to the Terms and Conditions agreed to by RMG and the Third-Party Defendants, which "specified the advertising campaigns for which they could publish advertisements." (Dkt. 22 ¶ 4.)

Defendants with whom it contracted "may have made [the] calls… identified in Paragraph 17 of the Class Action Complaint" containing the "text message language identified in Paragraph 20…." (*See* Defendant Reach Media Group, LLC's Objections and Responses to Plaintiff David Trindade's First Set of Interrogatories, attached as Exhibit 1-A, Resp. No. 3). RMG further indicated that it believed that the "Third-Party Defendants…sen[t] text messages to cell phone numbers without the prior express consent of the called parties…." (*Id.* at Resp. No. 6.)[3]

In early 2013, counsel for Trindade and RMG began discussing the potential for an early resolution of the case. (Richman Decl. ¶ 5.) Unfortunately, after several months of back and forth, communications between the Parties ceased. (*Id.*) Thereafter, RMG's attorneys withdrew as counsel of record. (Dkts. 70-71.)[4]

Since RMG's counsel's withdrawal, no further appearances have been made on behalf of RMG, RMG has not produced any additional information or documents in response to Trindade's discovery requests, and it has not indicated that it intends to retain new counsel or defend itself in this matter. (Richman Decl. ¶ 6.) As such, Trindade moved for entry of default against RMG, which was entered by the Clerk of the Court. (Dkts. 76, 78.)

## III.   ARGUMENT

Entry of a default judgment is proper where a party has failed to defend an action brought against them. Fed. R. Civ. P. 55(a). The process for obtaining a default judgment includes two steps: first, the Clerk of the Court must enter a default pursuant to Federal Rule 55(a); then, the court may enter an appropriate default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Starcom Mediavest Group, Inc. v. Mediavestw.com*, No. 10-cv-04025-LHK, 2011 WL 332831 (N.D. Cal. Jan. 31, 2011).

---

[3]     Despite these responses, however, the majority of RMG's other responses consisted of non-substantive answers and boilerplate objections. Similarly, RMG did not produce any responsive documents. (Richman Decl. ¶ 4.)

[4]     At the time counsel for RMG moved to withdraw, they represented to the Court that "RMG ha[d] knowingly and freely consented to [their] withdrawal [from] this matter." (Dkt. 70.)

In determining the appropriateness of a default judgment, courts typically consider several factors, including: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). Further, when considering these factors, "all factual allegations in the plaintiff's complaint are taken as true, except for those relating to damages." *United States v. Waterbabies, LLC*, No. 09-cv-01719-RS, 2010 WL 289075, at *1 (N.D. Cal. Jan. 15, 2010); *see also Philip Morris USA v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("[B]y defaulting, [d]efendant is deemed to have admitted the truth of [plaintiff's] averments").

Here and as shown below, each of these factors weighs in favor of entering a default judgment in Trindade's favor and against RMG.

### A. The First, Second and Third Factors: Possibility of Prejudice to Plaintiff, Merits of Plaintiff's Substantive Claim, and Sufficiency of the Complaint.

The first three factors in the *Eitel* analysis are often considered together as they focus primarily on the strength and substance of the merits of a plaintiff's claim. *See Waterbabies*, 2010 WL 289075, at *1; *see also Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together…[because] prejudice to the plaintiff…necessarily flows from the plaintiff's ability to demonstrate the merits of its claim"). Collectively, these factors "basically require that a plaintiff state a claim on which the plaintiff may recover." *J2 Global Commc'ns, Inc. v. Blue Jay Inc.*, 75 Fed. R. Serv. 3d 267, at *6 (N.D. Cal. 2009) (internal citations omitted).

In the instant case, Trindade seeks a default judgment on his individual TCPA claim. To state a viable claim under that statute, he need only allege that RMG (1) made, or caused to be made, any call; (2) using an automatic dialing system; (3) to any telephone number assigned to a cellular telephone service. *See Kazemi v. Payless Shoesource Inc.*, No. 09-cv-5142-MHP, 2010 WL

963225, at *2 (N.D. Cal. Mar. 16, 2010) (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009)). Here, Trindade has done just that. Specifically, he alleges that "Defendant repeatedly made (or directed to be made on its behalf) unsolicited text message calls to Plaintiff's and the other putative Class member's cellular telephones," using an automatic telephone dialing system, despite that "[n]either [he], nor the other members of the proposed Class, ever…consent[ed] to have Defendant make text message calls to their phones." (Dkt. 1 ¶¶ 2-3, 35-41.)

Moreover, RMG admits that (1) it is a "performance based publisher" that "generates leads by contracting with third-party publishers to advertise payday loan offers to consumers through text messages[,]" (dkt. 17 ¶ 1); (2) it hired each of the Third-Party Defendants for the purpose of generating leads, (dkt. 22 ¶¶ 16-18); (3) the URLs to which Trindade and the putative Class members were directed from the text messages at issue were owned and operated by RMG, (dkt. 17 ¶¶ 21, 27); and (4) the Third-Party Defendants with which RMG contracted were likely responsible for sending the text messages at issue. (*See* Ex. 1-B, Resp. No. 3.) In addition, RMG admits that it "did not receive prior express consent from Plaintiff 'to make any call'" (*see* Defendant RMG's Objections and Responses to Plaintiff Trindade's First Set of Requests to Admit Facts, attached as Exhibit 1-C, Resp. No. 2), and that the Terms and Conditions to which the Third-Party Defendants each agreed, "did not expressly prohibit the use of SMS text messages to distribute Reach Media Group, LLC's [] ad[]s…." (*Id.*, Resp. Nos. 58-60.)[5] Thus, taking the facts alleged in the Complaint

---

[5] Based on RMG's responses to discovery and its Third-Party Complaint, had RMG chosen to defend this action, it likely would have argued that it could not be held liable for violating the TCPA because it did not send the text messages directly and because it never approved the specific content of the messages that were sent. Both of these arguments lack merit. First, it is well-settled that companies may be held liable for calls made on their behalf. *See, e.g.*, *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois, N. Carolina & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C.R. 6574, 6588 (2013) ("*Dish Network*") (concluding that under a vicarious liability theory "a seller may be liable for violations by its representatives under a broad range of agency principles"); *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, No. 13-cv-00229-JCS, 2013 WL 6571629 (N.D. Cal. Aug. 19, 2013) *report and rec. adopted*, No. 13-cv-00229-YGR, 2013 WL 6571168 (N.D. Cal. Oct. 9, 2013) (adopting the FCC's ruling in *Dish Network*); *see also Lee v. Stonebridge Life Ins. Co.*,

to be true, *see Waterbabies, LLC*, 2010 WL 289075, at *1, and considering that RMG has confirmed the accuracy of those allegations, the Court can appropriately find that the merits of Trindade's claim and the sufficiency of his pleadings support the entry of a default judgment here.

Additionally, Trindade will be prejudiced if a default judgment is not entered in his favor. *See Philip Morris USA, Inc., v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (holding that the prejudice factor considers the possibility that without the entry of a default judgment, a plaintiff would be without other recourse for recovery). That is, given that RMG has refused to defend this action, it is extremely unlikely (if not impossible) that Trindade will recover the relief to which he is entitled through the continued litigation of this matter or any other means. Thus, only through the entry of a default judgment can he ensure judgment in his favor.

Accordingly, all three of these factors militate in favor of entering a default judgment.

### B.    The Fourth Factor: Sum of Money at Stake in the Action.

When considering the amount of money at stake, "default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of defendant's actions." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-cv-03594-JSW, 2007 WL 1545173 (N.D. Cal. May 29, 2007). In calculating the amount at stake and assessing its reasonableness, courts may consider declarations, calculations, and other documentation of damages. *Truong*, 2007 WL 1545173, at *12.

Here, the amount that Trindade seeks to recover is not too large or unreasonable, as it is exactly what is permitted by the TCPA—$500.00 per text message received, trebled as a result of RMG's "willful and knowing" conduct. *See* 47 U.S.C. § 227(b)(3)(B), (C) (an individual may "receive up to $500 in damages for each" violation and "[i]f the court finds that the defendant willfully or knowingly violated the regulations prescribed…[it] may, in its discretion, increase the amount of the award to an amount equal to…not more than 3 times the amount"); *see also J2 Global Commc'ns, Inc.*, 75 Fed. R. Serv. 3d 267, at *5 (finding that "the sum of money at stake in

No. 11-cv-43-RS (JSC), 2013 WL 3828814, at *1 (same). Moreover, the TCPA prohibits the sending of unsolicited text messages, *regardless of the content of the message* being sent. As such, that RMG did not approve the specific content of the messages is irrelevant given RMG's awareness that messages promoting its products and services were being sent.

the [TCPA] action [wa]s appropriate since plaintiff seeks only statutory damages"). Indeed, in addition to admitting that RMG "generates leads by contracting with third-party publishers to advertise payday loan offers to consumers through text messages[,]" (dkt. 17 ¶ 1), RMG separately acknowledged that Roger Dowd, the president and Chief Executive Officer of RMG, "received numerous [ ] complaints from recipients of text messages sent…purportedly on RMG's behalf." (Dkt. 22 ¶ 21.) As such, it is clear that RMG had knowledge that unsolicited text messages were being sent on its behalf sufficient to warrant the trebling of damages here. *See 2 Global Commc'ns, Inc.*, 75 Fed. R. Serv. 3d at *8 (awarding treble statutory damages where defendant "admitted to operating a business that engaged in bulk faxing"). Thus, taking into consideration that the TCPA explicitly permits this amount of monetary recovery and that RMG made these types of calls (or had them made on its behalf) to potentially thousands of individuals nationwide, it is more than reasonable to allow Trindade to recover the $1,500.00 he now seeks.

### C. The Fifth Factor: Possibility of a Dispute Concerning Material Facts.

Next, in analyzing the possibility of a dispute related to material facts, the Court takes all well-pleaded facts, except those pertaining to damages, as true following the entrance of a default by the Clerk of the Court. *Truong*, 2007 WL 1545173, at *12. This factor also weighs in favor of Trindade. Indeed, RMG has refused to fully defend this action and default against it has now been entered. (Dkt. 78.) Thus, because Trindade's allegations must be taken as true—and because RMG has already confirmed their accuracy—there is more than enough to support Trindade's request for relief.[6]

### D. The Sixth Factor: Whether the Default was Due to Excusable Neglect.

Next, RMG's default is not based upon excusable neglect. To be sure, RMG answered the Complaint, filed a Third-Party Complaint, and even attempted to discuss the possibility of settlement with Trindade. Since then, however, RMG has refused to participate in the litigation

---

[6]     Similarly, given that Trindade's allegations that he received one text message knowingly sent by or on behalf of RMG must be taken as true, nothing more need be shown to establish that he is entitled to the statutory damages available under the TCPA—though RMG's written discovery responses support such a finding. *See J2 Global Commc'ns, Inc.*, 75 Fed. R. Serv. 3d at *7-8.

altogether. That sort of unilateral refusal weighs heavily in favor of entering a default judgment. *See Heidorn*, 2013 WL 6571629, at *9 (finding that the excusable neglect factor "weigh[ed] in favor of entry of default judgment" where defendant "not only received the complaint but contacted [p]laintiff to discuss the possibility of settlement."); *see also Softwareworks Group, Inc. v. IHosting, Inc.*, No. 06-cv-04301 HRL, 2007 WL 2187306, at *2 (N.D. Cal. July 27, 2007) (finding no excusable neglect when "defendants unilaterally relieved themselves of their obligation to defend against these claims"). For these reasons, and given that RMG has made no effort to demonstrate the existence of excusable negligence, this factor also weighs in favor of entering a default judgment against it. *See Beachside Produce, LLC v. Flemming Enterprises, LLC*, No. 06-cv-04957-JW, 2007 WL 1655554, at *3 (N.D. Cal. June 6, 2007) (holding that a default judgment was appropriate where defendants "made no showing of excusable neglect").

**E.    The Seventh Factor: The Federal Rules of Civil Procedure Favor Decisions on the Merits.**

Finally, in cases such as this where adjudication on the merits cannot be had or has otherwise been rendered impractical, courts should enter a default judgment. *Philip Morris U.S.A., Inc.*, 219 F.R.D. at 501; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) ("where a defendant's failure to appear makes a decision on the merits impracticable, if not impossible, entry of default judgment is warranted") (internal citations omitted). Given RMG's refusal to participate in this action, adjudication on the merits now is a near impossibility. Thus, without a default judgment entered in his favor, Trindade will be unable to have his claim adjudicated on the merits or otherwise obtain the relief to which he is entitled, and this final *Eitel* factor also weighs in favor of entry of a default judgment.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff David Trindade, by and through his undersigned counsel, respectfully requests that the Court enter an Order (i) granting the instant motion in its

entirety, (ii) entering judgment in his favor and against RMG in the amount of $1,500.00, and (iii) providing such other and further relief as the Court deems reasonable and just.[7]

Respectfully submitted,

**DAVID TRINDADE**,

Dated: May 14, 2014

By: /s/ Benjamin H. Richman
       One of Plaintiff's Attorneys

Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Mark Eisen (SBN – 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

---

[7]    A Proposed Order is attached hereto and has been transmitted to the Court's e-mail inbox.