UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| DAVID TRINDADE | ) | Case No. 5:12-cv-04759-PSG |
| Plaintiff, | ) ) ) | **ORDER GRANTING TRINDADE'S MOTION FOR DEFAULT JUDGMENT** |
| v. | ) ) | |
| REACH MEDIA GROUP, LLC, | ) ) | **(Re: Docket No. 80)** |
| Defendant. | ) ) | |

Before the court is Plaintiff David Trindade's motion for default judgment.[1] Defendant Reach Media Group, LLC has not filed any opposition. Having reviewed the motion and the record, the court GRANTS Trindade's motion for default judgment.[2]

**I. BACKGROUND**

On September 12, 2012, Trindade filed this suit as a putative class action, alleging that RMG made, or had made on its behalf, unsolicited text message calls to Trindade and the other

---

[1] *See* Docket No. 80.

[2] Because the court has obtained consent of all parties to the case, this court possesses jurisdiction to make a case-dispositive ruling on Trindade's motion for default judgment. *See* 28 U.S.C. § 636(c). Third-party defendant Eagle Web Assets, Inc. has not been served and thus is not a party to the case.

1
Case No. 5:12-cv-04759-PSG
ORDER GRANTING TRINDADE'S MOTION FOR DEFAULT JUDGMENT

members of the putative class.[3] The alleged text message calls stated that lenders were offering cash loans and directed recipients to information collection and payday loan offer websites.[4] Trindade alleged that RMG's actions violated the Telephone Consumer Protection Act and sought injunctive relief, statutory damages, costs and attorney's fees.[5]

On November 1, 2012, RMG filed its answer.[6] RMG admitted that, as part of its business as a "publisher network," it generated leads "by contracting with third-party publishers to advertise payday loan offers to consumers through text messages."[7] RMG also admitted that it owned two of the websites alleged in the complaint.[8] RMG denied, however, that it generated leads "by making text message calls or having them made on its behalf to drive consumers to information collection websites and payday loan offers" or that it made, or had made on its behalf, the alleged text message calls.[9]

On November 15, 2012, RMG filed a cross-complaint against third-party Defendants Ryan Lenahan, Kyle Danna and Eagle Web Assets Inc. alleging that the third-party Defendants contracted with RMG as third-party publishers and subsequently edited the content of text message advertisements designed by RMG in violation of their contracts.[10] RMG alleged that the third-party Defendants therefore were required to indemnify RMG against any claims arising from

---

[3] *See* Docket No. 1 at ¶ 15.

[4] *See id* at ¶ 17, 19, 20 and 21.

[5] *See* 47 U.S.C. § 227; *see also* Docket No. 1 at ¶ 2 and 5.

[6] *See* Docket No. 17.

[7] *Id.* at ¶ 1.

[8] *See id.* at ¶ 19.

[9] *Id.* at ¶ 1.

[10] *See* Docket No. 22 at ¶ 4, 5 and 6.

breach of their contracts.[11]  RMG's concurrent responses to Trindade's interrogatories were consistent with these allegations.[12]  All of RMG's claims against the third-party defendants, however, were eventually dropped.  The court dismissed all of the claims against Danna with leave to amend for lack of personal jurisdiction.[13]  The court also dismissed the breach of contract, breach of warranty, tortious interference with contractual relations and tortious interference with prospective economic advantage claims against Lenahan with leave to amend.[14]  RMG then filed notice of its intent not to file an amended third-party complaint and not to serve Eagle Web Assets Inc.,[15] as well as a stipulation to the dismissal of all of its claims against Lenahan.[16]

On November 8, 2013, the court granted RMG's counsel leave to withdraw as counsel of record.[17]  In the interim, RMG has not actively litigated this case – for example, RMG has not responded to Trindade's discovery requests or filed anything on the docket.[18]  On January 27, 2014, the Clerk entered default pursuant to Fed. R. Civ. P. 55(a) against RMG.[19]  Trindade now seeks entry of default judgment only as to his individual claim.[20]

---

[11] *See id.* at ¶ 8.

[12] *See* Docket No. 80-1, Ex. 1-A at 13 ("Third-Party Defendants in this action may have made calls which included the text message language identified in Paragraph 20 of the Class Action Complaint.").

[13] *See* Docket No. 64 at 35.

[14] *See id.*

[15] *See* Docket No. 68.

[16] *See* Docket No. 69.

[17] *See* Docket No. 71.

[18] *See* Docket No. 80-1 at ¶ 6.

[19] *See* Docket No. 78.

[20] *See* Docket No. 80 at 2.

## II. LEGAL STANDARDS

After entry of default, district courts are authorized to enter default judgment, so long as the judgment does not "differ in kind from, or exceed in amount, what is demanded in the pleadings."[21] Entry of default judgment is discretionary.[22] To determine whether default judgment is warranted, the court balances the *Eitel* factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."[23]

## III. DISCUSSION

### A. The *Eitel* Factors

#### 1. Potential Prejudice to Trindade

The first *Eitel* factor considers potential prejudice to Trindade. If the court does not grant Trindade's motion for default judgment, Trindade has no alternative recourse.

#### 2. Trindade's Claim Is Meritorious

Second, the court looks to the merits of Trindade's complaint. "In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default."[24]

---

[21] Fed. R. Civ. P. 54(c); *see also* Fed. R. Civ. P. 55 (authorizing the court to enter default judgment).

[22] *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ("The district court's decision whether to enter a default judgment is a discretionary one." (citing *Duling v. Markun*, 231 F.2d 833 (7th Cir. 1956); *Georgia Power Project v. Georgia Power Co.*, 409 F. Supp. 332, 336-37 (N.D. Ga. 1975); *Ciccarello v. Joseph Schlitz Brewing Co.*, 1 F.R.D. 491, 493-94 (S.D. W.Va. 1940))).

[23] *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

[24] *Bd. of Trustees of Sheet Metal Workers v. Moak*, Case No. 4:11-cv-04620-CW, 2012 WL 5379565, at *2 (N.D. Cal. Oct. 31, 2012) (citing *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(d)).

Trindade's complaint alleges that RMG violated Section 227(b)(1)(A)(iii) of the TCPA.[25] Section 227(b)(1)(A)(iii) prohibits making a call to a telephone number assigned to a cellular telephone service using an automatic telephone dialing system ("ATDS"), except for emergency purposes or with the prior express consent of the called party.[26] The Ninth Circuit has clarified the statute's language, holding that "a text message is a 'call' within the TCPA"[27] and that an ATDS is equipment that "has the *capacity* to store or produce telephone numbers to be called, using a random or sequential number generator."[28]

Trindade asserts his TCPA claim under Section 227(c)(5) of the TCPA,[29] which provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." Trindade alleges that RMG made, or had made on its behalf,[30] and "presently

---

[25] *See* Docket No. 1 at ¶ 2.

[26] "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial pre-recorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."  47 U.S.C. § 227(b)(1)(A)(iii).

[27] *Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946, 954 (9th Cir. 2009) (affording deference to the FCC's interpretation of the term 'call'); *see also Kazemi v. Payless Shoesource, Inc.*, Case No. 3:09-cv-05142-EMC-MHP, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010).

[28] *Id.* at 951 (emphasis in original).

[29] *See* Docket No. 80 at 8.

[30] Courts in this district have held that under the TCPA, "a seller may be liable for violations by its representatives under a broad range of agency principles." *Lee v. Stonebridge Life Ins. Co.*, Case No. 3:11-cv-00043-RS-JSC, 2013 WL 3828814, at *1 (N.D. Cal. Jul. 19, 2013) (quoting FCC ruling); *see also Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, Case No. 4:13-cv-00229-YGR-JCS, 2013 WL 6571629, at *15 (N.D. Cal. Aug. 19, 2013) ("On May 9, 2013, the Federal Communications Commission issued a Declaratory Ruling that 'while a seller does not generally initiate' calls within the meaning of the TCPA, it nonetheless may be held vicariously liable under the federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers.").

continues to make," text message calls to his cellular telephone without his consent.[31] He claims, for example, that he received one such call on August 13, 2012.[32] Trindade alleges that these text message calls were made using an ATDS, which "had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers."[33] Trindade's complaint thus states a valid claim under the TCPA.

### 3. Trindade's Complaint is Well-Supported by the Record

Third, the court must consider the sufficiency of Trindade's complaint. Trindade's allegations are supported by the declaration of Trindade's attorney Benjamin Richman and 151 pages of supporting exhibits.[34] RMG's answer, third-party complaint and responses to interrogatories also support Trindade's allegations. These documents establish that RMG contracted with third-party publishers to advertise via text messages,[35] owned two of the websites alleged in the complaint[36] and was aware that the third-party defendants sent "text messages to cellular phone numbers."[37] The allegations in the complaint thus are well-supported by the record.

---

[31] Docket No. 1 at ¶ 15.

[32] *See id.* at ¶ 17. Trindade's complaint alleges the August 13, 2012 call with particularity, providing content and the telephone number from which the call was made. He also alleges that RMG made "and presently continues to make, text message calls to Plaintiff's and the other Class members' cell phones." The exact number of calls that Trindade alleges were made to his cellular telephone is unclear, but it is reasonable to infer that Trindade alleges that he received more than one call within a 12-month period. *See In re Consol. Pretrial Proceedings in Air W. Secs. Litig.*, 436 F. Supp. 1281, 1286 (N.D. Cal. 1977) (citing *Thomson v. Wooster*, 114 U.S. 104, 115 (1885)) ("The party in whose favor a default has been entered is entitled to the benefit of all reasonable inferences from the evidence tendered."); *United States v. Torres*, Case No. 2:12-cv-10530-SVW, 2013 WL 7137587, at *4 (C.D. Cal. Apr. 17, 2013) (citing cases holding that the movant is entitled to all reasonable inferences from the evidence offered).

[33] Docket No. 1 at ¶ 23.

[34] *See* Docket No. 80-1.

[35] *See* Docket No. 17 at ¶ 1; *see also* Docket No. 22 at ¶ 3 and 4.

[36] *See id.* at ¶ 19.

[37] Docket No. 80-1, Ex. 1-A at 13. Indeed, RMG stated in its third-party complaint that it had received numerous complaints from recipients of text messages "purportedly sent on RMG's behalf." Docket No. 22 at ¶ 21.

### 4. The Amount of Money at Stake is Reasonable

Fourth, the court considers the amount of money at stake in this case. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of defendant's actions."[38] "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable."[39] Trindade seeks a judgment of $1,500 in damages.[40] Section 227(c)(5) of the TCPA permits a claimant to recover "up to $500 in damages" for each violation, plus a three times multiplier if the violation was willful or knowing.[41] Because Trindade alleges that he received more than one text message call from RMG in violation of the TCPA,[42] the amount sought therefore is reasonable and consistent with the statutorily prescribed damages.

### 5. No Material Facts Are in Dispute

Fifth, the court must consider the possibility of disputed material facts. Following entry of default, the court "takes all well-pleaded facts, except those pertaining to damages, as true."[43] Trindade's claims, moreover, are supported by clear record evidence, including RMG's answer, third-party complaint and responses to interrogatories.[44] In sum, the weight of evidence supports the damages sought.

---

[38] *Truong Giang Corp. v. Twinstar Tea Corp.*, Case No. 3:06-cv-03594-JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

[39] *Id*.

[40] *See* Docket No. 80 at 2.

[41] 47 U.S.C. § 227(b)(3)(B)-(C). *See also Heidorn*, 2013 WL 6571629, at *15.

[42] Trindade alleges that he received a text message call on August 13, 2012, and that RMG "presently continues to make" such calls. Docket No. 1 at ¶ 15 and 17.

[43] *Truong*, 2007 WL 1545173, at *12.

[44] *See* Docket Nos. 1, 17, 22 and 80-1, Ex. 1-A.

### 6.     RMG's Default Is Not the Result of Excusable Neglect

Sixth, the court must consider whether RMG's failure to appear was due to excusable neglect. RMG actively participated in this litigation for over a year, filing an answer and a third-party complaint and responding to interrogatories.[45] On November 7, 2013, however, RMG's attorneys withdrew as counsel of record.[46] In the interim, RMG has not communicated with opposing counsel or filed anything on the docket.[47] Courts in this district have held that where a defendant "was aware of Plaintiff's action" and later stopped actively participating in the case, a finding of excusable neglect is unwarranted.[48]

### 7.     Public Policy Favors Default Judgment

Seventh, the court must consider whether default judgment comports with the legal principles undergirding the Federal Rules of Civil Procedure. While the Federal Rules favor decisions on the merits, this preference standing alone is not dispositive.[49] A decision on the merits is not possible where defendants have discontinued their participation in the proceedings. The baseline preference to adjudicate cases on the merits thus does not preclude a trial court from entering default judgment.

On balance, the *Eitel* factors support entry of default judgment.

---

[45] *See* Docket Nos. 17, 22 and 80-1, Ex. 1-A.

[46] *See* Docket No. 70.

[47] *See* Docket No. 80-1 at ¶ 6. RMG also has not evidenced any intent to take on new representation in this case.

[48] *Heidorn*, 2013 WL 6571629, at *9 (finding no excusable neglect where Defendant received the complaint and contacted Plantiff to discuss the possibility of settlement); *see also Softwareworks Grp., Inc. v. IHosting, Inc.*, Case No. 5:06-cv-04301-HRL, 2007 WL 2187306, at *1 (N.D. Cal. Jul. 27, 2007) (finding no excusable neglect where Defendants "ceased contact with Plaintiff and the court" during discovery proceedings).

[49] *See Zazenski v. Danner*, Case No. 5:12-cv-02344-RMW-PSG, 2013 WL 5513437, at *5 (N.D. Cal. Oct. 4, 2013); *see also Kloepping v. Fireman's Fund*, Case No. 3:94-cv-02684-THE, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996).

**B.      No Hearing is Necessary Because Trindade's Damages Are Calculable and Reasonable**

After determining liability, the court then calculates the amount of damages to be awarded.[50] Although "factual allegations relating to liability are taken as true upon entry of default, allegations as to amount of damages are not automatically accepted."[51] "In the Ninth Circuit, it is established that 'a default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation.'"[52] When the damages claimed are not readily ascertainable from the pleadings and the record, the court may hold a hearing to value damages.[53]

As previously noted, the TCPA permits a claimant who has received more than one call violating its provisions to recover $500 for each violation, plus trebling if the violations were willful or knowing.[54] Trindade contends that he is entitled to statutory damages for one violation of the TCPA, trebled because "it is clear that RMG had knowledge that unsolicited text messages were being sent on its behalf."[55] Trindade therefore seeks a judgment of $1,500 in damages.[56] The basis for this amount is readily ascertainable from the pleadings and record. Trindade alleges one call with particularity, providing a date and content, as well as the telephone number from which the call was made.[57] Trindade also alleges other calls and provides the content of those calls and

---

[50] *See Zazenski*, 2013 WL 5513437, at *5.

[51] *Truong*, 2007 WL 1545173, at *13 (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)).

[52] *Id.* (*quoting Davis v. Fendler*, 650 F. 2d 1154, 1161 (9th Cir. 1981)).

[53] *See* Fed. R. Civ. P. 55(b)(2) ("The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to" determine the amount of damages.).

[54] § 227(b)(3)(B)-(C). *See also Heidorn*, 2013 WL 6571629, at *15.

[55] *Id.*

[56] *See* Docket No. 80 at 8-9.

[57] *See* Docket No. 1 at 4.

the telephone numbers from which those calls were made.[58] The statutory damages sought are warranted.

Trebling also is appropriate.[59] RMG admits that it had knowledge of the TCPA[60] and that it had knowledge that the calls at issue were being made.[61] Although Trindade seeks statutory damages for a single violation of the TCPA, the evidence in the record shows that RMG contracted with third-party publishers to generate many text message calls in violation of the statute.[62]

Default judgment in the amount of $1,500 will follow.

**IT IS SO ORDERED.**

Dated: July 18, 2014

PAUL S. GREWAL
United States Magistrate Judge

---

[58] *See* Docket No. 1 at 4-5.  *See also Heidorn*, 2013 WL 6571629, at *15 ("Telephone numbers are significant because they establish that Plaintiff had some basis for concluding that the alleged calls were from Defendant or an agent of Defendant.").

[59] The court observes that a split in authority exists regarding what qualifies as "knowing" conduct warranting trebling.  *See J2 Global Commc'ns, Inc. v. Blue Jay Inc.*, Case No. 4:08-cv-4254-PJH, 2009 WL 4572726, at *7 (N.D. Cal. Dec. 1, 2009) ("There appears to be a split in authority as to what predicate conduct is required before a treble damages award may be issued.").  Some courts have held that a defendant must know that the making of the call violates the TCPA, while others have held that a defendant need only know that the call is being made.  *See id.* (citing case law from various jurisdictions). The court need not decide this issue, as treble damages are appropriate here under either standard.

[60] *See* Docket No. 80-1, Ex. 1-C at 127:

> RMG admits that prior to September 12, 2012, the date the Class Action Complaint in this matter was filed, Reach Media Group, LLC knew that under 47 U.S.C. § 227(b)(1)(A)(iii), it is unlawful for any person within the United States "to make any call (other than a call made for emergency purposes or made with prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ."

[61] Docket No. 80-1, Ex. 1-A at 13.

[62] *See* Docket Nos. 17, 22 and 80-1, Ex. 1-A.